# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WINKLEVOSS CAPITAL FUND, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CHARLES SHREM,<br><br>Defendant. | Case No.<br><br>**AFFIDAVIT OF MATTHEW GRUCHEVSKY IN SUPPORT OF EX PARTE APPLICATION FOR PREJUDGMENT ATTACHMENT** |

# 18 CV 8250

I, Matthew Gruchevsky, declare as follows:

1.      I am a licensed CPA in the States of Florida and Connecticut. I received a B.S., magna cum laude, and an M.S. in Accounting from the University of Tampa. I am a member of the American Institute of Certified Public Accountants and the Connecticut Society of CPAs. I joined Richard Paukner and Associates LLC in 2013, where I perform accounting, tax and advisory services to a broad-based clientele. Attached hereto as Exhibit 1 is a true and correct copy of my C.V., which gives a more extensive overview of my professional background. Except as to matters stated on information and belief, I have personal knowledge of the information referenced herein and could competently testify as to its truth if called to do so. As to matters stated on information and belief, I am informed and believe them to be true.

2.      In 2012, Winklevoss Capital Fund, LLC ("WCF") entrusted Charles Shrem to purchase bitcoin on its behalf. Over a period of approximately five months, commencing in September of 2012 and ending in February of 2013, WCF transferred $750,000 to Shrem via BitInstant's bank accounts.

3.      In early 2013, WCF retained Richard Paukner & Associates LLC to perform an independent analysis of the WCF/Shrem transactions. Specifically, WCF sought to determine

whether it received the correct number of bitcoin for the $750,000 it sent to Shrem. After extensive analysis of the documents provided to me, I have determined that Shrem failed to transfer approximately 5,000 bitcoin to WCF from transactions dated September 12 through October 12, 2012.

4.    To perform my analysis, I examined and utilized the following: (1) records provided to me and WCF by Charles Shrem; (2) WCF banking records; (3) public bitcoin pricing data available from internet sources; and (4) activity summaries for each of the four Bitcoin addresses[1] utilized by WCF to receive bitcoin from Shrem. I received documents from WCF's independent bookkeeper who maintained access to WCF bank accounts and transactional records.

5.    Additionally, I met with Shrem on February 27, 2013, in person. At our meeting, Shrem provided me with a general understanding of Bitcoin and the transactional modes in which BitInstant, his company, operated. (It is my understanding that BitInstant no longer exists.) During the meeting, we reviewed an accounting that he provided to WCF. We verified the total number of bitcoin he sent to WCF (39,876.34) by accessing four blockchain addresses where he sent bitcoin to WCF.

6.    WCF sent Shrem $750,000 in eight installments. Five installments totaling $250,000 were wired to BitInstant between September 12, 2012, and October 10, 2012. An additional $500,000 was wired between December 28, 2012 and February 6, 2013. (Shrem's accounting for WCF acknowledges receiving all of these installments and provided the above dates.)

---

[1] A Bitcoin address is a unique 34-character alphanumeric identifier that represents the possible destination for a bitcoin payment. Like a routing number for a bank account, a bitcoin address will direct the payment to the linked account.

7.    A chart Shrem provided to WCF to account for his bitcoin purchases lacked substantial data for transactions dated September 12, 2012 through October 10, 2012, corresponding to the first $250,000 sent to BitInstant. For these transactions, Shrem failed to include a starting and ending balance after each transaction, and generally did not report the price paid for bitcoin or the total amount he spent on each bitcoin transaction. These transactions warranted the most attention, given the lack of details surrounding the purchases.[2]

8.    To determine whether there was a shortfall of bitcoin in Shrem's accounting, I focused on three broad categories of information:

  a.  Historical transaction data prepared and provided by Shrem (Exhibit 2) recording the dates on which WCF transferred funds to BitInstant and also transfers of bitcoin by BitInstant to Bitcoin addresses controlled by WCF.

  b.  WCF/Winklevoss records showing the dates and amounts of wire transfers to Shrem for the purchase of bitcoin.

  c.  Historical bitcoin pricing data available at bitcoincharts.com (Exhibit 3), which I was informed and believed is a reliable historical record of bitcoin prices at the time.

9.    My basic methodology was to track the following information during the relevant period (September 12, 2012, and October 10, 2012):

  a.  I totaled the amount of WCF money in Shrem's possession.

---

[2] I concluded that the later purchases of bitcoin from the $500,000 seemed reasonable, based on comparing the chart Shrem provided to WCF that included the price paid for bitcoin with the historical price of bitcoin on those days.

b.  To determine amounts spent on bitcoin, I multiplied the price reported by Shrem for purchases on a particular day, or an average price on that day, by the number of bitcoin transferred by Shrem to a WCF-controlled address for that day.

c.  I compared the amount of money sent from WCF to Shrem with the amount of money that could be allocated to the bitcoin sent from Shrem to WCF. The analysis yielded a monetary discrepancy consisting of a dollar figure of approximately $61,000 for which no corresponding transfer of bitcoin is found, as more fully described below. I used an average weighted closing price to calculate the corresponding amount of missing bitcoin. I determined the average weighted closing price by taking the weighted price[3] for each date during the 29-day relevant period, added them together, and divided by the total number of days to determine the average weighted price of bitcoin for that period. Based on this figure, I calculated that Shrem failed to account for approximately 5,000 bitcoin.

10.  My calculations using the weighted average of the daily price of bitcoin are memorialized in Exhibit 4 at page 2. Exhibit 5 memorializes my analysis of the BTC high/low average.

11.  First, I added the sum of money sent from WCF to Shrem between September 12 and October 10, 2012 in five installments. Each of WCF's installments during this period was $50,000, for a total of $250,000. These calculations are noted on the left-hand side of Exhibit 5, under the heading "Funds from WCF."

---

[3] A weighted average price takes into consideration the volume of shares sold at certain prices. Thus, the average price is the ratio of the value traded to total volume traded over a particular time period.

12.     Second, I allocated dollar sums to transfers of bitcoin from Shrem to WCF for seven transactions between September 22 and October 10, 2012, where Shrem provided either no dollar amount for the purchases, or provided an unverified dollar amount. Specifically, I used an average of the high and low price per bitcoin on the day of each transaction and multiplied that by the number of bitcoin transferred to yield a price to allocate to Shrem's purchases. This resulted in a total of $125,654. This is reflected on the righthand side of Exhibit 5 under the heading "Allocation of WCF Funds to BTC Purchases" for "Subtotal: BTC at historical trading prices."

13.     Next, I allocated an additional $63,166 that Shrem was able to verify having spent on October 2 and October 3 on two bitcoin transactions on the Mt. Gox exchange. This is reflected on the lower right-hand side of Exhibit 5, for "Subtotal: BTC identified from historical exchange."

14.     Adding $125,654 and $63,166 — the amounts I was able to allocate to bitcoin purchases based on bitcoin transfers from Shrem to WCF — I was able to allocate $188,820 of WCF funds spent to purchase bitcoin. This resulted in a shortfall of $61,180. This is reflected on the last line of Exhibit 5 under "Total."

15.     Stated differently, of the $250,000 given to Shrem during the relevant period, he could account for $188,820 worth of bitcoin purchases transferred to WCF. Assuming an average weighted closing price of $12.15 during the period of September 12, 2012 through October 10, 2012 (see ¶ 9.c.), the unaccounted $61,180 would have been able to purchase 5,035 additional bitcoin at the time.

16.     Even drawing all possible inferences in Shrem's favor, there is a substantial shortfall between the number of bitcoin that WCF received and the amount of money it sent to Shrem between September 12 and October 10, 2012. During that period, Shrem acquired 15,237.07 bitcoin for WCF. Bitcoin reached a high of $12.89 per coin during this period. In the

-5-

highly unlikely event that Shrem purchased all of the bitcoin on behalf of WCF at the height of the market price during this period as reported by bitcoincharts.com, the most Shrem could have spent on the bitcoin is $196,405.83. This results in a shortfall of $53,594.17. Had Shrem purchased bitcoin at this highest intermediate price of $12.89, Shrem's fails to account for 4,158 bitcion.

17.     On or around March 8th, 2013, I took these conclusions to Shrem. I focused Shrem's attention on the first tranche of investments (the period from September 12 through October 10, 2012). I indicated that I was comfortable with the dollar amounts assigned to the September 27th and October 10th transactions based on the average high/low prices on those dates.

18.     I further indicated to Shrem that I was able to estimate, with some certainty, the amount spent for the 4,890 bitcoin transferred to WCF on October 2nd and 3rd. This was based on my review of the historical transactions[4] from the Mt. Gox exchange that Shrem made available to me.

19.     I then indicated that I accepted the valuation for the September 22nd and September 24th transactions.

20.     At this point, Shrem acknowledged that approximately $61,000 (or, approximately 5,000 bitcoin) was unaccounted for. Upon my inquiry as to whether WCF may be due additional bitcoin, he firmly disagreed. I then inquired if Shrem would be able to provide any additional accounting information able to explain the shortfall. Shrem insisted that I had been provided with everything I needed to trace the transactions.

21.     I suggested an alternative route would be to trace his wire receipts from his bank account to his bitcoin exchange accounts and then trace transfers to WCF bitcoin addresses. According to Shrem, this investigative method would not prove useful, as Shrem either purchased

---

[4] This is attached as Exhibit 6.

the bitcoin in anticipation of a wire or shortly thereafter from a balance of cash held in his exchange account.

22.     Ultimately, I relayed to Shrem that, absent further information, I would be unable to account for approximately $61,000, or 5,000 bitcoin. This was largely due to the complete lack of substantiation surrounding the transactions. He then indicated that he would follow-up with me, but I never heard from him. Shrem has never been able to provide any explanation for the discrepancy.

23.     In the absence of further documentation to explain the deficiency in bitcoin transferred to WCF bitcoin addresses, my professional opinion is that either (1) WCF failed to receive the number of bitcoin it was entitled to receive (approximately 5,000 bitcoin) or (2) that there remain unidentified monies not expended by Shrem that should have been credited to WCF (or used to purchase bitcoin).

24.     Based on the Gemini 4PM EST auction price of bitcoin on September 5, 2018, of approximately 6,920 USD, 5,000 bitcoin would be currently worth an estimated $34,600,000 USD as of September 5, 2018.

I declare under penalty of perjury under the laws of the United States and the State of New York that the foregoing is true and correct to the best of my knowledge.

Executed on September 6, 2018, in Greenwich, Connecticut.

Matthew Gruchevsky, CPA