UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

WINKLEVOSS CAPITAL FUND, LLC,   :               18-cv-8250 (JSR)

                Plaintiff,       :
      v.

                             :

CHARLES SHREM,

                             :

                Defendant.
-------------------------------------------------------x

**OPPOSITION TO MOTION TO CONFIRM
PREJUDGMENT ATTACHMENT ORDER**

BRIAN E. KLEIN
BAKER MARQUART LLP
777 S. Figueroa Street, Suite 2850
Los Angeles, California 90017
Tel: (424) 652-7800
bklein@bakermarquart.com

*Attorneys for Charlie Shrem*

# TABLE OF CONTENTS

Introduction ...................................................................................................................1

Factual Background .........................................................................................................3

Legal Standard ...............................................................................................................5

Discussion .....................................................................................................................6

I.     WCF's Motion Fails Because Its Factual Premise Is Not True, Undermining the Second Element Required for Attachment .......................................................6

II.    WCF Has Failed to Demonstrate Shrem's Alleged Fraudulent Intent to Frustrate His Creditors, Etc., Undermining the Third Element Required for Attachment ...................8

III.   WCF Has Failed In Additional Ways to Meet the Second Requirement .....................13

    A.  WCF Has Not Demonstrated a Probability of Success for its Breach of Fiduciary Duty Claim ...........................................................................................14

        1.  No Fiduciary Relationship Existed Between WCF and Shrem..........................14

        2.  Shrem Committed No Misconduct .......................................................16

    B.  WCF Has Not Demonstrated a Probability of Success for its Fraud Claim ............16

    C.  The Imposition of a Constructive Trust Is Not Warranted......................................18

    D.  WCF Cannot Demonstrate that an Equitable Account Is Justified .........................20

    E.  WCF's Causes of Action are Time Barred by the Statute of Limitations...............20

        1.  WCF's Fraud Claim is Time Barred .............................................................21

        2.  WCF's Breach of Fiduciary Duty Claim is Time Barred .................................22

IV.   Exercising Its Inherent Supervisory Powers, the Court Should Sua Sponte Dismiss WCF's Meritless Claim...............................................................................22

Conclusion ...................................................................................................................23

**Page(s)**

**Cases**

*Abascus Federal Savings Bank v. Lim*,
8 A.D. 3d 12 (2004) ................................................................................. 8

*Abercrombie v. Andrew College*,
438 F. Supp. 2d 243 (S.D.N.Y. 2006) ......................................... 14, 15

*Arzu v. Arzu*,
190 A.D.2d 87 (1993) ............................................................................ 13

*Bank of America Corp. v. Lemgruber*,
385 F. Supp. 2d 200 (S.D.N.Y. 2005) ............................................... 14

*Bank of China v. NBM LLC*,
192 F. Supp. 2d 183 (S.D.N.Y. 2002) ............................................ 9, 12

*Bayerische Landesbank, New York Branch v. Barclays Capital, Inc.*,
902 F. Supp. 2d 471 (S.D.N.Y. 2012) ................................................ 15

*Brezneoff v. Vasquez*,
433 N.Y.S.2d 553 (N.Y. 1980) ............................................................. 9

*Bynum v. Keber*,
23 N.Y.S.3d 654 (N.Y. App. Div. 3d Dept. 2016) ........................... 16

*Ciccone v. Hersh*,
530 F. Supp. 2d 574 (S.D.N.Y. 2008) ................................................ 15

*Cornock v. Murnighan*,
727 N.Y.S.2d 803 (N.Y. App. Div. 3d Dept. 2001) ......................... 17

*Cruden v. Bank of New York*,
957 F.2d 961 (2d Cir. 1992) ................................................................ 21

*Cruz v. McAneney*,
816 N.Y.S.2d 486 (N.Y. App. Div. 2d Dept. 2006) ......................... 19

*DLJ Mortgage Capital, Inc. v. Kontogiannis*,
594 F. Supp. 2d 308 (E.D.N.Y. 2009) .............................. 5, 9, 10, 11

*Dybowsky v. Dybowska*,
536 N.Y.S.2d 838 (N.Y. App. Div. 2d Dept. 1989) ......................... 21

*Encore Credit Corp. v. LaMattina*,
No. CV-05-15448 (CPS) 2006 WL 148909 (E.D.N.Y. Jan. 18, 2006) ................... 8, 9, 10

*Executive House Realty v. Hagen*,
438 N.Y.S.2d 174 (N.Y. Sup. Ct. 1981) ......................................................... 10

*Fitzgerald v. First East Seventh Street Tenants Corp.*,
221 F. 3d 362 (2d Cir. 2000)........................................................................ 23

*Golden Budha Corp. v. Canadian Land Co. of America*,
931 F.2d 196 (2d Cir. 1991).......................................................................... 19

*Graham v. Bank of America*,
432 Fed. Appx. 41 (2d Cir. 2010)................................................................... 22

*Hewlett v. Staff*,
652 N.Y.S.2d 350 (N.Y. App. Div. 3d Dept. 1997) ......................................... 17

*I.B. Trading, Inc. v. Tripoint Global Entities, LLC*,
280 F. Supp. 3d 524 (S.D.N.Y. 2017)............................................................. 19

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*,
907 N.E.2d 268 (N.Y. 2009).......................................................................... 22

*In re First Central Financial Corp.*,
377 F.3d 209 (2d Cir. 2004).......................................................................... 19

*Islipu-Slip v. Gander Mountain Co.*,
2 F. Supp. 3d 296 (N.D.N.Y. 2014)............................................................... 19

*Jaksich v. Thomson McKinnon Securities, Inc.*,
582 F. Supp. 485 (S.D.N.Y. 1984) ............................................................... 18

*La Ross Partners, LLC v. Contact 911 Inc.*,
874 F. Supp. 2d 147 (E.D.N.Y. 2012) ........................................................... 20

*Lawrence v. Kennedy*,
944 N.Y.S.2d 577 (N.Y. App. Div. 2nd Dept. 2012) ....................................... 20

*Marathon Enterprises, Inc. v. Feinberg*,
595 F. Supp. 368 (S.D.N.Y. 1984) ............................................................... 21

*Marini v. Lombardo*,
912 N.Y.S.2d 693 (N.Y. App. Div. 2d Dept. 2010) ......................................... 18

*McGovern v. Best Building & Remodeling*,
666 N.Y.S.2d 854 (N.Y. App. Div. 3d Dept. 1997) ......................................... 17

*Mineola Ford Sales v. Rapp*,
242 A.D.2d 371 (1997) ........................................................................ 13

*Monteleone v. Leverage Group*,
Nos. CV-08-1986(CPS)(SMG), CV-08-2131(CPS)(SMG), CV-08-
3033(CPS)(SMG), CV-08-3129(CPS)(SMG) 2008 WL 4541124
(E.D.N.Y. Oct. 7, 2008) .................................................................... 5, 6

*Muka v. Murphy*,
358 Fed. Appx. 239 (2d Cir. 2009) ...................................................... 23

*New York Dist. Council of Carpenters Pension Fund v. KW Constr., Inc.*,
No. 07–CV–8008, 2008 WL 2115225 (S.D.N.Y. May 16, 2008) ...................... 6

*Rudman v. Cowles Communications*,
280 N.E.2d 867 (N.Y. 1972) ................................................................ 17

*Rut v. Young Adult Institute, Inc.*,
901 N.Y.S.2d 715 (N.Y. App. Div. 2d Dept. 2010) .................................... 14

*Saul v. Cahan*,
61 N.Y.S.3d 265 (N.Y. App. Div. 2d Dept. 2017) ...................................... 15

*Security Pacific Mortgage and Real Estate Services, Inc. v. The Republic of the
Philippines*,
962 F.2d 204 (2d Cir. 1992) ................................................................ 19

*Signal Capital Corp. v. Frank*,
895 F. Supp. 62 (S.D.N.Y. 1995) .......................................................... 12

*Simonds v. Simonds*,
380 N.E.2d 189 (N.Y. 1978) ................................................................ 19

*Smith v. Bell Sports, Inc.*,
934 F. Supp. 70 (W.D.N.Y. 1996) ......................................................... 20

*Tanzman v. La Pietra*,
778 N.Y.S.2d 199 (N.Y. App. Div. 3d Dept. 2004) .................................... 17

*Thornock v. Kinderhill Corp.*,
712 F. Supp. 1123 (S.D.N.Y. 1989) ........................................................ 6

*Tyler v. Carter*,
151 F.R.D. 537 (S.D.N.Y. 1993) ........................................................... 23

*VisionChina Media Inc. v. Shareholder Rep Services, LLC*,
109 A.D.3d 49 (N.Y. App. Div. 2013) .................................................... 13

*VTech Holdings, Ltd. v. Pricewaterhouse Coopers*, LLP
    348 F. Supp. 2d 255 (S.D.N.Y. 2004) ............................................................... 14

*Wachtler v. County of Herkimer*,
    35 F. 3d 77 (2d Cir. 1994) ................................................................................ 22

**Other Authorities**

Fed. R. Civ. Proc. Rule 64 ........................................................................................ 5

N.Y. C.P.L.R. § 203(b)(4) ...................................................................................... 20

N.Y. C.P.L.R. § 6201(3) ........................................................................................... 5

N.Y. C.P.L.R. § 6212 ............................................................................................ 5, 23

N.Y. C.P.L.R. § 6212(a) ............................................................................................ 5

N.Y. C.P.L.R § 6213 .............................................................................................. 20

# INTRODUCTION

Plaintiff Winklevoss Capital Fund, LLC's ("WCF's") prejudgment attachment and underlying lawsuit are predicated and built on the demonstrably false premise that defendant Charlie Shrem ("Shrem") misappropriated $61,000 of WCF's money in 2012, purchased 5,000 bitcoins with those funds, moved those bitcoins around on December 31, 2012 (and subsequently), and then years later after his release from prison went on a spending spree with them. But WCF's case collapses on itself because those 5,000 bitcoins were ***not*** owned by Shrem. The scandalous and fantastical story WCF is advancing is nonsense.

The 5,000 bitcoins, which are the linchpin of WCF's lawsuit, belonged to a prominent bitcoin industry member, who, to protect his privacy and for his security, will be called "Mr. X" in this brief. Mr. X is identified in e-mail communications between him and Shrem (and others) discussing the 5,000 bitcoins, an unredacted copy of which has been filed under seal. Shrem merely, as a favor, electronically transferred 5,000 bitcoins for Mr. X. to a cold storage wallet account at Mr. X's request on December 31, 2012.

WCF's stealth complaint (filed under seal in September but not served until the end of October), as well as its *ex parte* motion for attachment of Shrem's assets (filed under seal at the same time as the complaint; and which resulted in entry of an attachment order in early October), are based on a false factual cornerstone. WCF filings leave no doubt about this when, for example, WCF states in its *ex parte* application for prejudgment attachment:

> As WCF has only recently learned, Shrem's behavior and incomplete
> accounting masked the fact that he actually stole the $61,000 from WCF
> and converted it into 5,000 bitcoin[s] for himself.

This lawsuit and application for prejudgment attachment can only be characterized as an ambush money-grab designed to cripple Shrem financially.

Putting aside the immense and fatal flaw of WCF being dead wrong about the 5,000 bitcoins, WCF has also failed to demonstrate at least two of the requirements for the grant of a motion to confirm a prejudgment attachment order. WCF's motion falls woefully short of: (1) demonstrating there is a probability of success on the merits on any of its four claims for relief (breach of fiduciary duty, theft by fraud, constructive trust and equitable accounting);[1] and (2) proving, based on convincing and non-speculative evidence, that Shrem knew of WCF's $30 million-plus claim and then proceeded to engage in conduct intended to defraud his creditors or frustrate a judgment that might be rendered in WCF's favor.

As to the first requirement, WCF has not made a sufficient showing that it is likely to prevail on the merits of its claims for relief. All four of WCF's claims (breach of fiduciary duty, fraud, constructive trust and accounting) depend on this same false factual premise (*i.e.,* the 5,000 bitcoins being Shrem's). They fail on this basis alone. There are additional reasons each of its four claims fail, as discussed in detail below. These reasons include, for example, that WCF's theft by fraud cause of action is likely to fail because it is time-barred by the applicable statute of limitations.

With regard to the second requirement, WCF has fallen well short of meeting its burden to make a convincing and non-speculative showing that Shrem had, or has, the necessary fraudulent intent with respect to his current assets. He had and has no such intent, and WCF has provided no credible evidence establishing Shrem has improperly hidden, transferred, assigned, disposed of, or encumbered any significant assets. Shrem, in fact, has not, of course, and he is in full compliance with all the terms of his probation, which require

---

[1] We assume that WCF decided not to bring a breach of contract claim because such a claim would be time barred. In any event, that claim would also be futile because there is no alleged oral or written contract.

financial reporting.  Before learning of WCF's lawsuit, Shrem even paid a portion of the $950,000 he owes the government under his plea agreement, and he plans to make additional payments until the entire amount is paid off.[2]

Shrem engaged in no wrongdoing.  Period.  WCF's motion to confirm the prejudgment attachment must be denied with prejudice, and the Court should award attorneys' fees and costs to Shrem.[3]  The Court should also exercise its supervisory powers and dismiss the entire case at this time in light of its false premise and the unfair, significant disruption it has caused to Shrem's life.

## FACTUAL BACKGROUND

From 2011 to 2014, Charlie Shrem ("Shrem") was the founder and CEO of BitInstant, a bitcoin startup.  (Affidavit of Charlie Shrem ["Shrem Aff."] ¶ 2.)  Shrem was also an early adapter of bitcoin.  (*Id.*)  On December 30, 2012, a prominent bitcoin industry member who Shrem was acquainted with, "Mr. X," sent Shrem (and others) an e-mail in which he expressed his desire to learn how to put bitcoin into a cold storage wallet, which is a method of storing bitcoin offline.  (*Id.* ¶ 3, Ex. A.)  That same day, Shrem e-mailed Mr. X back and agreed to help.  (*Id.*)

The next day, on December 31, 2012, Mr. X asked if he could send 5,000 of his bitcoins in advance in order "to expedite" their meeting.  (*Id.* ¶ 4, Ex. A.)  Shrem agreed, e-

---

[2] If the Court wishes to discuss Shrem's payment and payment plan, Shrem requests that this be done *in camera*.  Shrem's criminal defense counsel, Marc Agnifilo, plans to attend the upcoming hearing.

[3] Promptly after receipt and review of the complaint and prejudgment attachment order, Shrem's counsel notified WCF's counsel (in two phone calls and by e-mail) to advise that the 5,000 bitcoins were owned by an unrelated third party.  Shrem's counsel requested that WCF's counsel immediately dismiss the complaint and withdraw the attachment order.  WCF's counsel refused to do either.

mailing Mr. X the address 1Shremdh9tVop1gxMzJ7baHxp6XX2WWRW to send his 5,000

bitcoins to. (*Id.* ¶ 4.) This is the same address referenced in WCF's attachment filings and its

underlying complaint. (*See, e.g.,* Compl. ¶ 42, *Ex Parte* Application for Prejudgment

Attachment ["App."] [4] at 4-5; Affidavit of Tom Robinson ["Robinson Aff."] ¶ 41, Ex. G.)

That same day, Mr. X sent his 5,000 bitcoins to the address specified. (Shrem Aff. ¶

5, Ex. B.)[1] The 5,000 bitcoins came from 15kN4RRGAWapscJjSg1VEKbrWtNf192pwk.

(*Id.*) Soon after, Mr. X came to BitInstant's office and Shrem set up a new cold storage

wallet for him, creating a bitcoin address, 1MQ3K9aPcEDCekpFBGyDAgtD1uPss8E7rY.

(*Id.* ¶ 6, Ex. C.) We then moved Mr. X's 5,000 bitcoins to that address. (*Id.*) This bitcoin

address is referenced in WCF's application and related filings. (*See, e.g.,* App. at 4-5;

Robinson Aff. ¶ 42, Ex. H.)

On September 11, 2018, WCF sued Shrem under seal, alleging that he had converted

$61,000 of WCF's money into 5,000 bitcoins and kept it for himself. (*See, e.g.,* Compl. ¶¶ 2-

3, 14, 29, 40, 44, 50, 52, 59 and 65.) That same day, WCF sought an attachment order. WCF

based its allegations there (and in the complaint) on the "findings" of a forensic accounting

firm that Shrem allegedly had made a series of transfers of 5,000 bitcoins in December 2012.

(App. at 4; Robinson Aff. ¶¶ 40-42, Exs. G, H.)

But the 5,000 bitcoins WCF alleges that Shrem purchased with WCF's money

belonged to Mr. X at all relevant time periods. (Shrem Aff. ¶¶ 4-7.) Shrem never owned any

---

[4] On November 2, 2018, WCF filed its motion to confirm attachment order, referring the
Court to its September 11, 2017 *ex parte* application for attachment for "the reasons why
attachment is proper." (Mot. at 1.) Shrem objects to this procedure. Nevertheless, in this
Opposition, "Mot." refers to the Motion to Confirm Attachment Order and "App." refers to
the *Ex Parte* Application for Prejudgment Attachment, which we understand WCF is treating
as incorporated by reference.

of those bitcoins.  (*Id.* ¶ 7.)  Shrem, in fact, has never owned 5,000 bitcoins all at one time. (*Id.*)

Shrem unfortunately only received notice of WCF's complaint on Friday, October 26, 2018.  Otherwise, he could have brought all of this to the Court's attention sooner.  And Shrem was not actually served with WCF's summons, full complaint, or *ex parte* application for prejudgment attachment until, Monday, October 29, 2018.  WCF filed its motion for confirmation of the *ex parte* order for prejudgment attachment on November 1, 2018.

## LEGAL STANDARD

Federal Rule of Civil Procedure 64 permits federal litigants to seek an order of attachment in the manner provided by the law of the state in which the court is located. Under New York law, which governs here because this case is in the Southern District of New York, a plaintiff may obtain an order of attachment only if it demonstrates that: (1) it has stated a claim for a money judgment; (2) it has a probability of success on the merits; (3) the defendant, "with the intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered, or secreted property, or removed it from the state or is about to do any of these acts"; and (4) the amount demanded from the defendant is greater than the amount of all counterclaims known to plaintiff.  N.Y. C.P.L.R. §§ 6212(a), 6201(3).

"Because attachment is a harsh remedy, these statutory factors must be strictly construed in favor of those against whom attachment is sought."  *DLJ Mortg. Capital, Inc. v. Kontogiannis*, 594 F. Supp. 2d 308, 318-19 (E.D.N.Y. 2009) (internal quotations omitted). The burden is on the party seeking attachment, WCF, to establish each of these four elements.  N.Y. C.P.L.R. § 6212(a); *see also Monteleone v. Leverage Group*, 2008 WL

4541124, at *6 (E.D.N.Y. Oct. 7, 2008).  Moreover, a prejudgment attachment order is at the discretion of the Court so that, "even when the statutory requisites are met, the order may be denied.'"  *Monteleone*, 2008 WL 4541124, at *6; *Thornock v. Kinderhill Corp.*, 712 F. Supp. 1123, 1132 (S.D.N.Y. 1989) ("even if plaintiffs had made the required showings, it would still be possible to deny the harsh remedy of attachment, for attachment is a discretionary remedy").

Here, WCF has failed to demonstrate the second and third elements, which are the key elements of any attachment usually in dispute: (1) a probability of success on the merits for any of its alleged claims for relief; and (2) that Shrem has intentionally sought to defraud his creditors or frustrate the enforcement of a judgment in WCF's favor by disposing of his assets, or is about to do so.  As a result, WCF's motion must be denied as a matter of law.

## DISCUSSION

**I.      WCF's Motion Fails Because Its Factual Premise Is Not True, Undermining The Second Element Required For Attachment**

To show a probability of success on the merits, WCF must demonstrate by affidavit that it is more likely than not that it will succeed on its claims.  *New York Dist. Council of Carpenters Pension Fund v. KW Constr., Inc.*, No. 07–CV–8008, 2008 WL 2115225, at *1 (S.D.N.Y. May 16, 2008).  Again, this is the second element required for an attachment under New York law.

WCF is not entitled to a prejudgment order for attachment because it has no probability of success on the merits: all of WCF's claims are based on an entirely false premise, namely that Shrem owned the 5,000 bitcoins at issue.  There are contemporaneous e-mails proving that Shrem did not own these bitcoins.  (*See* Shrem Aff. Ex. A.)

WCF alleges that, in September and October 2012, WCF gave Shrem[5] money to invest in bitcoin, of which $61,000 is purportedly unaccounted for. (App. at 2, 4.) According to WCF, at then prevailing prices, $61,000 would purchase 5,000 bitcoins. (*Id.* at 4.)

Importantly, WCF alleges that, in December 2012, Shrem took that $61,000 and "converted it into 5,000 bitcoin[s] for himself." (*Id.* at 4.) WCF bases its allegations on a series of transfers of 5,000 bitcoins that Shrem purportedly made during this same time period. WCF's complaint is also more than arguably based exclusively on this flawed theory. (*See, e.g.,* Compl. ¶¶ 2-3, 14, 29, 40, 44, 50, 52, 59 and 65.)

According to WCF, "an address associated with Shrem," 1Shremdh9tVop1gxMzJ7baHxp6XX2WWRW, received 5,000 bitcoins on December 31, 2012. (App. at 4-5; Robinson Aff. ¶ 41, Ex. G.) Soon after, those same 5,000 bitcoins were allegedly transferred to another address, 1MQ3K9aPcEDCekpFBGyDAgtD1uPss8E7rY. (App. at 4-5; Robinson Aff. ¶ 42, Ex. H.) Eleven months later, on November 3, 2013, those same 5,000 bitcoins were transferred again. (App. at 5; Robinson Aff. ¶ 43, Ex. I.) The above allegations against Shrem form the basis of WCF's entire case.

The allegations, however, are demonstrably false as contemporaneous e-mails show. On December 31, 2012, Mr. X transferred 5,000 bitcoins to the same account that WCF cites, 1Shremdh9tVop1gxMzJ7baHxp6XX2WWRW, after Shrem e-mailed Mr. X that he would help him transfer his (Mr. X's) bitcoins to a cold storage wallet. (Shrem Aff. ¶¶ 3-5, Ex. B.) That same day, Mr. X went to BitInstant's office and transferred his 5,000 bitcoins from

---

[5] WCF gave the money to BitInstant, not Shrem. Shrem was acting in his capacity as CEO of BitInstant during this time period. WCF therefore has sued the wrong party and should have sued BitInstant, not Shrem. This is another cogent reason that the complaint fails.

1Shremdh9tVop1gxMzJ7baHxp6XX2WWRW to the cold storage wallet at
1MQ3K9aPcEDCekpFBGyDAgtD1uPss8E7rY. (*Id.* ¶ 6, Ex. C.) Mr. X always had full
ownership and possession of the 5,000 bitcoins – Shrem never owned them. (*Id.* ¶ 7.)

Thus, the 5,000 bitcoins over which WCF sues belonged to Mr. X. At most, Shrem /
BitInstant had very temporary possession of the 5,000 bitcoins on December 31, 2012, at Mr.
X's request, before Mr. X could transfer them to his new cold storage wallet. It is worth
repeating, Shrem has never owned or had title to the 5,000 bitcoins. In short, there is no
possible way that WCF can succeed on the merits because the core of its case is based on
incorrect facts and a false premise.

## II. WCF Has Failed to Demonstrate Shrem's Alleged Fraudulent Intent To Frustrate His Creditors, Etc., Undermining The Third Element Required For Attachment

Given that all of WCF's allegations against Shrem are based on an entirely false
premise, the Court need go no further and should deny WCF's motion on that basis alone.
But should the Court choose to go further, WCF's motion should be denied for the additional
reason that WCF has failed to satisfy the third necessary element for attachment.

Attachment requires "a demonstration that the defendant has concealed or is about to
conceal property *with the intent* to defraud creditors or to frustrate the enforcement of a
judgment." *Abascus Fed. Sav. Bank v. Lim*, 8 A.D. 3d 12, 13 (2004), citing N.Y. C.P.L.R §
6201 (emphasis added). WCF's failure to demonstrate that Shrem has concealed or is about
to conceal property with any fraudulent intent is fatal to its motion.

Mere "[r]emoval, assignment or other disposition of property is not a sufficient
ground for attachment; fraudulent intent must be proven, not simply alleged or inferred, and
the facts relied upon to prove it must be fully set forth in the moving affidavits." *Encore*

8

*Credit Corp. v. LaMattina*, 2006 WL 148909, at *3 (E.D.N.Y. Jan. 18, 2006). Because "[f]raud is not lightly inferred," a plaintiff's "moving papers must contain *evidentiary facts* as opposed to conclusions proving the fraud." *Id.* (emphasis added); *Bank of China v. NBM LLC*, 192 F. Supp. 2d 183, 188 (S.D.N.Y. 2002) ("[a]bsent evidentiary facts demonstrating a fraudulent intent, the possibility that defendants will [secrete assets] is simply too remote to justify" pre-judgment attachment).

Such evidentiary facts must pertain to a defendant's present intent to conceal assets. Evidence of past wrongdoing, like the type WCF relies on here, is insufficient to establish fraudulent intent. *See DLJ*, 594 F. Supp. 2d at 321 ("Though [plaintiff's] complaint and moving papers are long on allegations of his past wrongs and alleged current transgressions, entirely absent from these submissions are allegations—or, more to the point, evidentiary facts—demonstrating that [defendant] has intentionally attempted to secrete his assets to avoid his creditors or hinder a judgment in plaintiff's favor, or that he is on the verge of so doing."); *see also Encore Credit Corp.*, 2006 WL 148909, at *3 (prejudgment attachment improper where motion alleged that defendants were criminally charged and arrested in similar transactions but failed to allege that the defendant "assigned, disposed of, encumbered, or secreted property, or removed it from the state with intent to defraud [plaintiff] or to frustrate a judgment in this case").

In addition, a plaintiff's own allegations are not grounds for attachment, although this is what WCF does. *Brezneoff v. Vasquez*, 433 N.Y.S.2d 553, 554 (N.Y. 1980) ("[t]he alleged merits of the underlying action may not be used to mitigate the distinct and strict burden of proving the grounds for the prejudgment attachment"); *Encore Credit Corp.*, 2006 WL

148909, at *4 ("proof that a defendant committed the underlying unlawful act is not, by itself, sufficient to establish a ground for attachment").

Here, WCF argues that Shrem has the fraudulent intent to conceal assets based on: (1) Shrem's behavior toward WCF, as alleged in the complaint; (2) Shrem's purported failure to pay $950,000 owed to the federal government; and (3) the value of Shrem's current assets. (App. at 12.) All three arguments fail as a matter of fact and law.

With regard to the first argument (Shrem's behavior toward WCF, as alleged in the complaint), WCF's own allegations against Shrem are not sufficient grounds for prejudgment attachment as a matter of law. *See DLJ*, 594 F. Supp. 2d at 322 (allegedly meritorious nature of plaintiff's claims did not establish grounds for prejudgment attachment); *see also Executive House Realty v. Hagen*, 438 N.Y.S.2d 174, 177 (N.Y. Sup. Ct. 1981) ("Demonstrating a cause of action for conversion is not sufficient ground for attachment."). Accordingly, Shrem's alleged conduct toward WCF, as alleged in the complaint, cannot support a prejudgment attachment as a matter of law.

Shrem's alleged conduct toward WCF is also not sufficient grounds for attachment because the allegations are false. WCF asserts that six years ago Shrem purportedly purchased 5,000 bitcoins with money appropriated from WCF, and then secreted those 5,000 bitcoins for himself. (App. at 4.) But Shrem can show, through verifiable evidence, that the 5,000 bitcoins in question belonged to Mr. X. (Shrem Aff. ¶¶ 3-7, Exs. A-C.)

Turning to the second argument (Shrem's purported failure to pay $950,000 owed to the federal government), WCF's argument that Shrem has the requisite intent because he has not paid the money he owes the federal government also fails because it is false. As WCF itself admits, it is "not privy to Shrem's discussions with the government" and lacks evidence

about Shrem's payment to government.  (App. at 12.)  Indeed, it does.  The true facts are that Shrem paid a portion of the money owed before he knew of WCF's complaint, and is in the process of paying the rest.  (Shrem Aff. ¶ 9.)  Shrem is not evading his obligations.

Shrem owing the government money is also insufficient to show the requisite fraudulent intent as a matter of law because WCF has failed to show that Shrem has made any effort to conceal assets or frustrate a judgment in WCF's favor.  *See DLJ*, 594 F. Supp. 2d at 322 (past misconduct is not grounds for attachment, absent evidentiary facts showing intentional attempt to secrete assets to avoid creditors or hinder a judgment in plaintiff's favor).

With regard to the third argument (the value of Shrem's current assets), WCF's claim that Shrem has "been on a steadily increasing buying spree" since July of last year and "more likely" acquired his assets from the 5,000 bitcoins at issue has no basis in fact or law.  (*See* App. at 5.)

WCF lists a series of financial transactions that Shrem allegedly made, but none demonstrate a scintilla of fraudulent intent.  (*See* App. at 12.)  Even the fact that Shrem has made or spent money since he was released from prison does nothing to show that Shrem has any intent to conceal assets or frustrate any judgment in this case.  WCF offers no authority, nor could defense counsel find any, stating that a defendant's alleged personal wealth is evidence of fraudulent intent to defraud creditors or frustrate a judgment.

The fact is that Shrem has not "assigned, disposed of, encumbered, or secreted property, or removed it from the state," as New York law requires for a prejudgment order to attach.  N.Y. C.P.L.R. § 6201.  WCF has made no showing that Shrem has (nor could it).

Entirely and conspicuously absent from WCF's motion are evidentiary facts demonstrating Shrem has intentionally attempted to secrete his assets to avoid his creditors (including the government) or hinder a potential judgment in WCF's favor, or that he is on the verge of so doing (not that there could be any).  *See Bank of China v. NBM LLC*, 192 F. Supp. 2d 183, 188 (S.D.N.Y. 2002) ("[a]bsent evidentiary facts demonstrating a fraudulent intent, the possibility that defendants will [secrete assets] is simply too remote to justify" prejudgment attachment); *Signal Capital Corp. v. Frank*, 895 F. Supp. 62, 64-65 (S.D.N.Y. 1995) (intent to defraud element not satisfied where plaintiff "points to no actual or pending transfers or dispositions of assets that would frustrate a judgment in favor of [plaintiff] ... but asks that the danger of this occurring be presumed from" past misconduct in a related action where intent to defraud was not found; fact that prior misconduct involved fraudulent transfers of assets made with constructive knowledge of fraud did not require different outcome).

Nor is there any way that WCF can show that Shrem has made any effort to hide assets to frustrate any judgment, given the timeline of this case (not that he would anyway). Shrem only learned on October 26, 2018 of the existence of WCF's case (filed under seal on September 11, 2018).  He was not served with the summons and complaint and did not learn of the *ex parte* motion for a prejudgment attachment order and the entry of the prejudgment attachment order until October 29, 2018.

Given that the *ex parte* application and order for prejudgment attachment were filed six weeks *before* Shrem even learned of them, it is impossible that WCF could show that Shrem has hidden any of the assets complained about in the application in order to frustrate

any judgment.  In addition, on November 2, 2018, Shrem voluntarily agreed to a living expenses restriction carve-out with WCF.

Moreover, the cases relied on by WCF are inapposite.  (*See* App. at 11-12.)  In *VisionChina Media Inc. v. Shareholder Rep Servs., LLC*, 109 A.D.3d 49, 61 (N.Y. App. Div. 2013), the attachment order was *denied*, in part, because there was no evidence that defendant had hidden or would otherwise dispose of their assets.  There, the court held "[t]here must be more than a showing that the attachment would, in essence, be 'helpful'."  *Id.*

In *Mineola Ford Sales v. Rapp*, 242 A.D.2d 371, 372 (1997), the court found a prejudgment order appropriate where "'defendant offered *no explanation* as to what had happened to hundreds of thousands of dollars belonging to the plaintiff while the funds were under her control.'"  And in *Arzu v. Arzu*, 190 A.D.2d 87, 92 (1993), a prejudgment order was appropriate where defendants had an "almost entirely *undocumented explanation* as to what happened to hundreds of thousands of dollars belonging to plaintiff and exclusively within his control as a fiduciary."

Here, by contrast, Shrem can prove through e-mails, transaction reports and sworn affidavits that he did not take the 5,000 bitcoins he is accused of stealing.  (Shrem Aff. ¶¶ 3-7, Exs. A-C.)  The 5,000 bitcoins at issue belonged to Mr. X.  (*Id.*)

Because WCF has failed to show that Shrem has the requisite intent to defraud creditors or frustrate any judgment (not that it could), its motion to confirm fails as a matter of law.

## III.      WCF Has Failed In Many Additional Ways to Meet the Second Requirement

As described above, the factual premise of WCF's complaint is false.  In addition, each individual claim also fails on its merits many other reasons, including those that follow.

**A.   WCF Has Not Demonstrated a Probability of Success for its Breach of Fiduciary Duty Claim**

To succeed on a cause of action for breach of fiduciary duty, WCF must demonstrate: (1) the existence of a fiduciary relationship; (2) misconduct by the defendant; and (3) damages directly caused by the defendant's misconduct.  *Rut v. Young Adult Inst., Inc.*, 901 N.Y.S.2d 715, 716 (N.Y. App. Div. 2d Dept. 2010).  WCF has failed to show the existence of a fiduciary relationship or misconduct by Shrem.

1.   No Fiduciary Relationship Existed Between WCF and Shrem

Under New York law, a fiduciary relation exists when one person "is under a duty to act or to give advice for the benefit of the other upon matters within the scope of the relation."  *Bank of Am. Corp. v. Lemgruber*, 385 F. Supp. 2d 200, 224 (S.D.N.Y. 2005) (alteration in original omitted), quoting *Mandelblatt v. Devon Stores, Inc.*, 132 A.D.2d 162, 168 (1st Dept. 1987).  Such a relationship may arise "when one has reposed trust or confidence in the integrity or fidelity on another who thereby gains a resulting superiority of influence over the first, or when one assumes control and responsibility over another." *VTech Holdings, Ltd. v. Pricewaterhouse Coopers*, LLP, 348 F. Supp. 2d 255, 268 (S.D.N.Y. 2004) (internal quotations omitted).

"[M]ere assertions of 'trust and confidence' are insufficient to support a claim of a fiduciary relationship." *Abercrombie v. Andrew College*, 438 F. Supp. 2d 243, 274 (S.D.N.Y. 2006).  Thus, "the fact that one party trusts the other is insufficient to create a fiduciary relationship." *Id.*  Moreover, "where the plaintiff allege[s] a fiduciary relationship based only on the defendants' expertise and superior knowledge, the claim is dismissed, since plaintiff has provided no support for the proposition that mere expertise in a matter creates fiduciary

responsibilities." *Bayerische Landesbank, New York Branch v. Barclays Capital, Inc.,* 902 F. Supp. 2d 471, 475 (S.D.N.Y. 2012).

*Saul v. Cahan,* 61 N.Y.S.3d 265, 268 (N.Y. App. Div. 2d Dept. 2017), is instructive here. In *Saul*, the relationship between the plaintiff and his art advisor regarding the acquisition of artworks did not qualify as a fiduciary relationship where the plaintiff was an attorney and sophisticated business owner and was not under the control of the art advisor, as evidenced by his assertion that he made purchases of art works independent of his art advisor's advice and counseling. *Id.; see also Ciccone v. Hersh*, 530 F. Supp. 2d 574, 579 (S.D.N.Y. 2008) (no fiduciary relationship existed between personal investment and financial advisor and client where client was experienced floor broker on the New York Stock Exchange and client's investments were nondiscretionary).

In this case, there was no fiduciary relationship between Shrem and WCF.[6] There is no alleged formal written contract between the parties, and no legal relationship that would create a fiduciary duty. Shrem is not and has never been a stockbroker, nor would he have been acting as a broker for WCF (assuming its allegations are true), unlike almost all the cases WCF cites. (App. at 13-14.) Moreover, bitcoin is not a security, so those cases would be inapplicable in any event.

Like the plaintiffs in *Saul* and *Ciccone*, WCF is owned by sophisticated businessmen who would not need Shrem / BitInstant to purchase bitcoin for them. Indeed, WCF decided on its own to buy bitcoins. (Winklevoss Aff. ¶¶ 2, 5.) Shrem is not alleged to have provided any investment advice to WCF, but, according the complaint, was merely ordered by WCF to

---

[6] In any event, WCF's purported dealings were with BitInstant, not Shrem, such that no fiduciary relationship could possibly have been created with Shrem.

make purchases because WCF did not want to drive up the market by making the purchases on its own and wanted to keep its purchases of bitcoin confidential. (*Id*. ¶ 5.)

WCF even states that after it ceased working with Shrem "it continued to acquire additional bitcoin in the open market" on its own and without any assistance or input from Shrem. (Compl. ¶ 21.) Thus, any attempts WCF makes to characterize Shrem as an expert it absolutely needed to purchase bitcoin on its behalf are belied by its own allegations.[7]

### 2. Shrem Committed No Misconduct

Nor can WCF prove Shrem engaged in any misconduct. He did not. Shrem can show by verifiable evidence that he did not take the 5,000 bitcoins WCF accuses him of taking, and that they belonged to Mr. X. (Shrem Aff. ¶¶ 3-7, Exs. A-C.) Shrem therefore did not breach any duty to WCF, even if one were found to exist.

### B. WCF Has Not Demonstrated a Probability of Success for its Fraud Claim

WCF's fraud claim cannot succeed on its merits either. To allege fraud, "a plaintiff must allege with particularity a misrepresentation or a material omission of fact which was false and known to be false by [the] defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury." *Bynum v. Keber*, 23 N.Y.S.3d 654, 657 (N.Y. App. Div. 3d Dept. 2016).

A present expression of the intent to perform a future act is actionable as fraud only if actually made with "a preconceived and undisclosed intention of not performing it." *Sabo v.*

---

[7] At most, WCF has alleged a claim for conversion, but has likely failed to plead that claim in order to avoid the three-year statute of limitations for that claim. Regardless, there was no conversion here.

*Delman*, 143 N.E.2d 906, 908 (N.Y. 1957); *Cornock v. Murnighan,* 727 N.Y.S.2d 803, 804 (N.Y. App. Div. 3d Dept. 2001) (absent a showing of a "present intent to deceive, a statement of future intentions, promises or expectations is not actionable on the grounds of fraud").

Whether a party ever intended to perform on its representations must be shown by "'satisfactory' or 'clear and convincing' evidence." *Rudman v. Cowles Communications*, 280 N.E.2d 867, 871 (N.Y. 1972). "Stated another way, '[t]he mere fact that the expected performance was not realized is insufficient to demonstrate that [the] defendant falsely stated its intentions.'" *McGovern v. Best Bldg. & Remodeling*, 666 N.Y.S.2d 854, 857 (N.Y. App. Div. 3d Dept. 1997) (internal quotations omitted).

In *Tanzman v. La Pietra*, 778 N.Y.S.2d 199, 201 (N.Y. App. Div. 3d Dept. 2004), the defendant's promise to repurchase shares was not actionable fraud where plaintiffs failed to present any evidence that the defendant did not intend to keep his promise at the time it was made. Elsewhere, in *Hewlett v. Staff*, 652 N.Y.S.2d 350, 352 (N.Y. App. Div. 3d Dept. 1997), the defendant's "overly optimistic expectations for a risky business venture that ultimately failed" were insufficient to allege fraud.

In support of its fraud claims, WCF alleges Shrem made two representations: (1) that he would buy the bitcoin "at the best price," and (2) would provide a full accounting. (App. at 3.) Neither rises to the level of actionable fraud because WCF cannot show that in either instance that Shrem knew the statements were false at the time he purportedly made them.

First, Shrem's purported promise to buy bitcoin "at the best price" is not actionable fraud. WCF has presented no evidence that Shrem did not intend to buy bitcoin at the "best price" when he allegedly made this statement. The market for bitcoin in 2012 was not stable. No one could not reasonably predict the price at which he or she could buy bitcoins. *See*

17

*Jaksich v. Thomson McKinnon Securities, Inc.*, 582 F. Supp. 485, 493 (S.D.N.Y. 1984) (recommendation that investor sell stock that later rose in value was not a misrepresentation but "part of the gamble any stock market participant takes, whether investor or broker").

Second, Shrem's purported promise to keep an accounting does not rise to actionable fraud either. In support of its allegations, WCF claims Shrem told WCF that: (1) he would send an "overall report once the [bitcoin] are bought, so you can see the average price," and (2) he told WCF he "set up a Google Doc of every time you wire me, how many BTC I buy, and at what price, so we can keep track of the metrics." (Winklevoss Aff. ¶ 12.)

WCF has presented no evidence showing that Shrem did not intend to keep either promise at the time he allegedly made them. To the contrary, according to WCF's own allegations, Shrem regularly sent WCF an accounting of his purchases. (*Id.* ¶¶ 13, 20.) That the accounting was purportedly not complete is not actionable fraud, absent a showing that Shrem knew at the time he made the statement that he would provide a false accounting – a showing that WCF has failed to make.

## C. The Imposition of a Constructive Trust Is Not Warranted

WCF has failed to demonstrate that it is likely to prevail on the merits of its breach of fiduciary duty or intentional fraud causes of action that would warrant the equitable remedy of the imposition of a constructive trust.

In general, to impose a constructive trust, four factors must be established: (1) a confidential or fiduciary relationship; (2) a promise; (3) a transfer in reliance thereon; and (4) unjust enrichment. *Marini v. Lombardo*, 912 N.Y.S.2d 693, 696 (N.Y. App. Div. 2d Dept. 2010).

These elements serve as a guideline such that a constructive trust may still be imposed pursuant to a court's discretion even if all of the elements are not established. *See Simonds v. Simonds*, 380 N.E.2d 189, 194 (N.Y. 1978). Significantly, "[t]he ultimate purpose of a constructive trust is to prevent unjust enrichment and, thus, a constructive trust may be imposed 'when property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest.'" *Cruz v. McAneney*, 816 N.Y.S.2d 486, 490 (N.Y. App. Div. 2d Dept. 2006), quoting *Sharp v. Kosmalski*, 351 N.E.2d 721 (N.Y. 1976).

"Moreover, a party seeking to establish a constructive trust ordinarily must show, among other things, a confidential or fiduciary relationship between the parties." *Security Pacific Mortg. and Real Estate Services, Inc. v. The Republic of the Philippines*, 962 F.2d 204, 210 (2d Cir. 1992); *see also Golden Budha Corp. v. Canadian Land Co. of America*, 931 F.2d 196, 202 (2d Cir. 1991). As explained above, WCF has not demonstrated that any "duty" existed, and at the very least there is a hotly disputed factual challenge as to this issue which would preclude at this stage a determination that it is likely WCF will prevail on this critical element of various of its claims.

Additionally, many courts have found that "a constructive trust is simply a remedy and is not the basis for a separate cause of action." *I.B. Trading, Inc. v. Tripoint Global Entities, LLC*, 280 F. Supp. 3d 524, 545 (S.D.N.Y. 2017); *see also Islipu-Slip v. Gander Mountain Co*., 2 F. Supp. 3d 296, 307 (N.D.N.Y. 2014); *In re First Central Fin. Corp*., 377 F.3d 209, 215-16 (2d Cir. 2004).

Finally, no constructive trust is warranted because WCF cannot show that Shrem has, or has ever had, the 5,000 bitcoins in question.

**D.**     **WCF Cannot Demonstrate that an Equitable Accounting Is Justified**

WCF also has not, and cannot, make a sufficient showing that an equitable accounting is justified because it has not established that a fiduciary relationship existed between WCF and Shrem. "The right to an accounting is premised upon the existence of a confidential or fiduciary relationship and a breach of the duty imposed by that relationship respecting property in which the party seeking the accounting has an interest." *Lawrence v. Kennedy*, 944 N.Y.S.2d 577, 580 (N.Y. App. Div. 2d Dept. 2012); *see also La Ross Partners, LLC v. Contact 911 Inc.*, 874 F. Supp. 2d 147, 167 (E.D.N.Y. 2012).

Additionally, as described more fully above, Shrem did not take the 5,000 bitcoins alleged in the complaint, and has not engaged in any actionable or wrongful conduct that would require an equitable accounting.

**E.**     **WCF's Causes of Action are Time Barred by the Statute of Limitations**

WCF's fraud and breach of fiduciary duty claims are time barred by the applicable statute of limitations.

The complaint is based on diversity jurisdiction (Comp. ¶ 4), so the Court must apply New York state substantive law in determining whether WCF's stale claims are time barred. *See Smith v. Bell Sports, Inc.*, 934 F. Supp. 70, 75 (W.D.N.Y. 1996) ("In a diversity action, a federal court 'sits and operates as if it were a state court and must apply state substantive law.'"). State substantive law "applies as well to state statute of limitation issues, including service and tolling provisions." *Id*.

Where an attachment order is granted, the statute of limitations tolls from the date an order of attachment is granted, provided the summons is served in accordance with the provisions of section N.Y. C.P.L.R. section 6213. N.Y. C.P.L.R. § 203(b)(4).

1.    WCF's Fraud Claim is Time Barred

Fraud claims "must be brought within two years from the time plaintiff discovered or could have discovered the fraud with the exercise of reasonable diligence, or within six years of the fraud itself—whichever is later." *Marathon Enterprises, Inc. v. Feinberg*, 595 F. Supp. 368, 371 (S.D.N.Y. 1984).  WCF's fraud claim is time barred by either standard.

With respect to the two-year requirement, part of the reasonable diligence with which a plaintiff is charged for purposes of triggering the two-year discovery period is a duty of inquiry as explained by the Court of Appeals for the Second Circuit:

> To determine when the fraud was or should have been discovered, New York courts apply an objective test. If the circumstances of the alleged fraud would "suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises . . . ."  When a plaintiff "shuts his eyes to the facts which call for investigation, knowledge of the fraud will be imputed to him."

*Cruden v. Bank of New York*, 957 F.2d 961, 973 (2d Cir. 1992).

Here, there is no doubt that WCF was on notice of the alleged fraud by, at the latest January 2013, when Cameron Winklevoss purportedly "confronted" Shrem about his alleged "lack of proper accounting."  (Winklevoss Aff. ¶ 14.)  As the order of attachment was not granted until October 2, 2018 – more than five years after the statute of limitations had run – the claim is time-barred under the discovery prong.

With respect to the six-year period, the statute of limitations begins to accrue from the "commission of the fraud." *Dybowsky v. Dybowska*, 536 N.Y.S.2d 838, 839 (N.Y. App. Div. 2d Dept. 1989).  As WCF admits, it alleges that Shrem first "committed fraud by falsely representing that he wanted to help WCF (rather than stating honestly that he wanted to acquire bitcoin for himself with WCF's money), and that allegedly he would secure bitcoin

for WCF at the 'best price.'" (App. at 15.) According to WCF, these statements were made on September 11, 2012. (Winklevoss Aff. ¶ 8.) WCF allegedly sent Shrem the money that he purportedly converted in September 2012. (*Id*. ¶ 10.) The attachment order was not granted until October 2, 2018 – more than six years after the statute of limitations had run. As a result, WCF's fraud claim is barred as a matter of law.

### 2. WCF's Breach of Fiduciary Duty Claim is Time Barred

The statute of limitations for breach of fiduciary duty is normally three years, but extends to six years, where an allegation of fraud is essential to the claim. *IDT Corp. v. Morgan Stanley Dean Witter & Co*., 907 N.E.2d 268, 272 (N.Y. 2009). However, where fraud is not sufficiently pled, a plaintiff cannot avail itself of the six-year statute of limitations for a breach of fiduciary claim. *Id.* (holding plaintiff could not take advantage of six-year statute of limitations for breach of fiduciary duty founded on fraud where fraud claim was not sufficiently pled).

Here, because WCF's fraud claim fails, it cannot avail itself of the six-year statute of limitations. The order for attachment was not granted until October 2, 2018. Based on the three-year statute of limitations for breach of fiduciary duty, WCF's breach of fiduciary claim fails as a matter of law.

## IV. Exercising Its Inherent Supervisory Powers, The Court Should *Sua Sponte* Dismiss WCF's Meritless Claims

This Court should exercise its supervisory powers and dismiss WCF's entire case based on its false premise. "[T]he power of district courts to *sua sponte* dismiss meritless claims is well-established." *Graham v. Bank of America*, 432 Fed. Appx. 41 (2d Cir. 2010); *see also Wachtler v. County of Herkimer,* 35 F. 3d 77, 82 (2d Cir. 1994) ("The district court

has the power to dismiss a complaint *sua sponte* for failure to state a claim."); *Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F. 3d 362, 363 (2d Cir. 2000) (a district court has the power to *sua sponte* dismiss frivolous claims); *Tyler v. Carter*, 151 F.R.D. 537, 540 (S.D.N.Y. 1993) ("A plaintiff asserting fantastic or delusional claims should not, by payment of a filing fee, obtain a license to consume limited judicial resources and put defendants to effort and expense."); *Muka v. Murphy*, 358 Fed. Appx. 239, 241 (2d Cir. 2009) (same).

As explained above, all of WCF's claims lack merit and are based on a false premise, and the Court should therefore *sua sponte* dismiss them.

## CONCLUSION

For the reasons set forth above WCF's Motion should be denied in its entirety with prejudice, and the *ex parte* prejudgment attachment order be vacated or dissolved. Pursuant to N.Y. C.P.L.R. § 6212, Shrem also requests that the Court award him attorneys' fees and costs incurred in opposing WCF's motion to confirm.

Dated: November 5, 2018        /s/ Brian E. Klein

                                   _____

                                   BRIAN E. KLEIN
                                   Baker Marquart LLP
                                   777 S. Figueroa Street, Suite 2850
                                   Los Angeles, California 90017
                                   Tel: (424) 652-7800
                                   bklein@bakermarquart.com

                                   *Attorneys for Charlie Shrem*