UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------x

WINKLEVOSS CAPITAL FUND, LLC,   :          18-cv-8250 (JSR)

                 Plaintiff,   :

      v.

                               :

CHARLES SHREM,

                               :

               Defendant.

--------------------------------------------------------x

**DEFENDANT CHARLES SHREM'S MOTIONS TO DISMISS PURSUANT TO
FED.R.CIV.P. 12(b)(1) and 12 (b)(6)**

BRIAN E. KLEIN
BAKER MARQUART LLP
777 S. Figueroa Street, Suite 2850
Los Angeles, California 90017
Tel: (424) 652-7800
bklein@bakermarquart.com

*Attorneys for Charlie Shrem*

**Table of Contents**

Introduction..............................................................................................................1

Factual Allegations of WCF's Complaint ...............................................................1

Applicable Legal Standards .....................................................................................4

    I.   Standard for Rule 12(b)(1) Dismissal for Lack of Subject Matter Jurisdiction .................4
    II.  Standard for a Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim ...................5

Argument .................................................................................................................5

    I.     This Court Lacks Subject Matter Jurisdiction to Maintain this Matter Because the Alleged Amount in Controversy Is Below the Jurisdictional Threshold ....................5

         A.   WCF's Alleged Damages for Fraud Are Limited to Out-of-Pocket Losses and Therefore Fail to Satisfy the Jurisdictional Amount in Controversy ...............6
         B.   WCF's Remaining Claims Are Subject to the Highest Intermediate Price Rule and Therefore Also Fail to Satisfy the Amount in Controversy ......................7
         C.   WCF's Claims for Non-Compensatory Damages Do Not Help It Satisfy the Amount in Controversy....................................................................................10

             1.   WCF's Punitive Damages Claim Does Not Satisfy the Amount in Controversy ...........................................................10
             2.   WCF's Claim for Attorneys' Fees Does Not Satisfy the Amount in Controversy Requirement .................................12
             3.   WCF Cannot Use Interest or Costs to Satisfy the Amount in Controversy.................................................................13

    II.   WCF Fails to State a Claim for Relief for Any Cause of Action ................................14

         A.   WCF Fails to State a Viable Claim for Fraud..................................................14
             1.   WCF Fails to Allege That Shrem Made Any Misrepresentation ...........14
             2.   WCF Has Failed to Allege Justifiable Reliance ......................................17
             3.   WCF Has Failed to Allege Any Cognizable Injury for Fraud ...............19

         B.   WCF has Failed to State a Claim for Breach of Fiduciary Duty ...................19
             1.   WCF Fails to Allege Shrem Owed WCF Any Fiduciary Duty .............19
             2.   WCF Fails to Allege Shrem Committed Any Misconduct ....................22
             3.   WCF Fails to Allege Any Cognizable Injury from a Breach.................22

         C.   WCF Fails to State a Claim for an Equitable Constructive Trust .................23
          D.   WCF's Claim for an Equitable Accounting Fails ...........................................24

Conclusion .............................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abercrombie v. Andrew College*,
    438 F. Supp. 2d 243 (S.D.N.Y. 2006)..........................................................................19, 20

*AFA Protective Systems, Inc. v. AT&T Co.*,
    57 N.Y.2d 912 (1982) ...............................................................................................7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................................5

*Atlantis Information Technology, GmbH v. CA, Inc.*,
    485 F. Supp. 2d 224 (E.D.N.Y. 2007) .............................................................................20

*Bank of America Corp. v. Lemgruber*,
    385 F. Supp. 2d 200 (S.D.N.Y. 2005)...............................................................................19

*Bayerische Landesbank, New York Branch v. Barclays Capital, Inc.*,
    902 F. Supp. 2d 471 (S.D.N.Y. 2012)...........................................................................20, 21

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................................................5

*Bracken v. MH Pillars, Inc.*,
    290 F.Supp.3d 258 (S.D.N.Y. 2017)...............................................................................11

*Brown v. Webster*,
    156 U.S. 328 (1895)...................................................................................................13

*Bynum v. Keber*,
    23 N.Y.S.3d 654 (N.Y. App. Div. 3d Dept. 2016) ..............................................................14

*Caballero v. Anselmo*,
    759 F. Supp. 144 (S.D.N.Y. 1991) ................................................................................9

*Cadle Co. v. Rochfort Enterprises (Bahamas) Ltd.*,
    No. 02 Civ. 9348 (LAK), 2003 WL 1702262 (S.D.N.Y. Mar. 31, 2003)..........................17

*Ciccone v. Hersh*,
    530 F. Supp. 2d 574 (S.D.N.Y. 2008)...............................................................................21

*Cohen v. Narragansett Bay Insurance Co.*,
    No. 4-cv-3623 (PKC), 2014 WL 4701167 (E.D.N.Y. Sept. 23, 2014)........................10, 12

*Colavito v. New York Organ Donor Network, Inc.*,
    356 F. Supp. 2d 237 (E.D.N.Y. 2005) ..............................................................................11

*Connecticut National Bank v. Fluor Corp.*,
  808 F.2d 957 (2d Cir. 1987)............................................................................17

*Cornock v. Murnighan*,
  727 N.Y.S.2d 803 (N.Y. App. Div. 3d Dept. 2001) ....................................14, 16

*Cruz v. McAneney*,
  816 N.Y.S.2d 486 (N.Y. App. Div. 2d Dept. 2006) .........................................23

*In re Dairy Mart Convenience Stores, Inc.*,
  411 F.3d 367 (2d Cir. 2005).............................................................................4

*Dash v. Seagate Technology (U.S.) Holdings, Inc.*,
  27 F. Supp. 3d 357 (E.D.N.Y. June 30, 2014) ..................................................17

*In re First Central Financial Corp.*,
  377 F.3d 209 (2d Cir. 2004)..............................................................................24

*Flickinger v. Harold C. Brown*,
  789 F. Supp. 616 (W.D.N.Y. 1992) ...............................................................9, 22

*Gilman v. BHC Securities, Inc.*,
  104 F.3d 1418 (2d Cir. 1997).............................................................................5

*Golden Budha Corp. v. Canadian Land Co. of America*,
  931 F.2d 196 (2d Cir. 1991)..............................................................................23

*Hewlett v. Staff*,
  652 N.Y.S.2d 350 (N.Y. App. Div. 3d Dept. 1997) ..........................................15

*I.B. Trading, Inc. v. Tripoint Global Entities, LLC*,
  280 F. Supp. 3d 524 (S.D.N.Y. 2017)................................................................24

*Islipu-Slip v. Gander Mountain Co.*,
  2 F. Supp. 3d 296 (N.D.N.Y. 2014)...................................................................24

*Jaksich v. Thomson McKinnon Securities, Inc.*,
  582 F.Supp. 485 (S.D.N.Y. 1984) ..................................................11, 16, 22

*Kimm v. KCC Trading, Inc.*,
  449 Fed. App'x. 85 (2d Cir. 2012)......................................................................12

*Kinsey v. Cendant Corp.*,
  588 F.Supp.2d 516 (S.D.N.Y. 2008)...................................................................8

*Lama Holding Co. v. Smith Barney Inc.*,
  88 N.Y.2d 413 (1996) ...................................................................................6, 19

*La Ross Partners, LLC v. Contact 911 Inc.*,
    874 F. Supp. 2d 147 (E.D.N.Y. 2012) ............................................................24

*Lawrence v. Kennedy*,
    944 N.Y.S.2d 577 (N.Y. App. Div. 2d Dept. 2012) ......................................24

*Lomaglio Associates, Inc. v. LBK Marketing Corp.*,
    892 F. Supp. 89 (S.D.N.Y. 1995) ...................................................................17

*Lupo v. Human Affairs International, Inc.*,
    28 F.3d 269 (2d Cir.1994)................................................................5, 6, 9, 12

*Lusins v. Cohen*,
    49 A.D. 3d 1015 (2008) ..................................................................................18

*Marini v. Lombardo*,
    912 N.Y.S.2d 693 (N.Y. App. Div. 2d Dept. 2010) ......................................23

*McGovern v. Best Building. & Remodeling*,
    666 N.Y.S. 2d 854 (N.Y. App. Div. 3d Dept. 1997) .................................11, 14

*McGovern v. T.J. Best Building. and Remodeling, Inc.*,
    245 A.D.2d 925 (1997) ...................................................................................15

*McNutt v. General Motors Acceptance Corp.*,
    298 U.S. 178 (1936).........................................................................................5

*Modern Settings, Inc. v. Prudential-Bache Securities, Inc.*,
    747 F. Supp. 194 (S.D.N.Y. 1990) ...................................................................9

*Morrison v. National Australia Bank Ltd.*,
    547 F.3d 167 (2d Cir. 2008)..............................................................................4

*Nwanze v. Time, Inc.*,
    125 F. App'x. 346 (2d Cir. 2005) ...................................................................12

*Osan Ltd. v. Accenture LLP*,
    454 F. Supp. 2d 46 (E.D.N.Y. 2006) ..............................................................20

*Pope v. Saget*,
    817 N.Y.S.2d 1 (2006).....................................................................................13

*Rolon v. Henneman*,
    517 F.3d 140 (2d Cir. 2008)..............................................................................5

*Rudman v. Cowles Communications*,
    280 N.E.2d 867 (N.Y. 1972).............................................................................14

*Rut v. Young Adult Institute, Inc.*,
    901 N.Y.S.2d 715 (N.Y. App. Div. 2d Dept. 2010) ......................................19

*Sabo v. Delman*,
  143 N.E.2d 906 (N.Y. 1957) ...................................................................... 14

*Sager v. Friedman*,
  270 N.Y. 472 (1936) ................................................................................... 6

*Saul v. Cahan*,
  61 N.Y.S.3d 265 (N.Y. App. Div. 2d Dept. 2017) ........................................ 21

*Schultz v. Commodity Futures Trading Commission*,
  716 F.2d 136 (2d Cir. 1983)................................................... 8, 9, 12, 22

*Security Pacific Mortgage and Real Estate Services, Inc. v. The Republic of the
  Philippines*,
  962 F.2d 204 (2d Cir. 1992) ...................................................................... 23

*Shultis v. Reichel–Shultis*,
  1 A.D.3d 876 (2003) ............................................................................ 17, 18

*Simonds v. Simonds*,
  380 N.E.2d 189 (N.Y. 1978) ...................................................................... 23

*Sinochem International Co. Ltd. v. Malaysia International Shipping Corp.*,
  549 U.S. 422 (2007) ..................................................................................... 4

*Starr Foundation v. American International Group, Inc.*,
  76 A.D. 3d 25 (2010) ............................................................................ 6, 12

*Tanzman v. La Pietra*,
  778 N.Y.S.2d 199 (N.Y. App. Div. 3d Dept. 2004) ........................... 15, 17, 18

*Tonghook America, Inc. v. Shipton Sportswear Co.*,
  14 F.3d 781 (2d Cir. 1994)........................................................................... 5

*Transaero, Inc. v. La Fuerza Area Boliviana*,
  24 F.3d 457 (2d Cir. 1994) ........................................................................ 13

*United States v. Ruiz*,
  536 U.S. 622 (2002) ..................................................................................... 4

*VTech Holdings, Ltd. v. Pricewaterhouse Coopers, LLP*,
  348 F. Supp. 2d 255 (S.D.N.Y. 2004) .................................................... 19, 20

*Watty v. Cuomo*,
  No. 12-cv-2660 (SJF)(WDW), 2013 WL 4495184 (E.D.N.Y. Aug. 14, 2013) ................ 10

**Federal Statutes**

28 U.S.C. § 1332 ................................................................................... 5, 13

**Other Authorities**

Fed.R.Civ.P. 9(b) .................................................................................................17

Fed.R.Civ.P. 12(b)(1)...........................................................................................4

Fed.R.Civ.P. 12(b)(6)...........................................................................................5

**Introduction**

Winklevoss Capital Fund, LLC's ("WCF") lawsuit against Charlie Shrem ("Shrem") should be dismissed with prejudice for its lack of subject matter jurisdiction and failure to state any claims for relief.  Shrem should be relieved from defending himself against WCF's meritless and stale case as soon as possible.

WCF's case centers around its contention that it provided $61,000 in funds to Shrem in 2012 that have not been properly accounted for by Shrem.  Putting aside for now that these funds may have been used to purchase bitcoins for WCF but at a higher price(s) than it believes to be the case, or for transaction fees or other costs – this case soaking wet has a total value of not more than $61,000.  This amount fails to exceed the $75,000 subject matter jurisdiction amount required for diversity-based civil actions.  Prompt dismissal is warranted.

Even assuming jurisdiction does exist, none of WCF's four causes of action state viable claims upon which relief can be granted.  Indeed, WCF's claims are in essence time-barred breach of contract claims masquerading as "fraud"-based claims in a transparent effort to take advantage of a longer statute of limitations.  Dismissal is warranted on these grounds too.

**Factual Allegations of WCF's Complaint**

According to the Complaint, beginning in mid-2012, the principals of WCF, Cameron and Tyler Winklevoss, "began to investigate in virtual currency."  (Compl. ¶ 8.)  The Winklevoss brothers were purportedly "intrigued by the potential of peer-to-peer money protocol, the underlying blockchain technology, and this new 'Internet of Money,'" and "saw enormous potential if they could help nurture Bitcoin into adulthood."  (Id. ¶¶ 9-10.)

But due to their concern that the "unprecedented size" of their "contemplated investment would undoubtedly drive up bitcoin's price because of its relatively low market capitalization

in 2012," the Winklevoss brothers sought the assistance of Charlie Shrem, who "had just launched BitInstant [not sued as a defendant herein], an online platform for buying and selling bitcoin[s]."  (*Id*. ¶¶ 13, 15.)

WCF alleges that the Winklevoss brothers told Shrem that they, through WCF, wanted to purchase "a large quantity of bitcoin."  (*Id*. ¶ 14.)  Shrem purportedly wanted "to court an investment from WCF in BitInstant," and therefore offered to help acquire bitcoin[s] for WCF "by buying on several different venues and spreading out purchases so as not to move the market."  (*Id*. ¶¶ 15-16.)  Additionally, Shrem "never indicated that he intended to charge a commission or transaction fees for his services."  (*Id.* ¶ 16.)

WCF alleges that Shrem made two promises to WCF in September 2012: (1) that he would buy bitcoins "at the 'best price,'" and (2) that he would provide "an overall report once the [bitcoins] are bought, so you can see the average price."  (*Id.* ¶¶ 1, 14, 17-19, 22, 50, 55, 63, 69.)  In purported reliance on these statements, between September 2012 and February 2013, WCF sent Shrem a total of $750,000 to purchase bitcoins on its behalf.  (*Id*. ¶¶ 1, 20, 57, 62.)

WCF does <u>not</u> allege that any set amount to make purchases was ever discussed or agreed upon. WCF also does <u>not</u> allege that the parties had any contract, written or oral.  <u>Nor</u> does WCF allege that the parties had any formal legal relationship, such as that of a broker or investment adviser to his client.  Nevertheless, WCF claims it "placed complete and absolute confidence in Shrem and entrusted him to properly invest its funds in bitcoin[s] and to provide an accounting."  (*Id.* ¶ 1.)  Further, it gave Shrem "complete and absolute discretion over the execution of bitcoin purchases for WCF, including where and when to buy bitcoin." (*Id.* ¶¶ 1, 50.)

According to the Complaint, Shrem provided an accounting to WCF, as he said he would, on January 31, 2013.  (*Id.* ¶¶ 23-24.)  That same day, Cameron Winklevoss allegedly "clarified" for Shrem, apparently for the first time, that "he expected, as a proper accounting, (i) the number of bitcoin[s] purchased, (ii) the date they were purchased, (iii) the cost basis of each purchase, and (iv) the Bitcoin address where they were sent."  (*Id.* ¶ 26.)  Shrem purportedly provided additional details over the next several weeks.  (*Id.* ¶ 27.)  WCF claims it was unhappy with Shrem's subsequent accounting efforts, and, as a result, "ceased working with Shrem and continued to acquire additional bitcoin[s] in the open market."  (*Id.* ¶ 21.)

WCF alleges that, of the $250,000 it sent to Shrem between September and October 2012, Shrem only ever "accounted for approximately $189,000 worth of bitcoin[s] – a $61,000 shortfall that would have purchased 5,000 bitcoin[s] at the time."  (*Id.* ¶¶ 2, 35.) WCF therefore claims it has been "deprived of 5,000 bitcoin[s] that it would have received were it not for Shrem's fraud."  (*Id.* ¶ 59.)

WCF alleges it hired a forensic accounting firm that has discovered that Shrem transferred 5,000 bitcoins in December 2012 to a bitcoin address purportedly associated with Shrem during this same time period, and that that bitcoin address was subsequently emptied of bitcoin.  (*Id.* ¶¶ 41-45.)  By WCF's logic, this necessarily means that Shrem used $61,000 of WCF's funds to buy 5,000 bitcoins, and then converted these bitcoins for himself.  (*Id.* ¶¶ 40-45.)  WCF, however, has not amended its Complaint to reflect the fact that a third party has now come forward to explain that the 5,000 bitcoins transferred from the address identified in the Complaint belonged to him –  not Shrem or WCF.

Based on these allegations, WCF brings claims against Shrem for: (1) breach of fiduciary duty, (2) fraud, (3) constructive trust, and (4) accounting.  (*Id.* ¶¶ 12-71.)  WCF

seeks compensatory damages "calculated in the highest intermediate value of 5,000 bitcoins between the time of the wrongdoing and the time of trial or as otherwise calculated in accordance with the Court's instructions." (*Id.*, Prayer.)  WCF also improperly – because the law does not permit it – seeks unspecified punitive damages, attorneys' fees and costs. (*Id.*) WCF claims this Court has jurisdiction based on diversity because the parties are citizens of different states and the amount in controversy purportedly exceeds $75,000. (*Id.* ¶ 4.)

## Applicable Legal Standards

### I.  Standard for Rule 12(b)(1) Dismissal for Lack of Subject Matter Jurisdiction

Dismissal under Rule 12(b)(1) is appropriate when a district court lacks subject matter jurisdiction to adjudicate a claim. Fed.R.Civ.P. 12(b)(1); *Morrison v. Nat'l Austl. Bank Ltd*., 547 F.3d 167, 170 (2d Cir. 2008).  A federal district court has the authority to determine whether it has jurisdiction to hear a particular case. *United States v. Ruiz*, 536 U.S. 622, 628 (2002); *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 374 (2d Cir. 2005) (district court has jurisdiction to determine its own jurisdiction).  A district court "generally may not rule on the merits of a case without first determining whether it has jurisdiction over the category of claim in the suit (subject matter jurisdiction) . . . ." *Sinochem Int'l Co. Ltd. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007).

In federal diversity-based jurisdiction cases, as asserted by WCF here, 28 U.S.C. § 1332 requires an amount in controversy above $75,000.  "A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount." *Tonghook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994).  This Court lacks subject matter jurisdiction

to adjudicate any of WCF's overlapping claims because the alleged amount in controversy is $61,000, which is <u>below</u> the jurisdictional threshold.

## II.     Standard for a Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

Rule 12(b)(6) provides for the dismissal of a complaint when a plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12 (b)(6).  A complaint survives a motion to dismiss only if it states a claim(s) for relief that is "plausible on its face" and the factual allegations sufficiently "raise a right to relief above the speculative level." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56, 570 (2007).  Further, allegations must consist of more than mere labels, legal conclusions, or a "formulaic recitation of the elements of a cause of action," and bare legal conclusions are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 681; *see also Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (district court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions").

**Argument**

## I.     This Court Lacks Subject Matter Jurisdiction to Maintain this Matter Because the Alleged Amount in Controversy Is Below the Jurisdictional Threshold

Diversity jurisdiction requires that the amount in controversy exceed $75,000.  28 U.S.C. § 1332.  "The Supreme Court has held that the party asserting diversity jurisdiction in federal court has the burden of establishing the existence of the jurisdictional amount in controversy." *Lupo v. Human Affairs Int'l, Inc.,* 28 F.3d 269, 273 (2d Cir.1994) (citing *McNutt v. Gen. Motors Acceptance Corp*., 298 U.S. 178, 189 (1936)); *Gilman v. BHC Sec., Inc*., 104 F.3d 1418, 1421 (2d Cir. 1997) (party asserting diversity jurisdiction bears the burden "of proving that it appears to a reasonable probability that the [amount in controversy]

is in excess of the statutory jurisdictional amount").  A party's conclusory prediction about the amount of damages a plaintiff may claim is insufficient to meet this burden.  *Id.* at 1428; *McNutt*, 298 U.S. at 189 (burden of alleging amount in controversy is not met by "mere averment").  Thus, where "the jurisdictional amount is not clearly alleged in the plaintiff's complaint, federal courts lack diversity jurisdiction."  *Lupo*, 28 F.3d at 273-74.

Since WCF fails to allege an amount in controversy that *exceeds* $75,000, this Court does not have subject matter jurisdiction over any of WCF's claims, and all of its claims must be dismissed for the following reasons.

### A.   WCF's Alleged Damages for Fraud Are Limited to Out-of-Pocket Losses and Therefore Fail to Satisfy the Jurisdictional Amount in Controversy

WCF's fraud claim is strictly limited by New York's "out-of-pocket rule," which holds that the "measure of damages [for fraud] is indemnity for the actual pecuniary loss sustained as the direct result of the wrong."  *Starr Found. v. American Int'l. Group, Inc*., 76 A.D. 3d 25, 28 (2010).  WCF cannot meet the $75,000 threshold under that rule.

Under the "out-of-pocket" rule, a plaintiff's loss is the "difference between the value of the bargain which a plaintiff was induced by fraud to make and the amount or value of the consideration exacted as the price of the bargain."  *Sager v. Friedman*, 270 N.Y. 472, 481 (1936).  "Damages are to be calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained."  *Lama Holding Co. v. Smith Barney, Inc.,* 88 N.Y.2d 413, 421 (1996).  Thus, "there can be no recovery of profits which would have been realized in the absence of fraud."  *Id.*; *see also Starr Found.*, 76 A.D. 3d at 28 (fraudulent inducement claim to recover value that allegedly would have realized by selling common stock before price sharply declined was barred by out-of-pocket-rule,

restricting damages to actual pecuniary loss sustained as direct result of fraud, rather than profits that would have been realized in the absence of fraud).

Here, WCF impermissibly seeks recovery of profits it alleges it would have realized in the absence of Shrem's fraud in direct violation of New York's out-of-pocket rule.  WCF alleges that Shrem has failed to account for $61,000 of the money it sent him in 2012 to buy bitcoins on its behalf.  (Compl. ¶ 2.)  But instead of suing Shrem for that $61,000, WCF seeks to sue Shrem for the "5,000 bitcoin[s] it [allegedly] *would have* received *were it not for Shrem's fraud*."  (*Id*. ¶ 59 (emphasis added).)

WCF's contorted logic is that, in 2012, $61,000 would have bought 5,000 bitcoins, and therefore it is entitled to the 5,000 bitcoins it claims Shrem *should have* bought with its money.  (*Id*. ¶¶ 2, 52, 59, 65.)  But such expectation, benefit of the bargain damages are explicitly forbidden for fraud.  *See AFA Protective Systems, Inc. v. AT&T Co*., 57 N.Y.2d 912, 914 (1982) ("The rule in [New York] State is that all elements of profit are excluded from a computation of damages in an action grounded in fraud.").

At most, WCF has alleged an actual pecuniary loss of $61,000, well below the jurisdictional threshold.  Consequently, this Court lacks subject matter jurisdiction over WCF's fraud claim as a matter of law and dismissal is required.

## B. WCF's Remaining Claims Are Subject to the Highest Intermediate Price Rule and Therefore Also Fail to Satisfy the Amount in Controversy

This Court lacks subject matter jurisdiction over WCF's remaining causes of action for breach of fiduciary duty, constructive trust and accounting under New York's "highest intermediate price rule."

In New York, the measure of damages for wrongful conversion of stock or "property of like character" is "either (1) its value at the time of conversion or (2) its highest intermediate value between notice of the conversion and a reasonable time thereafter during which the stock could have been replaced had that been desired, whichever of (1) or (2) is higher." *Schultz v. Commodity Futures Trading Comm'n*, 716 F.2d 136, 141 (2d Cir. 1983).[1] A "reasonable time" for a party to replace property of fluctuating value after receiving notice of its conversion is the time a party would need to reenter the market. *Id.* at 140.

The reason for this rule is that it would be "unjust to award as damages the highest value attained by the stock at a point in time well after an injured party . . . knew his shares were lost and could have replaced them." *Id.* Damage awards should place the injured party "in the position he would have been in had not his rights been violated." *Id.* at 139-140. Damage awards should <u>not</u> create a "windfall" to the complaining party. *Id.* at 140-141.

WCF seeks exactly the sort of "windfall" the law forbids. WCF alleges that it is entitled to "the highest intermediate value of 5,000 bitcoins between the time of the wrongdoing and the time of trial." (Compl., Prayer ¶ 1.) But, pursuant to all applicable law, WCF's damages are limited to: (1) the value of 5,000 bitcoins at the time of the purported conversion, or (2) the value of 5,000 bitcoins between when WCF had notice of the purported conversion and a "reasonable time" after WCF could attempt to reenter the market, whichever of (1) or (2) is higher. *See Schultz,* 716 F.2d at 141; *Kinsey v. Cendant Corp.*, 588 F.Supp.2d 516, 521 (S.D.N.Y. 2008) ("*Schultz* remains valid for conversion claims").

---

[1] *Schultz* involved stock but recognized that its holding applied equally to any "wrongfully converted property of fluctuating value." 716 F.2d at 140, 141.

8

Under the first prong, WCF's damages are limited to $61,000, the value of the bitcoins at the time of the purported conversion.  This is obviously not in excess of $75,000.

Under the second prong, WCF was on notice of Shrem's purported misconduct at the time of conversion in September 2012, when it alleges Shrem did not buy bitcoins at the "best price," and did not provide the accounting he allegedly promised he would provide. (Compl. ¶¶ 23-24.)  At the absolute latest, WCF was on notice of the purported conversion in January 31, 2013, when Cameron Winklevoss contacted Shrem about purported deficiencies in his accounting.  (*Id*. ¶¶ 24-26.)  Therefore, the highest amount in damages WCF can possibly claim is the purchase price of 5,000 bitcoins at a "reasonable time" needed to reenter the market after WCF received notice of the conversion in September 2012, or, at the latest, in January 2013.  *See Schultz*, 716 F.3d at 141.

Courts have recognized that a "reasonable time" will vary from case-to-case and have held that a party may need anywhere from a few days to a few weeks to reenter the market. *See, e.g., Modern Settings, Inc. v. Prudential-Bache Sec., Inc*., 747 F. Supp. 194, 196 (S.D.N.Y. 1990) ("reasonable period" was 3-5 days); *Caballero v. Anselmo*, 759 F. Supp. 144, 152-153 (S.D.N.Y. 1991) ("reasonable time" was ten days).  Courts have roundly rejected the approach WCF tries here, refusing to allow parties to claim the value of the converted property at the "time of judgment."  (Compl., Prayer ¶ 1); *see, e.g., Flickinger v. Harold C. Brown*, 789 F. Supp. 616, 619 (W.D.N.Y. 1992) ("plaintiff cites no case in which a plaintiff, entitled to recover pursuant to any legal theory for a wrongful delivery of stock, was awarded the full value of the stock at the time of judgment").  Additionally, WCF fails to allege what the value of bitcoins was a "reasonable time" after it received notice of the purported conversion anywhere in the Complaint.  *See Lupo*, 28 F.3d at 273-74 (if "the

jurisdictional amount is not clearly alleged in the plaintiff's complaint, federal courts lack diversity jurisdiction . . .").

For all the above reasons, this Court lacks subject matter jurisdiction over WCF's claims for breach of fiduciary duty, constructive trust and accounting. on this basis alone.

### C.   WCF's Claims for Non-Compensatory Damages Do Not Help It Satisfy the Amount in Controversy

WCF alleges it is owed punitive damages, attorneys' fees, costs and interest. However, none of these additional claims for damages can be used to satisfy the necessary amount in controversy.

### 1.   WCF's Punitive Damages Claim Does Not Satisfy the Amount in Controversy

WCF's allegations for punitive damages cannot be used to satisfy the amount in controversy for three reasons: (1) WCF is not entitled to punitive damages on any of its claims; (2) WCF is not entitled to actual damages and so cannot claim punitive damages; and (3) WCF does not state the amount of punitive damages it is claiming.

A party must establish that it has a claim for punitive damages before using punitive damages to satisfy the amount in controversy requirement.  *Watty v. Cuomo*, 2013 WL 4495184, at *2 (E.D.N.Y. Aug. 14, 2013) (demand for punitive damages not sufficient to satisfy amount-in-controversy where plaintiff had no legal or factual basis for its demand for punitive damages).  Mere conclusory allegations that a party is entitled to punitive damages are not enough.  *Cohen v. Narragansett Bay Ins. Co*., 2014 WL 4701167, at *3, n. 4 (E.D.N.Y. Sept. 23, 2014) ("the Court is not obligated to accept, on face value, a claimed amount of punitive damages, particularly where there would be no diversity without such

damages")[2].  "Punitive damages are only available for fraud claims where the fraud alleged is gross and involves high moral culpability."  *Colavito v. New York Organ Donor Network, Inc.,* 356 F. Supp. 2d 237, 240 (E.D.N.Y. 2005).

Here, WCF claims it is entitled to punitive damages based on Shrem's purported misrepresentations.  But both of Shrem's purported misrepresentations were mere statements of expected performance, and not actionable fraud.  *McGovern v. Best Bldg. & Remodeling*, 666 N.Y.S. 2d 854, 857 (N.Y. App. Div. 3d Dept. 1997) ("mere fact that the expected performance was not realized is insufficient to demonstrate that [the] defendant falsely stated its intentions," as necessary to state a claim for fraud).  Shrem could not reasonably predict the price at which he could buy bitcoins, a fluctuating commodity, and his purported statement that he would buy bitcoins at the "best price" was merely an expectation of what he hoped to do.  *Jaksich v. Thomson McKinnon Sec., Inc*., 582 F.Supp. 485, 493 (S.D.N.Y. 1984) (recommendation that investor sell stock that later rose in value was not a misrepresentation but "part of the gamble any stock market participant takes, whether investor or broker").  Shrem's purported statement that he would provide an accounting was likewise a statement of future performance, *i.e.*, of what he hoped to do.  As discussed below, WCF fails to allege the requisite scienter for either claim.

Moreover, Shrem <u>did</u> provide an accounting, as WCF is forced to acknowledge. (Compl. ¶¶ 24-26.)  That WCF claims it found Shrem's accounting "inadequate," does not make Shrem's representation fraudulent and it certainly does not make Shrem's behavior rise to the level of "gross moral culpability" required for punitive damages.  This is particularly

---

[2] *See also Bracken v. MH Pillars, Inc*., 290 F.Supp.3d 258, 268 (S.D.N.Y. 2017) ("Because the complaint is devoid of allegations that meet the punitive damages standard, the potential for punitive damages may not be used to meet the diversity jurisdiction threshold.")

true given that WCF only articulated to Shrem what it expected in an accounting as far as detail months after Shrem made his purported representation.  (*Id.* ¶ 26.)

WCF is also not entitled to punitive damages because it alleges actual damages that it is not entitled to: lost profit damages for a fraud claim in violation of New York's out-of-pocket rule, *see Starr Found.*, 76 A.D. at 28, and 5,000 bitcoins valued at the time of trial in violation of New York's highest intermediate price rule, *see Schultz*, 716 F.2d at 141.  Since WCF is not entitled to the actual damages it seeks, it is not entitled to punitive damages on those claims.  *See Nwanze v. Time, Inc.*, 125 F. App'x. 346, 349 (2d Cir. 2005) (plaintiff not allowed to meet the amount in controversy requirement by claiming $5,000,000 in punitive damages where his actual damages consisted of speculative lost profit damages in violation of New York's out-of-pocket rule).

Finally, WCF fails to allege the amount of punitive damages it is purportedly entitled to anywhere in its Complaint.  Overall, WCF cannot use its punitive damages claim to satisfy the amount in controversy as a matter of law.  *See Lupo,* 28 F.3d at 273-74 (jurisdictional amount must be "clearly alleged" to satisfy amount in controversy requirement for diversity).

### 2.    WCF's Claim for Attorneys' Fees Does Not Satisfy the Amount in Controversy Requirement

An award of attorneys' fees may be used to meet the statutory jurisdictional threshold for diversity cases "only if they are recoverable as a matter of right pursuant to statute or contract."  *Kimm v. KCC Trading, Inc.*, 449 Fed. App'x. 85, 85–86 (2d Cir. 2012) (citing *Givens v. W.T. Grant Co.*, 457 F.2d 612, 614 (2d Cir. 1972)); *accord Cohen v. Narragansett Bay Ins. Co.*, 2014 WL 4701167, at *2 (E.D.N.Y. Sept. 23, 2014) (noting that attorneys' fees

"may not be used to satisfy the amount in controversy for purposes of diversity," if the fees are not recoverable as a matter of right per statute or contract).

Attorneys' fees are <u>not</u> available by statute or contract under any of WCF's four common law causes of action, nor does WCF claim that they are anywhere in its Complaint. In addition, attorneys' fees cannot be used to satisfy WCF's amount in controversy calculation because damages are allowable on a fraud cause of action only for actual, pecuniary loss. *See Pope v. Saget*, 817 N.Y.S.2d 1, 5 (2006) (damages for action predicated on fraud is limited to "actual pecuniary loss" and attorneys' fees cannot be sought). This is black letter law. Accordingly, WCF cannot use its claim for attorneys' fees to satisfy the amount in controversy as a matter of law.

### 3. WCF Cannot Use Interest or Costs to Satisfy the Amount in Controversy

28 U.S.C. § 1332(a) mandates that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, *exclusive of interest and costs* . . . ." (Emphasis added.) Nonetheless, interest is included when it is an "essential ingredient of the principal claim." *Brown v. Webster*, 156 U.S. 328, 330 (1895). The Second Circuit has interpreted the Supreme Court's jurisprudence on this issue as resting on the notion that when interest "'is owed as part of an underlying contractual obligation [,]' it is part of the principal claim." *Transaero, Inc. v. La Fuerza Area Boliviana*, 24 F.3d 457, 461 (2d Cir. 1994).

Here, there is no underlying contractual obligation involving interest alleged. In fact, there is no contractual obligation alleged at all. WCF does not bring its claims under any theory of written or oral contract. Therefore, interest cannot be added to the $61,000 at issue

in order to satisfy the minimum amount in controversy necessary for diversity jurisdiction as a matter of law.  To sum up, subject matter jurisdiction is lacking over this civil dispute and all of WCF's claims must be dismissed.

## II.   **WCF Fails to State a Claim for Relief for Any Cause of Action**

### A.   **WCF Fails to State a Viable Claim for Fraud**

To allege fraud, "a plaintiff must allege with particularity a misrepresentation or a material omission of fact which was false and known to be false by [the] defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury." *Bynum v. Keber*, 23 N.Y.S.3d 654, 657 (N.Y. App. Div. 3d Dept. 2016).  WCF's fraud claim fails because WCF fails to allege: (1) any statement that is actionable fraud, (2) justifiable reliance, or (3) injury.

#### 1.   **WCF Fails to Allege That Shrem Made Any Misrepresentation**

A present expression of the intent to perform a future act is actionable as fraud only if actually made with "a preconceived and undisclosed intention of not performing it." *Sabo v. Delman*, 143 N.E.2d 906, 908 (N.Y. 1957).  Absent a showing of a "present intent to deceive, a statement of future intentions, promises or expectations is not actionable on the grounds of fraud." *Cornock v. Murnighan,* 727 N.Y.S.2d 803, 804 (N.Y. App. Div. 3d Dept. 2001). "Stated another way, '[t]he mere fact that the expected performance was not realized is insufficient to demonstrate that [the] defendant falsely stated its intentions.'" *McGovern v. Best Bldg. & Remodeling,* 666 N.Y.S.2d 854, 857 (N.Y. App. Div. 3d Dept. 1997) (internal quotations omitted).  Whether a party ever intended to perform on its representations must be shown by "'satisfactory' or 'clear and convincing' evidence." *Rudman v. Cowles Commc'ns,* 280 N.E.2d 867, 871 (N.Y. 1972).  Conclusory allegations will not suffice. *Tanzman v. La*

*Pietra*, 778 N.Y.S.2d 199 (N.Y. App. Div. 3d Dept. 2004) is instructive.  In *Tanzman*,
investors sued the promoters of a corporation, alleging that they were induced to invest in a
corporation by statements of promoters that they would buy back the shares at the original
purchase price after two years.  *Id*. at 200.  When the promoters failed to buy back the shares,
the investors sued for fraud.  *Id*.  The court rejected the claim.  *Id*. at 201.  In making its
finding, the court held that plaintiffs had "failed to present any evidence, other than the
corporation's lack of assets before plaintiffs made their investment, that defendant did not
intend to keep his promise at the time it was made.  Absent proof of the requisite intent,
plaintiffs' claim was subject to dismissal."  *Id*.

Elsewhere, in *Hewlett v. Staff*, 652 N.Y.S.2d 350 (N.Y. App. Div. 3d Dept. 1997),
plaintiff alleged that she was induced to acquire an interest in a lake front real estate
development based on defendants' promises that she would not incur any personal liability as
a result of the investment.  *Id*. at 351.  The court dismissed the claim because "[t]he
assurances allegedly relied on my plaintiff constitute nothing more than 'mere expressions of
opinion of future expectations.'"  *Id*.

In making its finding, the *Hewlett* court held that "[t]he absence of any factual
allegations to demonstrate that the assurances were statements of intent to do something in
the future, made with the knowledge that the acts will not in fact be performed or with the
present intention not to perform them, is fatal to plaintiff's fraud claim.  Plaintiff alleges
nothing more than overly optimistic expectations for a risky business venture that ultimately
failed."  *Id*.; *McGovern v. T.J. Best Bldg. and Remodeling, Inc*., 245 A.D.2d 925, 927 (1997)
(builder's "unfulfilled promises with respect to work that was to be performed" was not
actionable fraud because alleged misrepresentations "must be more than merely promissory

statements about what is to be done in the future; they must be misstatements of material fact or promises made with a present, albeit undisclosed, intent not to perform them").

In support of its fraud claim, WCF alleges Shrem made two statements: (1) that he would buy the bitcoins "at the best price," and (2) that he would provide a full accounting. (Compl. ¶¶ 50, 55, 63, 69.)  Neither of the alleged statements constitute actionable fraud.

WCF's allegation that Shrem promised to buy bitcoins at the "best price" is a mere expectation of future performance, *i.e.,* of what Shrem expected to do.  In 2012, as now, the market for bitcoins was not stable.  Shrem could not reasonably predict the price at which he could buy bitcoins, nor does WCF allege he could.  Shrem's statement of future, expected performance is not actionable fraud.  *See Jaksich*, 582 F. Supp. at 493 (recommendation that investor sell stock that later rose in value was not a misrepresentation but "part of the gamble any stock market participant takes, whether investor or broker"); *see also Cornock*, 727 N.Y.S.2d at 804 ("mere fact that the expected performance was not realized is insufficient to demonstrate that [the] defendant falsely stated its intentions").

WCF's allegation that Shrem promised to provide an accounting is also not actionable.  WCF alleges that Shrem told WCF he would provide an accounting, and, that he *did* provide an accounting.  (*Id.* ¶ 24.)  That WCF may have found this accounting "inadequate" is not actionable fraud, where the parties had no agreement as to what the accounting would state, and it was not until January 2013 – months after Shrem made his purported promise – that WCF "clarified" for Shrem for the first time the type of accounting that it expected.  (*Id*. ¶ 26.)

Moreover, WCF fails to allege anywhere in the Complaint that Shrem did not intend to perform on either promise at the time when it was made.  In support of its scienter claim

WCF includes a single, conclusory allegation that "[t]hose statements were false, and Shrem knew those statements were false at the time he made them."  (*Id.* ¶ 56.)  But, to allege fraud, plaintiffs must "'specifically plead those events,' which 'give rise to a strong inference' that the defendants had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth.'"  *Connecticut Nat'l Bank v. Fluor Corp.*, 808 F.2d 957, 962 (2d Cir. 1987) (affirming motion to dismiss on fraud claim where defendants failed to plead intent to defraud with requisite particularity).  Conclusory allegations will not suffice.  *Id.*; *see also* Fed.R.Civ.P. 9(b); *Shultis v. Reichel–Shultis*, 1 A.D.3d 876, 877-78 (2003) (dismissing fraud claim where plaintiff "offered no evidence, other than conclusory assertions, to show the defendant [] intentionally deceived him").[3]  WCF fails to allege anywhere in the Complaint that Shrem did not intend to buy bitcoins at the "best price," or to provide an accounting when he made purportedly made those statements.  WCF fails to state a claim for fraud.

### 2.    WCF Has Failed to Allege Justifiable Reliance

Fraud also requires that a plaintiff allege that he acted in justifiable reliance on the defendants' misrepresentations.  *Tanzman*, 8 A.D.3d at 707.  WCF has failed to do so.

"Where a party has the means to discover the true nature of the transaction by the exercise of ordinary intelligence, and fails to make use of those means, he [or she] cannot

---

[3] *See Cadle Co. v. Rochfort Enters. (Bahamas) Ltd.*, 2003 WL 1702262, *1 (S.D.N.Y. Mar. 31, 2003) (dismissal where plaintiff made only conclusory allegations about a series of transfers made with intent to defraud but failed "to set out the circumstances with particularity"); *Dash v. Seagate Tech. (U.S.) Holdings, Inc.*, 27 F. Supp. 3d 357, 362 (E.D.N.Y. June 30, 2014) (conclusory allegations that defendant-manufacturer intentionally concealed and failed to disclose the true facts about the product of the purpose of inducing consumer and putative class members to purchase product failed to meet the fraud with particularity requirements of Rule 9(b)); *Lomaglio Assocs, Inc. v. LBK Mktg. Corp.*, 892 F. Supp. 89, 94-95 (S.D.N.Y. 1995) (finding "Plaintiff's general claim that [defendant] never intended to perform its duties under the contract" insufficient to allege fraud).

claim justifiable reliance on [the] defendant's misrepresentations." *Id.*; *see also Shultis*, 1 A.D. 876 at 878 ("no justifiable basis for [plaintiff's] reliance on any alleged misrepresentations inasmuch as the [purported misrepresentation] could have been discerned through the exercise of ordinary intelligence").

WCF claims that it justifiably relied on Shrem's statement that he would buy bitcoins at the "best price" (Compl. ¶¶ 14, 57), but WCF was <u>itself</u> buying and selling bitcoins on the open market contemporaneous with its interactions with Shrem (*id.* ¶ 21). WCF had the opportunity, through the exercise of ordinary diligence, to both purchase bitcoins at the "best price" itself, or to find out the best price of bitcoins at the time and to discern whether Shrem was in fact buying bitcoins at that price. WCF therefore could not have acted in justifiable reliance on any statements by Shrem as to the "best price" of bitcoins.

Shrem's statement that he would provide WCF with an accounting is equally unavailing. WCF alleges that Shrem failed to send it the accounting he had promised in September 2012, but WCF, by its own admission, continued to send Shrem money for months after Shrem purportedly reneged on his promise. (*Id.* ¶¶ 20, 24-26.) Moreover, WCF could not have justifiably relied on Shrem's promise to provide an accounting that it easily could have compelled itself. *See Lusins v. Cohen*, 49 A.D. 3d 1015, 1018 (2008) (no justifiable reliance by a decedent's widow in accepting insurance proceed as a purchase price and as a settlement of decedent's interest in medical business entities, where the widow could have compelled a valuation of the entities on behalf of the estate prior to accepting the settlement but declined to do so).

### 3.    WCF Has Failed to Allege Any Cognizable Injury for Fraud

As discussed above, the out-of-pocket rule limits damages for fraud claims to actual pecuniary loss. *Lama Holding*, 88 N.Y.2d at 421 ("Damages [for fraud] are to be calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained."). WCF's claim that it is entitled to the "5,000 bitcoin[s] that it would have received were it not for Shrem's fraud" (Compl. ¶ 59) is not permitted on a fraud cause of action, and therefore WCF has failed to allege injury as a matter of law.

### B.    WCF has Failed to State a Claim for Breach of Fiduciary Duty

To succeed on a cause of action for breach of fiduciary duty, WCF must demonstrate: (1) the existence of a fiduciary relationship; (2) misconduct by the defendant; and (3) damages directly caused by the defendant's misconduct. *Rut v. Young Adult Inst., Inc.*, 901 N.Y.S.2d 715, 716 (N.Y. App. Div. 2d Dept. 2010). WCF has failed to show any of these.

### 1.   WCF Fails to Allege Shrem Owed WCF Any Fiduciary Duty

Under New York law, a fiduciary relation exists when one person "is under a duty to act or to give advice for the benefit of the other upon matters within the scope of the relation." *Bank of Am. Corp. v. Lemgruber*, 385 F. Supp. 2d 200, 224 (S.D.N.Y. 2005) (quoting *Mandelblatt v. Devon Stores, Inc.*, 132 A.D.2d 162, 168 (1st Dept. 1987)).

Such a relationship may arise "when one has reposed trust or confidence in the integrity or fidelity on another who thereby gains a resulting superiority of influence over the first, or when one assumes control and responsibility over another." *VTech Holdings, Ltd. v. Pricewaterhouse Coopers, LLP*, 348 F. Supp. 2d 255, 268 (S.D.N.Y. 2004) (internal quotations omitted). "[M]ere assertions of 'trust and confidence' are insufficient to support a claim of a fiduciary relationship." *Abercrombie v. Andrew Coll.*, 438 F. Supp. 2d 243, 274

19

(S.D.N.Y. 2006).  "[T]he fact that one party trusts the other is insufficient to create a fiduciary relationship."  *Id*.  Moreover, "where the plaintiff allege[s] a fiduciary relationship based only on the defendants' expertise and superior knowledge, the claim is dismissed, since plaintiff has provided no support for the proposition that mere expertise in a matter creates fiduciary responsibilities."  *Bayerische Landesbank, N.Y.  Branch v. Barclays Capital, Inc*., 902 F. Supp. 2d 471, 475 (S.D.N.Y. 2012).

 "Under New York law, when parties deal at arms length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances."  *Atlantis Info. Tech. GmbH v. CA, Inc*., 485 F. Supp. 2d 224, 232 (E.D.N.Y. 2007).  "[A] conventional business relationship, without more, does not become a fiduciary relationship by mere allegation."  *Osan Ltd. v. Accenture LLP*, 454 F. Supp. 2d 46, 56-57 (E.D.N.Y. 2006).

 Here, WCF merely alleges a conventional business relationship between two sophisticated parties -- that is not a fiduciary relationship.  WCF alleges that, its principals, two sophisticated investors, wanted to buy a large quantity of bitcoins, but, to prevent that purchase from moving the market with the "unprecedented size" of their investment, they asked Shrem to do it for them.  (Compl. ¶ 15.)  Because Shrem was allegedly courting WCF investment in his "nascent startup," he purportedly agreed to help them.  (*Id*. ¶¶ 13-16.)

 WCF's conclusory allegations that this commercial relationship is somehow elevated to a fiduciary one because WCF "placed complete and absolute trust and confidence in Shrem" is insufficient as matter of law.  *See Abercorombie*, 438 F. Supp. 2d at 243 ("mere assertions of 'trust and confidence are insufficient to support a claim of a fiduciary relationship"); *Bayerische*, 902 F. Supp. 2d at 475 ("mere expertise in a matter" does not

create a fiduciary relationship).  This is particularly true, given the sophistication of the

parties.  *See Saul v. Cahan*, 61 N.Y.S.3d 265, 268 (N.Y. App. Div. 2d Dept. 2017)

(relationship between the plaintiff and his art advisor regarding the acquisition of artworks

did not qualify as a fiduciary relationship where the plaintiff was an attorney and

sophisticated business owner and was not under the control of the art advisor, as evidenced

by his assertion that he made purchases of art works independent of his art advisor's advice

and counseling); *Ciccone v. Hersh*, 530 F. Supp. 2d 574, 579 (S.D.N.Y. 2008) (no fiduciary

relationship existed between personal investment/financial advisor and client where client

was experienced floor broker on the NYSE and client's investments were nondiscretionary).

WCF alleges no other facts that would create a fiduciary relationship between the

parties.  Fiduciary relationships require more than an agreement to purchase an asset for

someone else, which is all WCF alleges.  WCF alleges no formal written contract between

the parties, and no legal relationship that would trigger a fiduciary duty.  Shrem is not alleged

to have provided any investment advice to WCF, but, according the Complaint, was merely

ordered by WCF to make purchases because WCF did not want to drive up the market by

making the purchases on its own.  (Compl. ¶ 15.)  WCF even states that after it ceased

working with Shrem "it continued to acquire additional bitcoin[s] in the open market" on its

own and without any assistance or input from Shrem.  (*Id*. ¶ 21.)  Thus, any attempts WCF

makes to characterize Shrem as an expert it absolutely needed to purchase bitcoins on its

behalf are belied by its own allegations.  WCF has failed to allege a fiduciary relationship

existed between the parties as a matter of law.

### 2.   WCF Fails to Allege Shrem Committed Any Misconduct

WCF fails to allege that Shrem engaged in any misconduct that would constitute a breach any purported fiduciary duty.  WCF alleges Shrem said he would buy bitcoins at the "best price," and provide WCF with an accounting.  (Compl. ¶¶ 50, 55, 63, 69.)  WCF also alleges Shrem bought bitcoins and provided WCF with an accounting.  (*Id.* ¶¶ 21, 23-24.)  In other words, Shrem did exactly what he said he would do.

That Shrem purportedly failed to purchase bitcoin at what WCF perceives is the best price does not constitute misconduct, particularly given the volatile nature of bitcoin in 2012.  *See Jaksich*, 582 F. Supp. at 493.  Moreover, nowhere in the complaint does WCF allege Shrem promised to provide a complete or accurate accounting, and WCF admits it only clarified the type of accounting it wanted months after Shrem purportedly breached his duty. (Compl. ¶ 26.)  WCF's breach of fiduciary duty claim therefore fails as a matter of law.

### 3.   WCF Fails to Allege Any Cognizable Injury from a Breach

The Complaint has failed to allege injury because under New York's highest intermediate price rule, damages for the conversion of property of fluctuating value are the value of the property at time of the alleged conversion, or the value of the property at a "reasonable time" necessary to reenter the market after notice, whichever is higher.  *See Schultz*, 716 F.2d at 141. WCF impermissibly attempts to seek damages of "the highest intermediate value of 5,000 bitcoins between the time of the wrongdoing and the time of trial." (Compl., Prayer ¶ 1.); *Flickinger*, 789 F. Supp. at 619 (finding no legal basis for plaintiff's claim that wrongful conversion of stock entitled it to "the full value of the stock at the time of judgment").  As a result, WCF has failed to properly allege damages on its breach of fiduciary duty claim as a matter of law.

**C.      WCF Fails to State a Claim for an Equitable Constructive Trust**

The Complaint has failed to state a claim for an equitable constructive trust.  In general, to impose a constructive trust, four factors must be established: (1) a confidential or fiduciary relationship; (2) a promise; (3) a transfer in reliance thereon; and (4) unjust enrichment.  *Marini v. Lombardo*, 912 N.Y.S.2d 693, 696 (N.Y. App. Div. 2d Dept. 2010).

These elements serve as a guideline such that a constructive trust may still be imposed pursuant to a court's discretion even if all of the elements are not established.  *See Simonds v. Simonds*, 380 N.E.2d 189, 194 (N.Y. 1978).  Significantly, "[t]he ultimate purpose of a constructive trust is to prevent unjust enrichment and, thus, a constructive trust may be imposed 'when property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest.'"  *Cruz v. McAneney*, 816 N.Y.S.2d 486, 490 (N.Y. App. Div. 2d Dept. 2006).

"[A] party seeking to establish a constructive trust ordinarily must show, among other things, a confidential or fiduciary relationship between the parties."  *Security Pacific Mortgage and Real Estate Services, Inc. v. The Republic of the Philippines*, 962 F.2d 204, 210 (2d Cir. 1992); *see also Golden Budha Corp. v. Canadian Land Co. of Am.*, 931 F.2d 196, 202 (2d Cir. 1991).  As explained above, WCF has not demonstrated that any "duty" existed.  Its constructive trust claim fails on this basis alone.

Further, no constructive trust is warranted because WCF's allegations that it is entitled to 5,000 bitcoins violate New York's out-of-pocket rule for fraud, which limits WCF's damages to its $61,000 in actual, pecuniary loss, or the value of the bitcoins at the time WCF had notice of the conversion.  Moreover, Shrem has already placed $61,000 in an escrow account with the Court.

23

Additionally, many courts have found that "a constructive trust is simply a remedy and is not the basis for a separate cause of action." *I.B. Trading, Inc. v. Tripoint Global Entities, LLC*, 280 F. Supp. 3d 524, 545 (S.D.N.Y. 2017); *see also Islipu-Slip v. Gander Mountain Co.*, 2 F. Supp. 3d 296, 307 (N.D.N.Y. 2014); *In re First Central Fin. Corp.*, 377 F.3d 209, 215-16 (2d Cir. 2004).

### D. WCF's Claim for an Equitable Accounting Fails

WCF has failed to allege an equitable accounting is justified because it has not established that a fiduciary relationship existed between WCF and Shrem. "The right to an accounting is premised upon the existence of a confidential or fiduciary relationship and a breach of the duty imposed by that relationship respecting property in which the party seeking the accounting has an interest." *Lawrence v. Kennedy*, 944 N.Y.S.2d 577, 580 (N.Y. App. Div. 2d Dept. 2012); *see also La Ross Partners, LLC v. Contact 911 Inc.*, 874 F. Supp. 2d 147, 167 (E.D.N.Y. 2012).

Moreover, as explained above, WCF has failed to allege that Shrem engaged in any actionable or wrongful conduct that would warrant an equitable accounting.

### Conclusion

Based on the foregoing, the Court should dismiss the Complaint with prejudice.

Dated: November 28, 2018                    Respectfully Submitted,

                                            /s/ Brian E. Klein
                                            _____

                                            Baker Marquart LLP
                                            777 S. Figueroa St., Suite 2850
                                            Los Angeles, California 90017
                                            Tel.: (424) 652-7800/Fax: (424) 652-7850
                                            E-Mail: bklein@bakermarquart.com