UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

WINKLEVOSS CAPITAL FUND, LLC,   :   18-cv-8250 (JSR)

              Plaintiff,   :

   v.

                                      :

CHARLES SHREM,

                                      :

              Defendant.
--------------------------------------------------------x

## DEFENDANT CHARLES SHREM'S REPLY IN SUPPORT OF
## FED.R.CIV.P. 12b(1) AND 12(b)(6) MOTION TO DISMISS

BRIAN E. KLEIN
DONALD E. PEPPERMAN *(pro hac vice)*
BAKER MARQUART LLP
777 S. Figueroa Street, Suite 2850
Los Angeles, California 90017
Tel: (424) 652-7800
bklein@bakermarquart.com
dpepperman@bakermarquart.com

*Attorneys for Charlie Shrem*

## **TABLE OF CONTENTS**

Introduction..........................................................................................................................1

Argument ............................................................................................................................1

    I.   This Court Lacks Subject Matter Jurisdiction Over All of WCF's Claims...................1

        A.  WCF Cannot Use False Allegations to Satisfy the Amount in Controversy.........1

        B.  WCF's Claim for Fraud Fails to Meet the Amount in Controversy..................2

        C.  WCF's Remaining Claims Fail to Satisfy the Amount in Controversy.............4

        D.  WCF's Non-Compensatory Damages Are Insufficient..........................................6

    II.  WCF Fails to State a Claim for Any Cause of Action.......................................................6

        A.  WCF Fails to State a Claim for Fraud....................................................................6

        B.  WCF's Breach of Fiduciary Duty Claim Fails as a Matter of Law........................8

        C.  WCF Fails to State a Claim for an Equitable Constructive Trust..........................9

        D.  WCF's Accounting Claim Fails............................................................................10

Conclusion .......................................................................................................................10

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Abercrombie v. Andrew College,*
  438 F.Supp.2d 243 (S.D.N.Y. 2006)................................................................8, 9

*First Nationwide Bank v. Gelt Funding Corp.,*
  27 F.3d 763 (2d Cir. 1994)..................................................................................10

*Flickinger v. Harold C. Brown & Co., Inc.,*
  789 F.Supp. 616 (W.D.N.Y. 1992).......................................................................5

*I.B. Trading, Inc. v. Tripoint Global Equtities, LLC,*
  280 F.Supp.3d 524 (S.D.N.Y. 2017).....................................................................9

*Kamen v. American Tel. & Tel. Co.,*
  791 F.2d 1006 (2d Cir. 1986)...............................................................................1

*Kinsey v. Cendant Corp.,*
  588 F.Supp.2d 516 (S.D.N.Y. 2008).....................................................................4

*Lupo v. Human Affairs Intern.,*
  28 F.3d 269 (2d Cir. 1994)...................................................................................6

*Makarova v. U.S.,*
  201 F.3d 110 (2d Cir. 2000).................................................................................2

*Nwanza v. Time, Inc.,*
  125 Fed.Appx. 346 (2d Cir. 2005).......................................................................6

*Oscar Gruss & Son, Inc. v. Hollander,*
  337 F.3d 186 (2d Cir. 2003).................................................................................4

*Schultz v. Commodities Futures Trading Com'n,*
  716 F.2d 136 (2d Cir. 1983).................................................................................4

**State Cases**

*Baker v. Drake,*
  53 N.Y. 211 (1873)...............................................................................................4

*Brown v. Lockwood,*
  76 A.D. 2d 721 (1980).........................................................................................8

*Brummer v. Red Rabbit, LLC,*
  127 A.D. 3d 438 (2015)...................................................................................3, 6

*Georgia Malone & Co., Inc. v. Ralph Reider*,
    86 A.D. 3d 406 (2011) ...............................................................................................3

*Lama Holding Co. v. Smith Barney*,
    88 N.Y. 2d 413 (1996) ...............................................................................................6

*Lawrence v. Kennedy*,
    944 N.Y.S. 2d 577 (2012) ........................................................................................10

*Lusins v. Cohen*,
    49 A.D. 3d 1015 (2008) .............................................................................................8

*Mandarin Trading Ltd. v. Wildenstein*,
    65 A.D. 3d 448 (2009) ...............................................................................................8

*Marini v. Lombardo*,
    912 N.Y.S. 2d 693 (2010) ........................................................................................10

*Matter of Wingate*,
    647 N.Y.S. 2d 433 (1996) ..........................................................................................9

*Morris v. Lewis*,
    427 N.Y.S. 2d 858 (1980) ..........................................................................................3

*Pyramid Champlain Co. v. R.P. Brosseau & Co.*,
    699 N.Y.S. 2d 516 (1999) ..........................................................................................9

*Schulman v. Greenwich Associates, LLC*,
    859 N.Y.S. 2d 421 (2008) ..........................................................................................8

*Stangel v. Chen*,
    74 A.D. 3d 1050 (2010) .............................................................................................6

*White v. Davidson*,
    150 A.D. 3d 610 (2017) .............................................................................................7

## Introduction

WCF sues Charlie Shrem for 5,000 bitcoins that it never owned, and that Shrem has shown by demonstrable evidence he never took. To salvage its claims, WCF argues that, even if Shrem did not take those 5,000 bitcoins, he purchased some other 5,000 bitcoins with WCF's money and stole those. But Shrem has never owned 5,000 bitcoins (or any bitcoins) belonging to WCF, and WCF has failed to present any proof otherwise. Because WCF alleges an amount in controversy it can never possibly recover, it has failed to satisfy the jurisdictional threshold.

Shrem's claims for fraud, breach of fiduciary duty, constructive trust and accounting also fail on their merits. Shrem's motion should be granted in its entirety.[1]

## Argument

### I. This Court Lacks Subject Matter Jurisdiction Over All of WCF's Claims

#### A. WCF Cannot Use False Allegations to Satisfy the Amount in Controversy

WCF claims this case should proceed on factual issues. (Opp. at 5.) This is not correct. Where subject matter jurisdiction is challenged, the Court may look beyond the complaint in determining whether there is any possibility that the plaintiff can recover the amount alleged. *See Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986). Thus, contrary to WCF's claims, Shrem's reference to affidavits and other evidence is entirely proper and should be considered by this Court in determining whether subject matter jurisdiction exists. *Id.* Moreover, WCF, not Shrem, "has the burden of proving by a preponderance of the evidence" that subject matter jurisdiction exists. *See Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). WCF is wrong to assert otherwise. (Opp. at 1, 5, 9, 12.)

---

[1] In addition, to the extent any party is responsible for any of WCF's purported losses, it is BitInstant, not Shrem.

1

WCF has failed to meet its threshold burden. WCF alleges that Shrem stole 5,000 bitcoins belonging to it. However, the record is conclusive that the 5,000 bitcoins alleged were never owned or purchased by Shrem, but rather at all times belonged to John Doe, a third-party investor whose name is under seal by court order. (Dkt 50.) Shrem never took 5,000 bitcoins belonging to WCF. (*See* November 5, 2018 Affidavit of Charlie Shrem ["Shrem Aff"] Dkt. 53 ¶ 7.)

At the November 8, 2018 hearing on WCF's motion for confirmation of the prejudgment attachment, WCF represented to this Court that it was still investigating whether John Doe owned the 5,000 bitcoins at issue. But, in its November 30, 2018 Rule 26 Initial Disclosures, WCF did not disclose John Doe as a witness, and, in doing so, conceded it is no longer disputing that John Doe owned the 5,000 bitcoins at issue, not Shrem.

WCF had the opportunity to amend its Complaint to get rid of the inaccurate allegations. It declined to do so. Yet, WCF now argues that this Court should accept its "good faith" allegations that the amount in controversy exceeds the jurisdictional threshold. Given that WCF has chosen to proceed with demonstrably false allegations, WCF cannot reasonably argue that its allegations are made in good faith, as it does here. (Opp. at 4-5.)

Faced with conclusive evidence that Shrem did not take the 5,000 bitcoins, WCF argues it is still owed 5,000 bitcoins because Shrem purportedly purchased some other 5,000 bitcoins (or should have). For the reasons that follow, it is legally impossible for WCF to recover these fictional bitcoins under any of its claims. The Complaint should be dismissed.

**B.    WCF's Claim for Fraud Fails to Meet the Amount in Controversy**

WCF argues its actual pecuniary loss is 5,000 bitcoins because Shrem "purchased 5000 bitcoin for WCF but never actually transmitted" them to WCF. (Opp. at 11, citing Compl. ¶ 40.)

2

But actual pecuniary loss is defined under New York law as "the difference between the amount paid and the value of the article received." *Morris v. Lewis*, 427 N.Y.S.2d 858, 859 (1980). In *Morris*, the plaintiff alleged he paid $35,000 to invest in a business venture based on the defendant's misrepresentations. Because he was only entitled to his actual pecuniary loss on his fraud claim, the court found that "the only correct measure of damages is the difference between what the plaintiff paid for his investment and what he received." *Id*. Since "plaintiff paid $35,000 and received nothing in return," he was entitled to $35,000 in damages. *Id*. As in *Morris*, WCF claims it paid $61,000, and received nothing in return. WCF is thus limited to its alleged out-of-pocket loss of $61,000 on its fraud claim.

In an effort to circumvent the out-of-pocket rule, WCF argues it is entitled to equitable relief to prevent "unjust enrichment." (Opp. at 11-12.) But unjust enrichment is only possible for actual loss. *See Brummer v. Red Rabbit, LLC*, 127 A.D. 3d 438, 439 (2015) ("Absent an allegation of actual loss by plaintiff, his unjust enrichment claim is also deficient."). Thus, under an equitable relief/unjust enrichment theory, WCF is only entitled to $61,000.

Indeed, for unjust enrichment, a plaintiff must show (1) defendant was enriched, (2) at plaintiff's expense, and (3) "that it is against equity and good conscience to permit [defendant] to retain" that amount. *Georgia Malone & Co., Inc. v. Rieder*, 86 A.D. 3d 406, 411 (2011). WCF cannot meet any of these elements: Shrem was not enriched because he has never owned 5,000 bitcoins (or any bitcoins) belonging to WCF (Shrem Aff. ¶ 7); WCF suffered no "expense" because it never owned the 5,000 bitcoins over which it sues (Compl. ¶ 59); and it is not against equity and good conscience to permit Shrem to retain something he never had in the first place.

Contrary to WCF's claims (Opp. at 10), it is a legal question, not a factual one, as to whether the out-of-pocket rule applies. *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186,

3

196 (2d Cir. 2003) (measure of damages is a question of law). WCF is limited to its alleged actual losses of $61,000 on its fraud claim.

C. **WCF's Remaining Claims Fail to Satisfy the Amount in Controversy**

WCF's remaining claims are limited to the separate highest intermediate price rule, which limits WCF's recovery to "the highest intermediate value between notice of conversion and a reasonable time thereafter during which the [property] could have been replaced." *Schultz v. Commodities Futures Trading Com'n*, 716 F.2d 136, 141 (2d Cir. 1983).

WCF attempts to distinguish the *Schultz* rule by citing to *Baker v. Drake,* 53 N.Y. 211 (1873), which, according to WCF, created an "important exception" to *Schultz*, in which "all fluctuations in price should be at the risk of the vendor who refuses to deliver," where the plaintiff has paid the "purchase-price" in advance. (Opp. at 6, quoting *Baker v. Drake,* 53 N.Y. 211, 222-223 (1873).) But *Baker* expressly limited the statement WCF quotes to contracts for sale, which are not at issue here. 53 N.Y. at 223.

Moreover, courts routinely apply the rule where the purchase price has been paid in advance. *See Kinsey v. Cendant Corp.,* 588 F.Supp.2d 516, 519-520 (S.D.N.Y. 2008) ("*Schultz* remains valid for conversion claims). WCF fails to cite a single case stating that *Baker* and its progeny in any way modify *Schultz* or create any "exception" to it. Nor can it. Tellingly, all of the cases WCF cites were decided at least fifty years *before Schultz*. (Opp. at 6-7.) *Schultz* is good law; the highest intermediate price rule applies.

WCF next argues that its damages satisfy the jurisdictional threshold even under the highest intermediate price rule because it was not aware it was owed any bitcoins until February 2013, when Shrem purportedly provided a deficient accounting and the price of bitcoin was purportedly worth $20 a coin. (Opp. at 9, citing Compl. ¶ 34, Ex. A.)

4

WCF confuses notice and knowledge. "Notice" is the date when a party "became aware of the nondelivery" of the item. *See Flickinger v. Harold C. Brown & Co., Inc.,* 789 F. Supp. 616, 619 (W.D.N.Y. 1992). WCF was on notice of the alleged conversion in September 2012, when Shrem purportedly failed to produce the 5,000 bitcoins, or to provide a proper accounting. (Compl. ¶¶ 15-24.) WCF allegedly complained to Shrem for *five months* after it received notice. (*Id.* ¶¶ 20-32.) According to WCF, on January 31, 2013, WCF received the accounting from Shrem. (*Id.* ¶ 24.) But the only reason that WCF wanted the accounting was because it was *already* on notice of Shrem's purported breach of fiduciary duty. (*Id.* ¶¶ 15-24.) The accounting was merely the manifestation of the purported breach. It was not when WCF was on notice of it.

WCF tries to extend the "reasonable time" it needed to "reenter the market" indefinitely. (Opp. at 10.) The effort fails. Courts have found a "reasonable time" to be a few days or weeks after the plaintiff was on notice of the conversion, not the "several months" (or years) that WCF advocates for here (Opp. at 10; Compl., Prayer). Even in *Halifax Fund, L.P. v. MRV Commc'ns, Inc.*, relied on by WCF, the court found a "reasonable time" was three weeks, and that included factoring in time to consult with counsel. 2001 WL 1622261, at *6 (S.D.N.Y. Dec. 18, 2001).

WCF cites no case in support of its argument that the time needed to reenter the market is a factual question. Regardless, a "reasonable time" can be no more than a few weeks under any theory. WCF alleges that the price of bitcoins was $12 a coin in mid-October 2012. (*See* Compl. ¶ 34, Ex. A.) Thus, even if WCF had an entire month to reenter the market, it would not have any claim that satisfies the jurisdictional threshold.

WCF is further limited to $61,000 on its accounting claim by its own allegations, which ask for an accounting of "what happened to the approximately $61,000 that Shrem cannot account for." (Compl. ¶ 71.) WCF fails to seek an accounting of the 5,000 bitcoins.

5

Nor is WCF entitled to any recovery under equitable relief. Shrem never owned 5,000 bitcoins (or any bitcoins) belonging to WCF (Shrem Aff. ¶ 7), and has nothing to disgorge. Moreover, only actual damages may be disgorged. *See Brummer, LLC,* 127 A.D.3d at 439.

WCF has therefore failed to meet the amount-in-controversy for all of its claims

### D. WCF's Non-Compensatory Damages Are Insufficient

WCF cannot use punitive damages to meet the jurisdictional threshold (Opp. at 12), when, as here "the only actual damages that [plaintiff] claims are unavailable as a matter of law." *See Nwanza v. Time, Inc.*, 125 Fed. Appx. 346, 349 (2d Cir. 2005). Nor is WCF allowed to punitive damages, since it cannot sustain any of its claims. *See Stangel v. Chen*, 74 A.D.3d 1050, 1052-1053 (2010). WCF also impermissibly fails to specify the amount of punitive damages it seeks. *See Lupo v. Human Affairs Intern.*, 28 F.3d 269, 273-74 (2d Cir. 1994).

## II. WCF Fails to State a Claim for Any Cause of Action

### A. WCF Fails to State a Claim for Fraud

WCF's fraud cause of action fails because it impermissibly seeks the "lost opportunity" of "5,000 bitcoin that it would have received were it not for Shrem's fraud." (Compl. ¶ 59); *see Lama Holding Co. v. Smith Barney*, 88 N.Y.2d 413, 422 (1996) (dismissing fraud claim in part because loss of alternative bargain cannot serve as a basis for fraud damages). The fraud claim must be dismissed on this basis alone.

WCF concedes that allegations that Shrem promised to buy bitcoin at the "best price" are too speculative to be actionable fraud. (Opp. at 13.) Instead, WCF now claims it is not suing Shrem for a promise to buy bitcoin at any particular price, but rather for a failure to buy bitcoin at all. (*Id.*) Even with WCF's revisionist history, the allegations still fail.

6

For one, Shrem *did* buy bitcoins for WCF, as WCF concedes. (Compl. ¶¶ 20-21.) Further, any statements that Shrem would buy bitcoins for WCF at some unspecified price and time are too vague to meet the requirements for fraud. In *Senior Health Insurance Company of Pennsylvania v. Beechwood Re Ltd.*, relied on by WCF (Opp. at 14), the plaintiff alleged the defendants made *specific* representations as to the type of investments and strategy. 2018 WL 6378158, at *7 (S.D.N.Y. December 6, 2018). Likewise, in *White v. Davidson* (Opp. at 14), the court found "specific representations" about plaintiff's experience and what he would do to promote the defendant to be actionable fraud. 150 A.D.3d 610, 611-12 (2017).

By contrast, there was nothing specific about Shrem's purported statement to buy bitcoins at the "best price" at some unspecified time and price, as evidenced by WCF's ability to manipulate the meaning of the statement in its Opposition on pages 13-14. WCF's Opposition points out the flaws in its own Complaint. WCF alleges it "could not know the precise days and at what price Shrem bought bitcoin on its behalf." (Opp. at 16.) This is precisely the point -- Shrem's purported representations are too vague to mean anything.

Shrem's alleged "inexplicable behavior" does not save its claim, as WCF contends. (Opp. at 14.) According to the Complaint, Shrem's behavior consisted of providing bitcoins to WCF and trying to correct any errors and provide an accounting to WCF's satisfaction (requirements WCF did not provide until January 31, 2013, almost five months after Shrem made his purported misrepresentations). (Compl. ¶¶ 24-27.) Allegations that Shrem defrauded another individual (Opp. at 14) are themselves too vague and WCF has no standing to bring a claim based on someone else's purported injury.

WCF's conclusory allegations that Shrem made the representations with no intent to perform them are insufficient to allege fraud. *See Schulman v. Greenwich Associates, LLC*, 859

N.Y.S.2d 421, 422-423 (2008) (conclusory allegation that defendant did not intend to perform was insufficient to allege fraud). The fact that Shrem purportedly did not perform on his promise is likewise insufficient. *See Brown v. Lockwood,* 76 A.D.2d 721, 733 (1980) (fraudulent intent cannot be inferred by nonperformance alone).

WCF fails to explain how it could have acted on reliance on Shrem's purported representations, given WCF's sophistication, the parties' business relationship and WCF's ability to do its own accounting. *See id.* at 734 (dismissing fraud claim because parties' relationship did not warrant the plaintiff to fail to take steps to ascertain whether defendant had intention of complying with promise). WCF fails to demonstrate in its Opposition why "[a]n accounting was impossible without Shrem." (Opp. at 16); *see Lusins v. Cohen*, 49 A.D. 3d 1015, 1018 (2008) (no justifiable reliance where widow could have compelled a valuation).

WCF is not entitled to more discovery to shore up its deficient fraud claim. *See Mandarin Trading Ltd. v. Wildenstein*, 65 A.D.3d 448, 451 (2009) (no discovery warranted for "patently defective cause of action"). The claim should be dismissed.

**B.    WCF's Breach of Fiduciary Duty Claim Fails as a Matter of Law**

WCF fails to show that the relationship between the parties was anything more than "a conventional business relationship, [which] without more, does not become a fiduciary relationship by mere allegation." *Oursler v. Women's Interart Center*, Inc., 566 N.Y.S.2d 295, 297 (1991). Contrary to WCF's claim (Opp. at 19), the determination of whether a fiduciary relationship exists may be made on a motion to dismiss. *See Abercrombie v. Andrew College*, 438 F. Supp. 2d 243, 274 (S.D.N.Y. 2006).

WCF's principals were two investors who bought and sold bitcoin before and after they met Shrem. (Compl. ¶ 21.) WCF did not need Shrem to buy bitcoin. It wanted to use him

because the "unprecedented size of [its] contemplated investment." (*Id.* ¶ 15.) Shrem, for his part, was allegedly willing to make the transactions so WCF would invest in his startup. (*Id.* ¶ 13.) In other words, two sophisticated parties engaged in a mutually beneficial business deal. That WCF placed "confidence" in Shrem (*id.* ¶¶ 1, 14) is not sufficient to create a fiduciary duty as a matter of law. *See Abercrombie*, 438 F. Supp. 2d at 274.

WCF claims that, even if the relationship was commercial, dismissal is not warranted because a principal-agent relationship existed. (Opp. at 19.) But "[a]gency is a legal relationship between the principal and agent which results from the manifestation of consent of one person to allow another to act on her/his behalf and subject to her/his control, and consent by the other party so to act." *Matter of Wingate*, 647 N.Y.S.2d 433, 435 (1996). WCF alleges it had no control over Shrem (Compl. ¶ 14), and fails to allege that Shrem had any awareness an agency relationship was created, precluding a principal-agent as a matter of law. *See Pyramid Champlain Co. v. R.P. Brosseau & Co.*, 699 N.Y.S.2d 516, 522 (1999) (no principal-agent where defendant not aware of any of plaintiff's conduct that created agency).

WCF has also failed to allege that Shrem committed any breach. Shrem provided WCF with bitcoins and an accounting, as he purportedly said he would and as WCF concedes. (Compl. ¶¶ 20-21, 23.)

### C. WCF Fails to State a Claim for an Equitable Constructive Trust

The imposition of an equitable constructive trust is an equitable "remedy," and not a standalone cause of action. *See I.B. Trading, Inc. v. Tripoint Global Equtities, LLC*, 280 F. Supp. 3d 524, 545 (S.D.N.Y. 2017). WCF does not address nor challenge this argument in its Opposition. The third claim should be dismissed on this ground alone.

9

Even if a constructive trust can be recognized as an offense (it cannot), WCF's allegations that Shrem "was unjustly enriched" by 5,000 bitcoins (Compl. ¶ 65) have been proven to be false (Shrem Aff. ¶¶ 4-7). There was no "unjust enrichment," and nothing that can be the subject of a constructive trust – Shrem did not misappropriate and does not possess any of WCF's bitcoins. *See First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994) ("unwarranted deductions of fact are not admitted" on 12(b)(6) motion).

Finally, WCF cannot, and has not, alleged that any fiduciary relationship or duty existed, that there was any fraudulent or other improper transfer, or that Shrem has been unjustly enriched in any manner. *See Marini v. Lombardo*, 912 N.Y.S.2d 693, 696 (2010). In fact, WCF alleges that Shrem, acting on BitInstant's behalf, handled all of the WCF transactions free of charge. (Compl. ¶ 16.)

### D. WCF's Accounting Claim Fails

No confidential or fiduciary relationship has been pled by WCF that would justify an equitable accounting. *See Lawrence v. Kennedy*, 944 N.Y.S.2d 577, 580 (2012). Nor has WCF alleged any fraudulent or wrongful conduct, or actual loss, that would warrant an accounting.

### Conclusion

Based on the foregoing, Shrem respectfully requests his motion be granted in its entirety.

Dated: December 17, 2018                    Respectfully Submitted,

/s/ Brian E. Klein
_____

Brian E. Klein
Baker Marquart LLP
777 S. Figueroa St., Suite 2850
Los Angeles, California 90017
Tel.: (424) 652-7800/Fax: (424) 652-7850
E-Mail: bklein@bakermarquart.com