UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WINKLEVOSS CAPITAL FUND, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>CHARLES SHREM,<br><br>    Defendant. | Case No.  18-cv-8250 (JSR)<br><br>**PLAINTIFF WINKLEVOSS CAPITAL FUND, LLC'S OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND COSTS** |

**Table of Contents**

I.   INTRODUCTION ........................................................................................................... 1

II.  ARGUMENT .................................................................................................................. 2

   A.   SHREM IS NOT THE PREVAILING PARTY FOR PURPOSES OF THE EX PARTE ATTACHMENT COSTS AND FEES PROVISIONS ................................................................................. 2

   B.   WCF DID NOT ACTUALLY ATTACH SHREM'S PROPERTY FOR PURPOSES OF THE COSTS AND FEES PROVISIONS ................................................................................................. 4

   C.   EVEN IF THE COURT FINDS THAT THE ATTORNEYS' FEES AND COSTS PROVISION IS IMPLICATED HERE, SHREM'S REQUEST IS IMPERMISSIBLY VAGUE AND CLAIMS EXCESSIVE HOURS AND RATES ................................................................................. 7

      1.   Baker Marquart Has Provided Impermissibly Vague Descriptions of Its Work and Costs ................................................................................................................. 8

      2.   Baker Marquart's Rates Are Excessive ......................................................... 10

      3.   Baker Marquart's Hours Are Excessive ........................................................ 11

III. CONCLUSION ............................................................................................................ 13

## Table of Authorities

### CASES

*AdiPar Ltd. v. PLD Int'l Corp.*, 2002 WL 31740622 (S.D.N.Y. 2002) .......................................... 5
*Augsbury v. Adams*, 108 A.D.2d 978, 484 N.Y.S.2d 962 (3rd Dept. 1985) .................................. 5
*Baker v. Health Mgmt. Sys., Inc.*, 98 N.Y.2d 80, 772 N.E.2d 1099 (2002) ..................................... 4
*C.D. v. Minisink Valley Cent. Sch. Dist.*, No. 17 CIV. 7632 (PAE), 2018 WL 3769972, at *6–7 (S.D.N.Y. 2018) .............................................................................................................................. 11
*Concord Reinsurance Co. v. Caja Nacional De Ahorro y Seguro*, No. 93 CIV. 6606 (JSM), 1994 WL 260779 (S.D.N.Y. 1994) ........................................................................................................ 12
*D.S.C. v. P.C.*, 68 N.Y.S.3d 378 (N.Y. Sup. Ct. 2017) ..................................................................... 3
*Dancy v. McGinley*, 141 F. Supp. 3d 231 (S.D.N.Y. 2015) ............................................................ 10
*E.T.I. Euro Telecom Int'l N.V. v. Republic of Bolivia*, No. 08 CIV. 4247 (LTS)FM, 2008 WL 5170168 (S.D.N.Y. 2008) ........................................................................................................... 12
*Echevarria v. Insight Med., P.C.*, 102 F. Supp. 3d 511 (S.D.N.Y. 2015) ........................................ 8
*Globex Int'l Inc. v. Commercial Bank of Namibia Ltd.*, 1999 WL 1211827 (S.D.N.Y. 1999) ...... 6
*Hensley v. Eckerhart*, 461 U.S. 424 (1983) .................................................................................... 10
*In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226 (2d Cir. 1987) ............................................... 7
*In re Tougher Indus., Inc.*, 2008 WL 1805806 (Bankr. N.D.N.Y. 2008) .................................... 7, 9
*Jean-Louis v. City of New York*, No. 16CV5274, 2018 WL 5292125 (S.D.N.Y. 2018) .............. 10
*Kidder, Peabody & Co., Inc. v. IAG Int'l Acceptance Group, NV*, 28 F.Supp.2d 126 (S.D.N.Y 1998) .............................................................................................................................................. 5
*Leslee Travel Inc. v. American Coupon Exchange, Inc.*, 138 Misc. 2d 901, 525 N.Y.S.2d 773 (N.Y. City Civ. Ct. 1988) .............................................................................................................. 6
*McKevitt v. Colvin*, 2014 WL 1764339 (N.D.N.Y. 2014) ............................................................. 11
*Miroglio S.P.A. v. Conway Stores, Inc.*, 629 F. Supp. 2d 307 (S.D.N.Y. 2009) ............................ 8
*Osterweil v. Bartlett*, 92 F. Supp. 3d 14 (N.D.N.Y. 2015) ............................................................. 11
*Plessner v. Cont'l Cas. Co.*, 82 N.Y.S.2d 540 (Sup. Ct. 1948) ....................................................... 12
*Provisional Protective Committee v. Williams*, 121 A.D.2d 271 (1st Dept. 1986) ........................ 6
*Rashi Textiles, U.S.A., Inc. v. Rhomberg Textil Gesellschaft M.B.H., of Austria*, 857 F. Supp. 1051 (S.D.N.Y. 1994) .................................................................................................................... 6
*Rozell v. Ross-Holst*, 576 F. Supp. 2d 527 (S.D.N.Y. 2008) ........................................................... 8
*S.E.C. v. Byers*, 590 F. Supp. 2d 637 (S.D.N.Y. 2008) .................................................................... 8
*Salamanca Trust Co. v. McHugh*, 156 A.D.2d 1007 (4th Dept. 1989) ........................................... 5
*Shu Yiu Louie v. David & Chiu Place Restaurant, Inc.*, 689 N.Y.S.2d 476 (App. Div. 1999) ..... 6
*Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, No. 10 CIV. 05256 KMW DF, 2012 WL 5816878 (S.D.N.Y. 2012) ............................................................. 10
*Valmonte v. Bane*, 895 F. Supp. 593 (S.D.N.Y. 1995) ................................................................... 10
*Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709 (2d Cir. 1987) ................................ 6
*Williams v. Metro-N. R.R. Co.*, No. 1:17-CV-03847 (JGK), 2018 WL 3370678 (S.D.N.Y. 2018) ...................................................................................................................................................... 11, 12

### STATUTES

C.P.L.R. § 6212 ...................................................................................................................................... 2
C.P.L.R. § 6212(e) ......................................................................................................................... 5, 6, 9
C.P.L.R. § 6223 ...................................................................................................................................... 6
C.P.L.R. §§ 6212(b) and (e) ................................................................................................................. 4

## I. INTRODUCTION

Defendant Charles Shrem ("Shrem") is not entitled to attorney's fees for his efforts to undo WCF's attachment. In the lead up to the Court's November 8, 2018 hearing on plaintiff Winklevoss Capital Fund's ("WCF") motion to confirm attachment, WCF had garnished less than $5 of Shrem's assets after levying nearly 30 financial institutions with the October 2 Order of Attachment. Dkt. 49.[1] In an effort to undo WCF's de minimis attachment, Shrem's counsel volunteered at the November 8 hearing to place $61,000 in escrow with the Court as security.[2] The Court promptly accepted Shrem's offer,[3] and WCF thus obtained more than 12,000 times the assets it had previously attached as security from Shrem's garnishees. It was against this procedural backdrop that the Court subsequently denied WCF's motion to confirm the October 2 *ex parte* Order of Attachment. Dkt. Nos. 52, 59. As Shrem concedes, attorneys' fees for improper attachment are only awarded "to the prevailing party." Dkt. 80, p. 1. But Shrem is not a "prevailing party" in his efforts to thwart WCF's attachment. It was WCF — not Shrem — which was placed in a better position after the hearing on its motion to confirm wherein it obtained $61,000 in security.

In any event, Shrem fails to show that he suffered any damages stemming from WCF's attachment given that there was essentially no actual attachment in the sense that the attachment

---

[1] WCF's reply in support of the motion to confirm the attachment notes the amount was under $10. Dkt. 49, p. 4. In fact, the total amount garnished prior to the November 8, 2018 hearing was $4.88. *See* Dkt. Nos. 44 (Corrected Garnishee Statement from Bittrex, Inc., noting attached assets of $4.44); 34 (Garnishee Statement from Circle Internet Financial, Inc., and Poloniex, Inc., noting $0.41 of attached assets); 37 (Garnishee Statement from Xapo, Inc., noting .00005414 of bitcoin in attached assets, less than $.03). Subsequent to the hearing, and after WCF's motion to confirm attachment was denied, Charles Schwab & Co., Inc. submitted a Garnishee Statement declaring it held $87.85 of Shrem's assets.

[2] See Transcript of Nov. 8, 2018, Hearing ("Transcript"), Ex. 1, at pp. 15-16 ("MR. KLEIN: We would say this dispute is not about $30 million. It's about what they claim is an unaccounted for $61,000. *So we will put $61,000 in escrow, your Honor, to cover that*.") (emphasis added).

[3] Transcript at p. 19 ("MR. KLEIN: This case is about $61,000. Again, Mr. Shrem will put up $61,000. THE COURT: Well, I'm going to take you up on that part independent of where I come out on the attachment. So you should place $61,000 in escrow with the Clerk of Court and send me a proposed order to that effect.") *See also* Dkt. 57 (Order for Defendant Charles Shrem to Deposit Funds into the Court Registry).

was de minimis in scope and duration. Actual attachment is a prerequisite to fees under C.P.L.R. § 6212. Shrem has not claimed any inconvenience from WCF's attachment other than having to respond to WCF's motion to confirm, such as harm from lack of access to his assets.[4]

Should the Court find that Shrem is entitled to attorneys' fees and costs, Shrem's claims for fees and costs must be denied or substantially reduced on the grounds that his requested fees are excessive and not adequately supported.

## II.  ARGUMENT

### A.  SHREM IS NOT THE PREVAILING PARTY FOR PURPOSES OF THE EX PARTE ATTACHMENT COSTS AND FEES PROVISIONS

Shrem is not a prevailing party on attachment. At the November 8, 2018, hearing on the motion to confirm the prejudgment attachment, Shrem agreed to lodge $61,000 with this Court, to be held in escrow, essentially as replacement for WCF's attachment, and this Court subsequently denied the motion to confirm. *See* Dkt. 49 (Minute Entry for Nov. 8, 2018, proceedings, noting that "defendant shall place $61,000.00 in escrow with the Clerk of the Court"); Dkt. 52 (Nov. 8, 2018, order denying the motion to approve the prejudgment attachment, lifting the attachment).

A docket entry on November 13, 2018, further explained this Court's November 8 order as follows:

> ORDER FOR DEFENDANT CHARLES SHREM TO DEPOSIT FUNDS INTO THE COURT REGISTRY: The Court held a case management conference and hearing on plaintiff Winklevoss Capital Fund, LLC's motion to confirm the prejudgment attachment on November 8, 2018. *In connection with the hearing and in response to counsel for defendant Charles Shrem's ("Shrem's") counsel's offer, the Court ordered that Shrem place $61,000.00 in an escrow account with the Clerk of the Court, pending judgment in this matter.* Shrem will therefore deposit a money order for $61,000.00, made payable to "the Clerk of the Court SONY," into the Court Registry by 5 p.m. EST, November 19, 2018.

---

[4] Indeed, WCF stipulated to allowing Shrem to use $50,000 per month as living expenses while the motion to confirm was pending. Dkt. 46.

2

Dkt. 57 (emphasis added); *see also id.* (a November 15, 2018 entry acknowledging that Shrem had deposited the $61,000). It was against this backdrop that the Court issued a follow-up memorandum on November 19 explaining the denial of WCF's motion to confirm. Dkt. 59. The effect of Shrem's placement of $61,000 into escrow was to put WCF in a much better position than it had been in prior to the November 8, 2018 hearing on its motion to confirm. WCF obtained 12,000 times the amount in assets it had previously secured from Shrem's garnishees.

Under relevant case law, WCF was clearly the prevailing party. New York courts have developed a thoughtful approach to the question of which party counts as "prevailing" when considering whether to order attorneys' fees and costs. As stated in *D.S.C. v. P.C.*, 68 N.Y.S.3d 378 (N.Y. Sup. Ct. 2017), where no single party clearly or substantially prevails, no fees should be awarded or fees should be adjusted. *D.S.C.* notes that:

> The New York courts have repeatedly restated that view. *Graham Ct. Owner's Corp. v. Taylor*, 24 NY3d 742 (2015); *Nestor v. McDowell*, 81 N.Y.2d 410, 415–416 (1993) (only a prevailing party, who has achieved "the central relief sought," is entitled to attorneys' fees); *Ram I v. Stuart*, 248 A.D.2d 255, 256 (1st Dept. 1998) (attorneys' fees denied where outcome of litigation was not substantially favorable to either side). In *Chainani v. Lucchino*, 94 AD3d 1492 (4th Dept. 2012), the agreement allowed fees to a "prevailing party." The party seeking fees had not obtained the requested injunctive relief, and there was no determination that the respondent in the proceeding had breached the underlying agreement. The Fourth Department, acknowledging that the trial court was "significantly involved in the discussions that led to the stipulated order," noted that the lower court concluded that while the petitioner had obtained "some of the relief requested," it would be "disingenuous to declare that they were the prevailing party." *Id*. The court noted that when a "mixed result" exists, and a party discontinues some claims and abandons others, they fail to meet the prevailing party status. In another matter, the Second Department held that determining prevailing party status requires "an initial consideration of the true scope of the dispute litigated, followed by a comparison of what was achieved within that scope." *DKR Mtge. Asset Trust 1 v. Rivera*, 130 AD3d 774 (2nd Dept. 2015) (no fees when voluntary discontinuance and no determination on merits); *see also Paysys Int'l, Inc v. Atos Se*, 2017 U.S. Dist. LEXIS 105622 (SDNY 2017) (a party that clearly fares better than the other is the "prevailing party" under New York law).

*Id.*

At the very least, each party partially prevailed: WCF obtained a substantial commitment of funds from Shrem that will go toward the millions WCF is owed. In turn, Shrem obtained a formal denial of WCF's motion to confirm and the lifting of the attachment order. Even Shrem's partial "victory" rings hollow, however, given that the attachment order secured a less than a de minimis amount of property, and that he felt obligated to provide some security to WCF.

### B. WCF DID NOT ACTUALLY ATTACH SHREM'S PROPERTY FOR PURPOSES OF THE COSTS AND FEES PROVISIONS

If the Court determines that Shrem is the prevailing party, it still should not award fees as Shrem suffered no actual attachment to speak of. WCF's attachment from Shrem's garnishees was de minimis (less than $5) and Shrem has claimed no injury from the temporary encumbrance of this property. While there is no case law from New York's highest court directly on point, substantial authority suggests that where there is only attachment of de minimis property, a defendant is not entitled to recover under C.P.L.R. §§ 6212(b) and (e). Indeed, any contrary interpretation of C.P.L.R. § 6212 would run contrary to the American Rule, under which each side is to bear its own attorney's fees absent "agreement between the parties, statute or court rule." *Baker v. Health Mgmt. Sys., Inc.*, 98 N.Y.2d 80, 88, 772 N.E.2d 1099, 1104 (2002) (citation omitted).

C.P.L.R. §§ 6212(b) and (e) provide for fees and costs to a party whose property is improperly attached, specifying that a plaintiff's liability for the defendant's costs and damages suffered is "by reason of *the attachment* . . . if it is finally decided that the plaintiff was not entitled to an *attachment of the defendant's property*." C.P.L.R. § 6212(b), (e) (emphases added).

As is often the case, the drafters of these provisions did not anticipate all potential scenarios relevant to the lifting of prejudgment attachment orders. Therefore, New York courts have filled in the gaps of these provisions to avoid manifestly unjust results. Most relevant here, courts have repeatedly acknowledged that a defendant can only invoke these provisions when its

4

property has *actually* been attached, regardless of whether an application for attachment has been granted.

The clearest cases in which the denial of a motion for costs and fees under § 6212(e) is justified, of course, are those where the court rejects the effort to attach property from the start and holds that a defendant cannot seek attorneys' fees and costs incurred in defeating the plaintiff's initial attachment effort. *See, e.g.*, *Augsbury v. Adams*, 108 A.D.2d 978, 484 N.Y.S.2d 962 (3rd Dept. 1985). But defendants' efforts to obtain fees and costs have been denied even when the court has granted an ex parte attachment application, when no attachment order issued and no property was attached. The Fourth Department in *Salamanca Trust Co. v. McHugh*, 156 A.D.2d 1007 (4th Dept. 1989), for example, dismissed the defendant's claim for wrongful attachment on this ground.

With facts even closer to those at issue here, in *Kidder, Peabody & Co., Inc. v. IAG Int'l Acceptance Group, NV*, 28 F.Supp.2d 126 (S.D.N.Y 1998), the court denied the defendant's motion for fees and costs even though the court had issued an attachment order. The court held that because there had been no actual attachment the defendant could not seek damages under C.P.L.R. § 6212(e). *See, e.g.*, *id.* at 145 ("The few cases addressing the issue strongly suggest that the actual attachment of property is a prerequisite to maintaining a cause of action for damages under Rule 6212(e)"); *id.* at 146 ("it is appropriate to limit the reach of that strict liability [under § 6212(e)] to cases where property is actually attached"). While in *Kidder* no property was attached, and here a de minimis amount of property was attached, the levy here was so minute in scope as well as duration that it essentially did not occur. Shrem was not "actually deprived of the use" of his property, and thus there were no damages flowing from the attachment. *AdiPar Ltd. v. PLD Int'l Corp.*, 2002 WL 31740622, at *14 (S.D.N.Y. 2002) (internal quotation marks and citations omitted); *id.* at *15 (similar). See also *Globex Int'l Inc. v.*

*Commercial Bank of Namibia Ltd.*, 1999 WL 1211827, at *1 (S.D.N.Y. 1999) ("[b]oth state and federal courts have held that under Rule 6212(e), where no attachment has issued, a plaintiff is not liable to the defendant for damages, including attorney's fees," even where a temporary restraining order has issued); *Shu Yiu Louie v. David & Chiu Place Restaurant, Inc.*, 689 N.Y.S.2d 476, 478 (App. Div. 1999) (similar); *Provisional Protective Committee v. Williams*, 121 A.D.2d 271 (1st Dept. 1986) (reversing the trial court's grant of the defendants' motion for attorney's fees under § 6212(e), even where their assets were frozen for five months pending a ruling on an attachment motion).

When considering granting fees under § 6212(e), courts apply different standards to attachments vacated for substantive and procedural reasons on the one hand[5] and attachments vacated for technical reasons on the other. *See, e.g.*, *Leslee Travel Inc. v. American Coupon Exchange, Inc.*, 138 Misc. 2d 901, 525 N.Y.S.2d 773 (N.Y. City Civ. Ct. 1988). As the McKinney Commentary to C.P.L.R. § 6212(b) notes, that provision is intended "to make it clear the undertaking is not to be used to pay the defendant if an attachment is vacated for merely technical defects." *See also id.* (noting that when an attachment is vacated under C.P.L.R. § 6223 for being "no longer necessary," the undertaking similarly should not be used). Here, although this Court did identify independent reasons in its November 19, 2018, memorandum for denying the motion to confirm,[6] the denial was set against the backdrop of Shrem's offering — and the Court accepting — $61,000 in security. That decision can be perceived as based on a technical ground. In other words, the attachment order was vacated not because of any procedural or

---

[5] *See, e.g.*, *Rashi Textiles, U.S.A., Inc. v. Rhomberg Textil Gesellschaft M.B.H., of Austria*, 857 F. Supp. 1051, 1055 (S.D.N.Y. 1994); *Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709 (2d Cir. 1987) (cases involving international bankruptcy proceedings, where a party knowingly sought attachment after having already attached the funds in parallel proceedings).
[6] The Court also acknowledged at the November 8, 2018, hearing that it would independently resolve the attachment issue, while accepting the escrow offer. *See* Transcript, Ex. 1, at p.19.

substantial error by the plaintiff, but instead because of the defendant's surprising offer, which obviated the need for attachment.

*In re Tougher Indus., Inc.*, 2008 WL 1805806, at *2–4 (Bankr. N.D.N.Y. 2008), arguably allows fees in cases of de minimis attachment. The case states — without citation to any relevant New York authority — that "[w]hile the court may decide whether the property is wrongfully attached, it may not consider the nature and value of the property." *Id.* at *4. But that statement by a federal bankruptcy court interpreting New York law need not be followed here. In the actual facts of that case, the plaintiff successfully attached more than $5 — the plaintiff attached an entire boat. *Id.* at *4. The case also acknowledges that "CPLR 6212(e) . . . does not provide any guidance for cases *where property attached is of little or no value*," *id.* at *4 (emphasis added), as is the case here, indicating the de minimis exception to an award of fees for attachment is an open question under New York law. This Court can decide that question, particularly in the absence of relevant intermediate or high state court or federal court decisions.

### C. EVEN IF THE COURT FINDS THAT THE ATTORNEYS' FEES AND COSTS PROVISION IS IMPLICATED HERE, SHREM'S REQUEST IS IMPERMISSIBLY VAGUE AND CLAIMS EXCESSIVE HOURS AND RATES

WCF need not pay Shrem's attorneys' fees and costs for the reasons identified in Sections II.A and II.B. But if this Court nonetheless finds that WCF should pay some portion of those fees and costs, the Court should substantially reduce the fees that Shrem seeks, in line with the authority governing vague and excessive requests.[7] The Second Circuit has recognized the authority of district courts "to make across-the-board percentage cuts in hours 'as a practical means of trimming fat from a fee application.'" *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir. 1987) (citation omitted). Because "of the voluminous nature of fee

---

[7] WCF does not object to the costs claimed in the amount of $1,053. Pepperman Affidavit at ¶ 14.

applications, 'courts have recognized that it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application.'" *S.E.C. v. Byers*, 590 F. Supp. 2d 637, 648 (S.D.N.Y. 2008). *See also Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 541 (S.D.N.Y. 2008) (similar).

A range of variables is "relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Rozell*, 576 F. Supp. 2d at 536 (quoting *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 522 F.3d 182 (2d Cir. 2008)). These variables include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 536-37. While all these factors are relevant to WCF's opposition here, Baker Marquart fails most egregiously to justify its request for fees under factors (1), (2), (3), (5), (8), (9), (11), or (12).

### 1. Baker Marquart Has Provided Impermissibly Vague Descriptions of Its Work and Costs

The law is clear: Any party seeking attorneys' fees and costs must provide enough information that the court can evaluate the merits of the requests and the opposing party can defend itself against unjust claims. *See, e.g.*, *Miroglio S.P.A. v. Conway Stores, Inc.*, 629 F. Supp. 2d 307, 312 (S.D.N.Y. 2009) ("It is well-established that 'any attorney . . . who applies for court-ordered compensation in this Circuit . . . must document the application with contemporaneous time records . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done.'") (internal citation omitted); *Echevarria v. Insight Med., P.C.*, 102 F. Supp. 3d 511, 516 (S.D.N.Y. 2015) (noting that "[a] party seeking attorneys' fees bears

8

the burden of supporting its claim of hours expended by accurate, detailed, and contemporaneous time records").

Baker Marquart failed to carry this burden, providing none of the kinds of records typically submitted in support of a fee application. The affidavit that Shrem submitted in support of the fees and costs motion only provides the most barebones overview of the hours and rates claimed per attorney. Affidavit of Donald R. Pepperman in Support of Defendant Charles Shrem's Motion for Attorneys' Fees and Costs ("Pepperman Affidavit"), Dkt. 81, ¶ 11. Shrem provided, for example, no billing statements, and inexplicably only offers to provide a redacted copy to the Court for in camera review. The scarce level of detail does not give the Court or WCF a meaningful opportunity to review the reasonableness of the bill, including whether tasks should have been assigned to more junior attorneys or whether excessive time was spent on particular tasks. Indeed, just from the barebones of the Pepperman Affidavit, it appears as though Shrem is seeking recovery for time spent unrelated to fighting the attachment. The Pepperman Affidavit notes time spent on "review and analysis of the Complaint" (which can be interpreted simply as initial case assessment, divorced from fighting the attachment). Dkt. 81, ¶ 2.

In deciding the amount of attorneys' fees to provide in a successful motion for fees and costs under § 6212(e), a bankruptcy court called itself "troubled by the frequency in which the attorneys lump together tasks over extended periods of time, as well as the vague descriptions they provide of the particular services rendered." *In re Tougher Industries*, 2008 WL 1805806, at *5. (That statement could equally be applied here.) After further describing those "deficiencies," the court noted that it "could deny the fee requests in their entirety," although instead it decided to "reduce the fees sought by [one defendant] by 40% and the fees sought by [the other] by 20%." *Id.* at *6. This Court should be similarly troubled, and either deny Shrem's request outright, or at the very least significantly reduce the amount requested. *See Valmonte v. Bane*,

895 F. Supp. 593, 602 (S.D.N.Y. 1995) ("Without more information, it is impossible to determine whether the services to which those entries refer were reasonably rendered. Plaintiff's lead counsel has volunteered to provide more information, but to delay the instant motion any further would be to risk turning it into 'a second major litigation,' which is disfavored."); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly."); *Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, No. 10 CIV. 05256 KMW DF, 2012 WL 5816878, at *10 (S.D.N.Y. 2012) (similar).

### 2. Baker Marquart's Rates Are Excessive

However Baker Marquart seeks to justify its work on the case, its rates are excessive and higher than those typically awarded as "reasonable" fees in New York. Baker Marquart cites no authority to justify its rates, or professional studies of comparative rates in New York. The firm cites only hearsay evidence to suggest that its rates are reasonable. See Pepperman Affidavit, ¶ 13.

"In determining whether the requested hourly rate is reasonable, a court must analyze whether the 'requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Dancy v. McGinley*, 141 F. Supp. 3d 231, 235 (S.D.N.Y. 2015) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984)).

Baker Marquart is billing between $580 and $880 an hour for partner time and between $265 and $445 per hour for associate time. These rates far exceed those justified in the Southern District, given the experience required for opposition the attachment motion, and the relatively brief duration of the matter. *See, e.g.*, *Jean-Louis v. City of New York*, 2018 WL 5292125, at *3 (S.D.N.Y. 2018) (concluding that experienced civil rights litigators could charge $400, $385, and

$275 per hour); *Williams v. Metro-N. R.R. Co.*, 2018 WL 3370678, at *6-7 (S.D.N.Y. 2018), *report and recommendation adopted*, 2018 WL 3368713 (summarizing cases reducing rates, even for litigators experienced in the relevant matters, from levels such as those sought by Baker Marquart here); *id.* at *6 ("[C]ourts in this district generally award hourly rates of up to $300 per hour for senior associates with at least eight years of experience and between $124-215 to associates"); *C.D. v. Minisink Valley Cent. Sch. Dist.*, 2018 WL 3769972, at *6–7 (S.D.N.Y. 2018) (similar).

Baker Marquart's attorneys do not warrant any upward departure from the norm, as they have introduced no evidence indicating they specialize in New York state law or attachments in particular. Indeed, one of their partners asking for $580/hour is not even licensed in New York, and their senior associate was just admitted to the New York bar. This lack of experience in New York results in inefficiency and warrants a reduction. Furthermore, none of the four Baker Marquart attorneys lists experience directly relevant to this matter on their profiles. *See* Pepperman Affidavit, Exhibits 1-4.

Baker Marquart has also grossly overcharged for paralegal time, billing $265 for the senior paralegal on the matter. As the *Williams* court noted, "Courts in this district typically award paralegal rates in the range of $100-150 per hour." *Williams*, 2018 WL 3370678, at *8. Even given that the paralegal in this matter was senior, the claimed rate is excessive.

### 3. Baker Marquart's Hours Are Excessive

Baker Marquart's hours—144 claimed—are also excessive. *See Osterweil v. Bartlett*, 92 F. Supp. 3d 14, 33 (N.D.N.Y. 2015) (80.35 hours to draft an appellate brief deemed excessive); *McKevitt v. Colvin*, 2014 WL 1764339, at *3 (N.D.N.Y. 2014) (47.71 hours on a 25-page brief deemed excessive). Moreover, no fewer than four attorneys, including two partners, worked on the matter, likely duplicating and triplicating efforts.

Even the incomplete description provided in the Pepperman Affidavit clearly includes time not spent specifically on the attachment application but instead on conferring with Shrem, reviewing the complaint, and conducting overall case strategy. *See, e.g.*, Pepperman Affidavit, at ¶ 3. Work on the attachment was entwined with getting up to speed on the case and filing the motion to dismiss, and this Court should reduce the fees accordingly. *See, e.g.*, *Plessner v. Cont'l Cas. Co.*, 82 N.Y.S.2d 540 (Sup. Ct. 1948) (discussing the need to disentangle the fees due for opposing attachment from other matters); *E.T.I. Euro Telecom Int'l N.V. v. Republic of Bolivia*, No. 08 CIV. 4247 (LTS)FM, 2008 WL 5170168, at *4 (S.D.N.Y. 2008) (excluding claimed hours as not "a natural or proximate consequence of the New York action"—even in a case where, unlike here, the Defendant Entel had provided "declarations and billing statements" in support of its § 6212(e) motion); *Concord Reinsurance Co. v. Caja Nacional De Ahorro y Seguro*, No. 93 CIV. 6606 (JSM), 1994 WL 260779, at *1 (S.D.N.Y. 1994) ("Since it was not necessary in this case to seek dismissal of the complaint in order to have the attachment vacated, defendant is entitled only to an award of its fees and costs that are directly attributable to the motion to vacate the attachment.").

In response to such overclaiming, courts will not only exclude particular hours but also apply an overall percentage reduction. *See, e.g.*, *E.T.I. Euro Telecom Int'l N.V.*, 2008 WL 5170168, at *5 (reducing Entel's fees and costs claimed in relation to the attachment order by 25 percent, *after* applying such exclusions, because "the attorneys' fees and costs incurred by Entel in defending this action were greater than reasonably necessary"); *Williams*, 2018 WL 3370678, at *2 (summarizing the standards relevant to evaluating the hours claimed). This court should do the same here.

Should the Court award Shrem any fees, WCF requests a 66.67-percent reduction owing to excessive time, excessive rates, and a lack of substantiation for Baker Marquart's requested fees.

### III.   CONCLUSION

For the foregoing reasons, Shrem's Motion for Attorney's Fees and Costs should be denied. In the alternative, the Court should reduce the total fees claimed by 66.67 percent.

DATED: January 4, 2019                     Respectfully submitted,

By:    */s/ Tyler Meade*

Tyler Meade
THE MEADE FIRM p.c.
12 Funston Ave., Suite A
San Francisco, CA 94129
Telephone: (415) 724-9600
tyler@meadefirm.com
*Attorneys for Plaintiffs*