```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------x
WINKLEVOSS CAPITAL FUND, LLC,        :
                                     :
        Plaintiff,                   :
                                     :
        -v-                          :
                                     :
CHARLES SHREM                        :
                                     :
        Defendant.                   :
----------------------------------x
```

```
┌──────────────────────────┐
│ USDC SDNY                │
│ DOCUMENT             .   │
│ ELECTRONICALLY FILED     │
│ DOC #:_____           │
│ DATE FILED: |  7 \ℚ       │
└──────────────────────────┘
```

18-cv-8250(JSR)

MEMORANDUM

JED S. RAKOFF, U.S.D.J.

The Court previously issued a bottom-line order denying
defendant's motions to dismiss and to strike. Dkt. 78. The
reasons for these decisions are set forth below.

**Background**

Familiarity with all prior proceedings is here assumed. The
pertinent factual allegations, drawn from the complaint, are as
follows:

The principals of Winklevaus Capital Fund, LLC ("WCF"),
Cameron and Tyler Winklevaus (collectively, "the Winklevaus
brothers"), met Charles Shrem in 2012, shortly after Shrem had
launched BitInstant, an online platform for buying and selling
Bitcoin, a virtual currency. Compl., Dkt. 20, ¶¶ 8, 11, 12. At
that point, WCF had begun investigating investing in virtual
currency, and Shrem offered to help WCF purchase Bitcoin, which
was at that time difficult to purchase in the amount that WCF
wanted. Id. ¶¶ 8, 13-15. Shrem told WCF that he could accomplish

1

their desired purchases by buying at several different venues and spreading the purchases so as not to move the market. Id. ¶ 15. He offered to purchase Bitcoin for WCF "at the best price" without charging any fees for his services because his goal was to court an investment from WCF in BitInstant and use WCF's interest in Bitcoin to raise its public profile. Id. ¶ 16.

In reliance on Shrem's representations, WCF sent Shrem a total of $750,000 between September 2012 and February 2013. Id. ¶ 20. Shrem had promised WCF an overall report once the Bitcoin were purchased, but did not share any accounting figures until January 31, 3013, and then only included half of the Bitcoin he had sent WCF in the summary. Id. ¶¶ 22-24. WCF received 39,876.34 Bitcoin in exchange, at an average cost basis of $18.81 per Bitcoin, but suspected that the accounting for these purchases was inadequate and ceased working with Shrem to purchase Bitcoin. Id. ¶ 21. At WCF's request, Shrem provided additional details and updates, but never provided a full accounting. Id. ¶¶ 27-31. A friend of the Winklevoss brothers, who they had introduced to Shrem, also reported that he had noticed a shortfall when Shrem purchased Bitcoin for him. Id. ¶ 37.

WCF hired an accountant in February 2013 to perform an audit, and the auditor found that Shrem could not account for $61,000 sent to him, which was the equivalent of about 5,000

Bitcoin at the time based on the average price of $12.15 per Bitcoin. Id. ¶¶ 32-36. Shrem disputed this, but never provided additional information. Id. ¶¶ 38-39. Another company hired by WCF identified that Shrem's Bitcoin address received 5,000 Bitcoin on December 31, 2012, almost exactly the amount of the shortfall identified by WCF's accountant. Id. ¶¶ 41-44.[1]

**Analysis**

Shrem moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and pursuant to Rule 12(b)(6) for failure to state a claim. See Defendant Charles Shrem's Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Dkt. 62 ("MTD"); Defendant Charles Shrem's Reply in Support of Fed. R. Civ. P. 12(b)(1) and 12(b)(6) Motion to Dismiss, Dkt. 76 ("MTD Reply"). Shrem also moves to strike certain paragraphs from the complaint. See Defendant Charles Shrem's Fed. R. Civ. P. 12(f) Motion to Strike, Dkt. 65 ("MTS"); Defendant Charles Shrem's Reply in Support of Fed. R. Civ. P. 12(f) Motion to Strike, Dkt. 65 ("MTS Reply"). WCF opposes these motions. See Memorandum of Law in Opposition to Defendant Charles Shrem's Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Dkt.

---

[1]As discussed below in the context of Shrem's motion to strike, Shrem has presented evidence that this transaction was unrelated to his dealings with WCF. See also Memorandum, Dkt. 59.

73 ("MTD Opp"); Memorandum of Law in Opposition to Defendant
Charles Shrem's Fed. R. Civ. P. 12(f) Motion to Strike, Dkt. 74
("MTS Opp.").

## I. Motion to Dismiss under Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter
jurisdiction under Rule 12(b)(1) when the district court lacks
the statutory or constitutional power to adjudicate it."
Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)
(citing Fed R. Civ. P. 12(b)(1)).[2] Federal courts have original
jurisdiction over state law claims pursuant to 28 U.S.C. §
1332(a) where a dispute is between citizens of different states
and the amount in controversy exceeds $75,000. See 28 U.S.C. §
1332(a). When a defendant challenges the factual basis for §
1332(a) jurisdiction, the party invoking jurisdiction bears the
burden of proving that "it appears to a reasonable probability
that the claim is in excess of the statutory jurisdictional
amount." Scherer v. Equitable Life Assurance Soc'y of the U.S.,
347 F.3d 394, 397 (2d Cir. 2003).

However, "[t]his burden is hardly onerous" because courts
"recognize a rebuttable presumption that the face of the
complaint is a good faith representation of the actual amount in
controversy." Id. "To overcome the face-of-the-complaint

---

[2]Unless otherwise indicated, case quotations omit all internal
quotation marks, alterations, footnotes, and citations.

presumption, the party opposing jurisdiction must show to a legal certainty that the amount recoverable does not meet the jurisdictional threshold." Id. (emphasis added). "Even where the allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted." Id. (citing Tongkook Am., Inc. v. Shipton Sportwear Co., 14 F.3d 781, 784 (2d Cir. 1994) ("Where the damages sought are uncertain, the doubt should be resolved in favor of the plaintiff's pleadings.")).

Shrem argues that the Court lacks subject matter jurisdiction because WCF has not plausibly alleged that the amount in controversy meets the statutory requirement of $75,000 under § 1332. MTD at 5. The complaint seeks an award of compensatory damages calculated as the highest intermediate value of 5,000 Bitcoin between the time of wrongdoing and the time of trial, punitive damages in an amount to be proven at trial, disgorgement of all things of value improperly obtained by Shrem to prevent unjust enrichment, attorneys' fees and costs, and pre-judgment and post-judgment interest. Compl. at 15-16. WCF alleges that at the time of filing, the 5,000 Bitcoin claimed were worth $31,362,500. Id. ¶ 3.

Shrem argues in principal that this is insufficient to meet the claim threshold as, pursuant to WCF's fraud claim, WCF is not entitled to the value of the 5,000 Bitcoin that Shrem

5

allegedly purchased with WCF's money and kept for himself, but only to the $61,000 that WCF invested with Shrem for purchasing those Bitcoin.[3] MTD at 6; Reply at 2. WCF disputes this account. MTD Opp. at 11-13.

But it is unnecessary for the Court at this juncture to resolve what specific remedies are available on WCF's fraud claim as, even if WCF could recover only $61,000 on that claim, Shrem fails to show to a "legal certainty" that the total of all four of WCF's claims cannot exceed $75,000. In addition to its claim for fraud, WCF brings claims for breach of fiduciary duty, constructive trust, and accounting - claims for which broad equitable remedies are available that include monetary relief.[4]

---

[3] Some of Shrem's arguments delve into the merits more than appropriate for consideration on a 12(b)(1) motion. For instance, Shrem argues that there was no unjust enrichment because Shrem "never owned 5,000 bitcoins (or any bitcoins belonging to WCF" and WCF never owned the 5,000 bitcoins concerned. Reply at 3, 6 (citing Shrem Aff. ¶ 7). Similarly, Shrem argues that plaintiff's claims cannot provide a basis for plaintiff to meet the jurisdictional threshold because the claims are inadequately pled, MTD at 11, an argument properly expressed through a Rule 12(b)(6) motion rather than a Rule 12(b)(1) motion (and addressed in that section of this Memorandum).

[4] Shrem argues that damages on these claims are limited by the "highest intermediate price rule," which limits recovery in conversion cases concerning property with fluctuating value, such as stock, to "either (1) its value at the time of conversion or (2) its highest intermediate value between notice of the conversion and a reasonable time thereafter during which the stock could have been replaced had that been desired, whichever of (1) or (2) is higher." MTD at 7-10 (quoting Schultz v. Commodity Futures Trading Comm'n, 716 F.2d 136, 141 (2d Cir.

For instance, constructive trust remedies are "measured by the defendant's gain rather than the plaintiff's loss." Design Strategies, Inc. v. Davis, 367 F.Supp.2d 630, 645 (S.D.N.Y. 2005). Similarly, claims for accounting are "equitable in nature," as they are "based on allegations that the defendant...has profited by using something which in good conscience belongs to the plaintiff and that the defendant ought to disgorge his profits." Id. at 644. Breach of fiduciary duty claims are also intended "to prevent [breach of fiduciary duty] by removing from agents and trustees all inducement to attempt dealing for their own benefit in matters which they have undertaken for others." Diamond v. Oreamuno, 24 N.Y.2d 494, 498 (1969) (emphasis added); see also Birnbaum v. Birnbaum, 157 A.D.2d 177, 188 (1990) ("[I]f the defendant has made a profit through the violation of a duty to the plaintiff to whom he is in a fiduciary relation, he can be compelled to surrender the profit to the plaintiff."). Therefore, even if more than $61,000 were not recoverable under the fraud claim, broader damages might be recoverable under WCF's other claims to disgorge Shrem's profits from the alleged theft.

---

1983)). But whatever remedies might be appropriate for a conversion claim, see Kinsey v. Cendant Corp., 588 F.Supp.2d 516, 521 (S.D.N.Y. 2008) ("Schultz remains valid for conversion claims") (emphasis added), broader equitable remedies are available on WCF's claims, as discussed above.

Moreover, breach of fiduciary duty claims can also be
grounds for punitive damages, as can fraud claims. See Riddell
Sports v. Brooks, No. 92-cv-7851, 1997 U.S. Dist. LEXIS 4394, at
*43 (S.D.N.Y. Jan. 7, 1997)("New York law also recognizes breach
of fiduciary duty as an exception to the general rule that
punitive damages are not recoverable for breach of contract
claims"); Ross v. Louise Wise Servs., Inc., 8 N.Y.3d 478, 489
(2007)(punitive damages recoverable for fraud where "defendant's
wrongdoing is not simply intentional but evinces a high degree
of moral turpitude").[5]

---

[5] Shrem advances several arguments as to why punitive damages
should not be considered, but these arguments lack merit and,
moreover, would not alter the outcome of the Court's decision as
to this motion given that Shrem has failed to show that the
combined compensatory and equitable damages alone do not exceed
$75,000. Shrem argues that his conduct, as alleged in the
complaint, does not rise to the level required for punitive
damages. MTD at 11. This may eventually be determined to be the
case, but the complaint clearly alleges that Shrem intentionally
stole from WCF and did the same to another individual who
entrusted him with buying Bitcoin. Compl. ¶ 37. Shrem can hardly
show to a legal certainty at this stage that his conduct did not
meet this threshold. Shrem also argues that WCF "impermissibly
fails to specify the amount of punitive damages it seeks," Reply
at 6, but the cases he cites in support are clearly inapposite.
Nwanze v. Time, Inc., 125 F. App'x. 346, 349 (2d Cir. 2005)
(amount in controversy pleading inadequate where making a claim
for five million dollars' punitive damages "with unspecified or
no actual damages); Lupo v. Human Affairs Intern., 28 F.3d 269,
273-74 (2d Cir. 1994) (amount-in-controversy pleading inadequate
where complaint makes no allegation that the amount in
controversy exceeds the jurisdictional requirement). WCF has
clearly alleged an amount in controversy above the
jurisdictional requirement.

As Shrem cannot show to a legal certainty that the amount in controversy does not exceed $75,000, the motion to dismiss under Rule 12(b)(1) is denied.

## II. Motion to Dismiss under Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible if it supported by "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In analyzing a complaint, the court "accepts all factual allegations as true and draws all reasonable inferences in favor of the plaintiff." Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt., 843 F.3d 561, 566 (2d Cir. 2016).

Here, WCF has brought claims for failure to state a claim for fraud, breach of fiduciary duty, equitable trust account, and an equitable accounting against Shrem. Shrem moves to dismiss each for failure to state a claim.

### A. Fraud

"To state a cause of action for fraud, a plaintiff must allege a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the

9

plaintiff and resulting injury." Kaufman v. Cohen, 760 N.Y.S.2d
157, 165 (N.Y. App. Div. 1st Dep't 2003). A fraud claim is
subject to the heightened pleading standards of Rule 9(b) of the
Federal Rules of Civil Procedure, which require a plaintiff to
"(1) specify the statements that the plaintiff contends were
fraudulent, (2) identify the speaker, (3) state where and when
the statements were made, and (4) explain why the statements
were fraudulent." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290
(2d Cir. 2006).

WCF alleges that Shrem made two different fraudulent
statements. First, Shrem "offered to purchase Bitcoin for WCF at
the best price." Compl. ¶16. Shrem represented that he would
"secure...the best price" for WCF in Bitcoin purchases in
several emails to Cameron Winklevoss, one dated September 12,
2012 and another "at the end of December 2012." Id. ¶¶ 17-20.
"WCF sent Shrem a total of $750,000 between September 2012 and
February 2013," acting "[i]n reliance on Shrem's reputation as a
Bitcoin expert, as well as his representations that he would
secure Bitcoin for WCF at the best price." Id. ¶ 20. Second,
Shrem also "promised WCF an accounting," which he described as
"an 'overall report once the [Bitcoin] are bought, so you can
see the average price.'" Id. ¶ 22. Shrem made this promise
"before WCF sent any money." Id. "Shrem knew those statements
were false at the time he made them." Id.

10

Shrem argues that WCF has failed to allege adequately that either statement was a misrepresentation because the complaint's allegation that "Shrem knew those statements were false at the time he made them" is conclusory. MTD at 17. However, the Second Circuit has recognized in interpreting Rule 9(b) that "great specificity is not required with respect to allegations of scienter" as "a plaintiff realistically cannot be expected to plead a defendant's actual state of mind." Conn. Nat'l Bank v. Fluor Corp., 808 F.2d 957, 962 (2d Cir. 1987). See also Rule 9(b) ("Malice, intent, knowledge, and other condition of mind of a person may be averred generally."). A plaintiff satisfies its burden of pleading with particularity with respect to scienter when it "specifically plead[s] those events which give rise to a strong inference that the defendants had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." Conn. Bank, 808 F.2d at 962.

The events alleged in WCF's complaint suffice to give rise to the requisite strong inference that Shrem acted fraudulently. WCF alleges that Shrem intentionally misrepresented his intentions to use WCF's money to buy WCF Bitcoin and to provide a full accounting of those purchases in order to induce WCF to give him money that he could take for himself, and that he similarly shortchanged at least one other purchaser in order to build a personal Bitcoin fortune. Compl. ¶¶ 22, 39, 40, 47. The

11

cases that Shrem cites where fraud claims were dismissed for lack of particularity, see MTD at 17, concern complaints that failed to provide any factual basis for their assertions concerning scienter, or are otherwise inapposite. See Conn. Bank, 808 F.2d at 962 (scienter inadequately pled where complaint "barren of any factual basis for [] conclusory allegations of scienter" and "events alleged in the complaint give rise to an inference that [defendant] did not act fraudulently"); Cadle Co. v. Rochfort Enters. (Bahamas) Ltd., No. 02-cv-9348, 2003 U.S. Dist. LEXIS 4795, at *2 (S.D.N.Y. Mar. 31, 2003) (fraud claim dismissed where "complaint simply fails to set out the circumstances with particularity, much less a factual basis for inferring actual intent to defraud"); Lomaglio Assocs, Inc. v. LBK Mktg. Corp., 892 F. Supp. 89, 94-95 (S.D.N.Y. 1995) (finding conclusory allegations of fraudulent intent "a superficial allegation of fraud" disguising "a repetition of the breach of contract claims contained elsewhere in the complaint"; Shultis v. Reichel-Shultis, 768 N.Y.S.2d 38, 39 (N.Y. App. Div. 3d Dep't 2003) (addressing fraud claim on different procedural posture, after denial of motion to enforce judgment).

Shrem suggests that WCF fails to allege that either of his statements were anything more than "overly optimistic expectations for a risky business venture that ultimately

12

failed." MTD at 15 (quoting Hewlett v. Staff, 652 N.Y.S.2d 350,
352 (N.Y. App. Div. 3d Dep't 1997). But WCF is not alleging that
Shrem did not obtain as good of a price for Bitcoin as he hoped
he could; it is alleging that he misappropriated the funds for
himself and hid the evidence by failing to provide an
accounting. And Hewlett is clearly inapposite because in that
case there were no allegations of any "statements of intent to
do something in the future, made with the knowledge that the
acts will not in fact be performed or with the present intention
not to perform them," while here the complaint specifically
alleges that Shrem stated he would purchase Bitcoin for WCF with
all of WCF's money and provide an accounting for all of the
purchases, and made these statements intending not to perform on
them. 652 N.Y.S.2d at 351-52.[6] Similarly, WCF is not alleging
that Shrem failed to give any accounting; it is alleging that

---

[6] Shrem cites a number of other cases for the principle that
failure to present evidence that the defendant did not intend to
keep a promise at the time he made it is fatal to a fraud claim,
but all of these cases were fraud claims at different procedural
postures where evidence was being evaluated. See Tanzman v. La
Pietra, 778 N.Y.S.2d 199(N.Y. App. Div. 3d Dept. 2004) (motion
for directed verdict); Cornick v. Murnighan, 727 N.Y.S.2d 803,
804 (N.Y. App. Div. 3d Dept. 2001)(evaluating fraud claim on
motion for summary judgment); McGovern v. Best Bldg. &
Remodeling, 666 N.Y.S.2d 854, 857 (N.Y. App. Div. 3d Dept. 1997)
(same); Rudman v. Cowles Commc'ns, 280 N.E.2d 867, 871 (N.Y.
1972) (post-fact finding motion).

13

Shrem failed to give a full accounting in violation of his representation that he would do so.

Shrem also argues that WCF has failed to allege justifiable reliance on either statement, citing case law holding that "where a party has the means to discover the true nature of the transaction by the exercise of ordinary intelligence, and fails to make use of those means, he or she cannot claim justifiable reliance on the defendant's misrepresentations." Tanzman v. La Pietra, 778 N.Y.S.2d 199, 200 (N.Y. App. Div. 3d Dep't 2004). Shrem alleges that WCF could not have justifiably relied on Shrem's statement that he would buy the Bitcoin at the "best price" because WCF also bought Bitcoin for itself and could ascertain prices for itself. MTD at 18. This is a misrepresentation of plaintiff's allegation; plaintiff is not alleging that Shrem misrepresented the price, but that he misrepresented that he was going to buy Bitcoin for WCF rather than for himself. Shrem argues that WCF could not have justifiably relied on Shrem's statements that he would provide an accounting because WCF continued to send Shrem money for months after Shrem failed to provide a timely accounting, id., but WCF specifically alleges that Shrem responded providing partial accountings and renewing the promise for a full accounting on multiple occasions.

14

Finally, Shrem argues that WCF has failed to allege injury as a matter of law because, in its claim for relief, WCF alleges that it "has been deprived of 5,000 Bitcoin that it would have received if it were not for Shrem's fraud," and Shrem argues that WCF is not in fact entitled to 5,000 Bitcoin but to the $61,000 allegedly lost. Id. at 19. But this is not a statement that WCF has not alleged an injury, it is a statement that WCF has not alleged an injury adequate to invoke federal jurisdiction, and accordingly is irrelevant to Shrem's motion under Rule 12(b)(6).

Accordingly, WCF adequately alleges a claim for fraud.

## B. Breach of Fiduciary Duty

"To be entitled to a constructive trust under New York law, a party must establish four elements: (1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer made in reliance on that promise; and (4) unjust enrichment." Brand v. Brand, 811 F.2d 74, 77 (2d Cir. 1987).

First, Shrem argues that WCF fails to allege sufficient facts to show that Shrem owed WCF a fiduciary duty. MTD at 19. "[A] fiduciary duty exists where one assumes control and responsibility over another, or where one has a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with his undertaking." Abercrombie v. College, 438 F. Supp. 2d 243, 274 (S.D.N.Y. 2006) (further explaining

15

that a "fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation").

Shrem argues that "WCF merely alleges a conventional business relationship between two sophisticated parties," not a fiduciary relationship. MTD at 20 (citing Osan Ltd. v. Accenture LLP, 454 F. Supp. 2d 46, 56-57 (E.D.N.Y. 2006) ("[A] conventional business relationship, without more, does not become a fiduciary relationship by mere allegation."). Shrem argues that WCF's only allegation that would "elevate[]" this commercial relationship to a fiduciary one is its allegation that WCF "placed complete and absolute trust and confidence in Shrem," see MTD at 20 (quoting Compl. at ¶ 50), and "mere assertions of trust and confidence are insufficient to support a claim of a fiduciary relationship," id. (quoting Abercrombie, 438 F. Supp. 2d at 274).

But WCF, however sophisticated, was not in an "arms-length" business transaction with Shrem and is not alleging a fiduciary relationship based on their trust in him or respect for his expertise alone. Their claim of fiduciary duty is that Shrem undertook "a duty...to act primarily for the benefit" of WCF in accepting WCF's funds to purchase Bitcoin on its behalf. Abercrombie, 438 F. Supp. 2d at 274. Shrem accepted

16

discretionary control over WCR's funds to purchase Bitcoin on its behalf based on his knowledge of the Bitcoin market; there is no doubt he had a fiduciary duty in acting as WCF's agent. See United States v. Skelly, 442 F.3d 94, 98 (2d Cir. 2006) (fiduciary "relationship exists in situations in which a broker has discretionary authority over the customer's account").[7]

Second, Shrem argues that WCF fails to allege that Shrem engaged in any misconduct that would constitute a breach of fiduciary duty. MTD at 29. This is a considerable misrepresentation of WCF's claims. Shrem claims that it was not misconduct to fail to purchase Bitcoin at the "best price" given the volatility of the market, but WCF is alleging that Shrem failed to purchase it on its behalf at all. Shrem claims that WCF does not allege "Shrem promised to provide a complete or accurate accounting," but the complaint specifically alleges that Shrem "promised to compile the data and enter all of the transactions into a single spreadsheet. See Compl. ¶ 25. More generally, it strains credibility to read the complaint's

---

[7] The cases Shrem relies upon where courts found a non-fiduciary relationship are inapposite. In Saul v. Cahan, 61 N.Y.S.3d 265, 267-68 (N.Y. App. Div. 2d Dep't 2017), the defendant was acting in an advisory capacity to plaintiff regarding certain purchases and plaintiff made the purchases independently. In Ciccone v. Hersh, 530 F. Supp. 2d 574, 576-77 (S.D.N.Y. 2008), defendant was similarly acting in a solely advisory capacity and "only Plaintiffs were authorized to make changes to the Investments."

17

allegation that Shrem promised an "accounting" to mean that he promised to provide a partial or inaccurate accounting.

Third, Shrem again argues that WCF fails to allege an injury because it disagrees with WCF's calculation of the appropriate damages. MTD at 22. This is not a failure to allege an injury; WCF clearly alleges an injury from WCF's failure to account for $61,000 of its money.

Accordingly, WCF adequately alleges a claim for breach of fiduciary duty.

## C. Constructive Trust

"To be entitled to a constructive trust under New York law, a party must establish four elements: (1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer made in reliance on that promise; and (4) unjust enrichment." Brand, 811 F.2d at 77.

Shrem argues that this claim should be dismissed as "a constructive trust is simply a remedy and is not the basis for a separate cause of action." [8] MTD at 24 (quoting I.B.

_____

[8] Shrem also again argues that there is no confidential or fiduciary relationship. MTD at 23. This is inaccurate, as addressed above. Shrem also argues that there was no "unjust enrichment" as Shrem "has already placed $61,000 in an escrow account with the Court." Id. But WCF's allegation is that Shrem was unjustly enriched by the profits of retaining the $61,000 over the past approximately six years and depositing $61,000 in escrow does not cure this alleged injury, nor was it intended to do so.

Trading, Inc. v. Tripoint Global Equities, LLC, 280 F. Supp. 3d
524, 545 (S.D.N.Y. 2017) (JGK)). The Second Circuit has
described constructive trust "as an equitable remedy." In re
First Central Fin. Corp., 377 F.3d 209, 215-16 (2d Cir. 2004).
Accordingly, some courts in this district have regarded
constructive trust as a "remedy, not a cause of action," and
dismissed constructive trust claims on those grounds. Anwar v.
Fairfield Greenwich, Ltd., 728 F. Supp. 2d 372, 419-20 (S.D.N.Y.
2010) (VM); see also I.B. Trading, 280 F. Supp. 3d at 545. But
other courts in this district have allowed constructive trust to
be pled as a cause of action. See, e.g., City of Almaty v.
Ablyazov, 278 F. Supp. 3d 776, 802 (S.D.N.Y. 2017) (AJN); Hughes
v. BCI Int'l Holdings, Inc., 452 F. Supp. 2d 290, 309 (S.D.N.Y.
2006)(HB)("plaintiffs have adequately plead a claim for
constructive trust). And, as recently as 2018, the Second
Circuit evaluated a district court summary judgment decision on
a constructive trust claim without making any suggestion that it
was being improperly considered as a cause of action. See Jaffer
v. Hiriji, 887 F.3d 11, 114-15 (2d Cir. 2018). Moreover, the
Court notes that the difference here is entirely semantic, as,
even if not permitted to plead constructive trust as a claim,
"plaintiffs may, if appropriate, later request, as a remedy, the
imposition of a constructive trust." Anwar, 728 F. Supp. 2d at
420. Allowing pleading constructive trust as a claim in the

19

first instance has the additional benefit of providing notice to defendants.

Accordingly, as the Court finds plaintiff has adequately alleged a claim for constructive trust, it will permit its maintenance as a cause of action.

## D. Equitable Accounting

Under applicable New York law, a party seeking an accounting must establish four conditions: "(1) relations of a mutual and confidential nature; (2) money or property entrusted to the defendant imposing upon him a burden of accounting; (3) that there is no adequate legal remedy; and (4) in some cases, a demand for an accounting and a refusal." Pressman v. Estate of Steinvorth, 860 F. Supp. 171, 179 (S.D.N.Y. 1994). "The purpose of an equitable accounting is to require a fiduciary to show what he did with the principal's property," and, "[i]f a plaintiff is successful in an accounting claim, in addition to returning the property, a fiduciary must return any profits generated by the use of the property." Soley v. Wasserman, 823 F. Supp. 2d 221, 237 (S.D.N.Y. 2011).

Shrem argues that WCF has not failed to allege equitable accounting as it has failed to allege a fiduciary duty. MTD at 31. As discussed above, this is meritless.

20

Accordingly, the Court finds that WCF has adequately pled a claim for equitable accounting and the motion to dismiss under Rule 12(b)(6) is denied in full.

## III. **Motion to Strike**

Under Rule 12(f) "court[s] may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12 (f). "To prevail on a [Rule 12 (f)] motion to strike, a party must demonstrate that (1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant." In re Fannie Mae 2008 Sec. Litig., 891 F. Supp. 2d 458, 471 (S.D.N.Y. 2012). "Usually the questions of relevancy and admissibility in general require the context of an ongoing and unfolding trial in which to be properly decided. And ordinarily neither a district court nor an appellate court should decide to strike a portion of the complaint - on the grounds that the material could not possibly be relevant - on the sterile field of the pleadings alone." Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir. 1976). As such, "[m]otions to strike are viewed with disfavor and infrequently granted." Emilio v. Sprint Spectrum L.P., 68 F. Supp. 3d 509, 514 (S.D.N.Y. 2014).

21

Shrem moves to strike paragraphs 2, 3, 40 and 44 from WCF's complaint pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. There are two separate allegations at issue in these paragraphs. One is the allegation that Shrem stole 5,000 Bitcoin from WCF and failed to provide an accounting for WCF's money. There is no basis for striking this allegation, which goes to the core of WCF's claims against Shrem. This covers the first two sentences of Paragraph 2, and all of Paragraphs 3 and 40.

The other is the allegation that the December 31, 2012 Bitcoin transfer involved Shrem's Bitcoin. As discussed in detail in this Court's prior opinion denying WCF's motion to confirm prejudgment attachment, Shrem has presented evidence that the 5,000 Bitcoin that Shrem transferred from the Bitcoin address referenced in the complaint belonged to a third-party investor, John Doe, not to Shrem or to WCF. See Memorandum, Dkt. 59. Accordingly, Shrem argues that this allegation should now be struck as "demonstrably false." MTS at 3. WCF, however, argues correctly that falsity is not a basis for striking allegations in a pleading. MTS Opp at 2. However, while Shrem did use the term falsity, his motion is better understood as a motion to strike for irrelevance based on substantial evidence that the transfer of 5,000 Bitcoin referenced in the complaint was a third-party transaction with no relevance to the claim in the complaint that Shrem appropriated WCF's funds for personal use.

In his reply brief, Shrem appears to argue additionally that allegations concerning WCF's investigation of its missing funds are irrelevant as "references to preliminary steps in litigations...that did not result in...permissible findings of fact." MTS Rep. at 2 (quoting In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig., 218 F.R.D. 76, 78 (S.D.N.Y. 2003)(citing Lipsky, 551 F.2d at 892-94). But the case that Shrem cites for this point, and the cases it collects, concern complaints relying on ongoing litigation or administrative investigations, see Merrill Lynch, 218 F.R.D. at 78, stricken as improper references "to proceedings which do not adjudicate underlying issues" because "where there is no actual adjudication of issues in the other proceeding 'it cannot be used as evidence in subsequent litigation'," Ledford v. Rapid-American Corp., No. 86-cv-9116,1988 U.S. Dist. LEXIS 79, at *1-2 (S.D.N.Y. Jan. 8, 1988) (quoting Lipsky, 551 F.2d at 893). This case law is inapposite to the allegations here by WCF, based on its own investigation and suppositions, not attempts to rely on prior judicial or administrative proceedings.

While Shrem has presented significant evidence that the December transaction is irrelevant, the Second Circuit has instructed that "[e]videntiary questions...should especially be avoided at such a preliminary stage in the proceedings" and "require the context of an ongoing and unfolding trial in which

to be properly decided." Lipsky, 551 F.2d at 893. The Court must instead look at "the sterile field of the pleadings alone." Id. On the face of the complaint, the allegation that Shrem transferred the amount of Bitcoin allegedly stolen from WCF into his account during the time period of the alleged theft is hardly immaterial.

Moreover, the Court is unable to find that leaving the allegation concerning the December transaction in the complaint is particularly prejudicial to Shrem. Given that he complaint alleges that Shrem took 5,000 Bitcoin from WCF for himself, the allegation that he put 5,000 Bitcoin into his account on a certain date is hardly more prejudicial. See Coach, Inc. v. Kmart Corps., 756 F. Supp. 2d 421, 425-26 (S.D.N.Y. 2010) (discussing requirement that movant shows that the objectionable material would result in prejudice, such as "[i]ncreased time and expense of trial").

Accordingly, the motion to strike must be denied.

For the foregoing reasons, the Court, by Order dated December 20, 2018, denied all of defendant's pending motions.

Dated:     New York, NY
           January ___, 2019                    JED S. RAKOFF, U.S.D.J.