# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WINKLEVOSS CAPITAL FUND, LLC, | Case No.  18-cv-8250 (JSR) |
| Plaintiff, | |
| v. | **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH** |
| CHARLES SHREM, | |
| Defendant. | |

1

## TABLE OF CONTENTS

I.   INTRODUCTION .................................................................................................. 4

II.  BACKGROUND ................................................................................................... 5

III. ARGUMENT ........................................................................................................ 6

    A.   MOVANTS HAVE STANDING TO BRING THIS MOTION ........................................ 6

    B.   THE SUBPOENAS SHOULD BE QUASHED ......................................................... 7

IV. CONCLUSION .................................................................................................. 12

## Table of Authorities

### Cases

*A.I.A. Holdings S.A. v. Lehman Bros.*, 2000 WL 763848 at *3 (S.D.N.Y. June 12, 2000) ............ 8

*Arias–Zeballos v. Tan*, 2007 WL 210112 at *1 (S.D.N.Y. Jan. 25, 2007) ................................. 6, 8

*Burns v. Bank of Am.*, No. 03 CIV.1685 RMB JCF, 2007 WL 1589437, at *14 (S.D.N.Y. June 4, 2007) ....................................................................................................................................... 11

*Carvel v. Franchise Store Realty Corp.*, 2011 WL 13269780, at *3 (S.D.N.Y. June 16, 2011) .. 11

*Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 2017 WL 3491975, at *1 (S.D.N.Y. Aug. 15, 2017) ....................................................................................................... 6

*Estate of Ungar v. Palestinian Auth.*, 332 F. App'x 643, 645 (2d Cir. 2009) .............................. 7

*Haber v. ASN 50th St., LLC*, 272 F.R.D. 377, 382 (S.D.N.Y. 2011) ............................................. 7

*In re Fitch, Inc.*, 330 F.3d 104, 108 (2d Cir.2003) ...................................................................... 10

*In re Flag Telecom Holdings, Ltd. Secs. Litig.*, 2006 WL 2642192 at *2 (S.D.N.Y. Sept. 13, 2006) ....................................................................................................................................... 7

*Koch v. Greenberg*, 2009 WL 2143634, at *2 (S.D.N.Y. July 14, 2009) ....................................... 7

*Mandell v. Maxon Co.*, 2007 WL 3022552, at *1 (S.D.N.Y. Oct. 16, 2007) ................................. 7

*Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 813 (9th Cir. 2003) ............................. 7

*Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*, 2014 WL 5420225, at *4 (S.D.N.Y. Oct. 24, 2014) ....................................................................................................................................... 6

*Solow v. Conseco, Inc.*, 2008 WL 190340, at *3 (S.D.N.Y. Jan. 18, 2008) ..................... 6, 10, 11

### Rules

FRCP 45 (d)(3)(B)(i) .................................................................................................................... 6

### Treatises

9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2459 (3d ed. 2008) ....................................................................................................................................... 3

## I.    INTRODUCTION

Plaintiff Winklevoss Capital Fund, LLC ("WCF") and non-parties Cameron Winklevoss, Tyler Winklevoss, Gemini Trust Company, LLC, ("Gemini") Winklevoss Capital Management, LLC, and Winklevoss Bitcoin Trust (collectively, "Movants") bring this motion to quash document subpoenas issued to an accountant and six financial institutions. All of these subpoenas contain broadly-framed and highly-intrusive requests for financial information about the six Movants, calling for, among other things, the production of transaction-level data for any and all accounts the Movants had with these six financial institutions over a three-year period.

Defendant Charlie Shrem ("Shrem") has not — and cannot — articulate a legitimate basis for the breadth and intrusiveness of these subpoenas. All of the claims in this case arise from Defendant Shrem's failure to purchase bitcoin[1] for Plaintiff WCF with all of the $750,000 that WCF transferred to him between September 2012 and February 2013. *See* Complaint ("Compl.") ¶1. Shrem has defended these subpoenas by arguing, in essence, that this discovery is necessary to show how and when Shrem received those funds, and to support an argument that WCF allegedly could have covered its losses by purchasing replacement bitcoin.

Shrem's stated reasons are clearly a façade because nearly all of the information he has requested is irrelevant and wildly overbroad to his stated objectives. Even as to WCF itself (the only party amongst the six Movants), only a small fraction of its transactions bore any relationship to Shrem. Securing all of WCF's bank records for a three-year period is a wildly over-inclusive approach to proving that WCF transferred the amount that it has alleged. It is even

---

[1] By common convention, Bitcoin with a capital "B" typically refers to the Bitcoin Network as a whole, whereas bitcoin with a lowercase "b" refers to the virtual commodity of the Bitcoin Network. This naming convention is used throughout this document.

less plausible for Shrem to argue that the detailed bank records of the non-party Movants are relevant to the issues Shrem has identified.

Curiously, nothing better illustrates the impropriety of Shrem's subpoenas than Shrem's own document requests. Unlike the third-party subpoenas, the discovery he served on WCF contain requests that are better tailored to achieving his stated discovery goals and provide a meaningful ground for meet and confer. WCF has already indicated that it will be producing many documents responsive to those requests, including bank statements that reflect a total of $750,000 worth of transfers from WCF to BitInstant. These subpoenas offer no incremental discovery value. Instead the subpoenas threaten to invade Movants' privacy interests (and in the case of Gemini, its customers' privacy) for no legitimate purpose.

For all these reasons and as explained further below, these subpoenas should be quashed.

## II.      BACKGROUND

The discovery at issue consists of seven document subpoenas addressed to one accountant, Matthew Gruchevsky, and six financial institutions: Silicon Valley Bank, Silvergate Bank, Chase Bank, Metropolitan Bank Holding Corp., Signature Securities Group Corporation, and Deutsche Bank Trust Corporation. *See* Declaration of Sam Ferguson ("Ferguson Decl."), Ex. A. Each of these subpoenas contains the same list of requests, asking for "[a]ll documents related to any accounts held by, registered to, or opened under the name" of the six Movants "from 2012 to 2014, including account statements, and transaction records."[2] *Id.* The return date for all of the subpoenas is January 31, though opposing counsel has agreed not to view documents produced pursuant to the subpoenas until this Court has ruled on the instant motion. *Id.* at Exs. A & E.

---

[2] The subpoenas also include a request for documents relating to a seventh entity, Maguire Ventures, LLC.

Two of the Movants have no connection at all to this litigation. Gemini is a virtual currency[3] exchange that allows customers to buy, sell and store bitcoin and other virtual currencies. Declaration of Cameron Winklevoss ("Winklevoss Decl.") ¶ 9. It did not come into existence until 2014, however, and did not launch as a public platform until 2015, long after the transactions in question. *Id.* Winklevoss Bitcoin Trust ("WBT") is a Delaware trust that was created in December 2014 to hold bitcoin for a potential bitcoin exchange-traded fund ("ETF"). *Id.* ¶ 10. The Securities and Exchange Commission has not yet approved the ETF, though, and therefore WBT has never held any bitcoin. *Id.* The other entity, Winklevoss Capital Management, LLC ("WCM"), is a management firm that provides services to various entities under the Winklevoss brothers' control, including WCF and Gemini. Winklevoss Decl. ¶ 11.

### III.    ARGUMENT

#### A.    Movants Have Standing to Bring This Motion

A subpoena may be challenged via a motion to quash by any person with a "real interest" in the documents at issue. *Solow v. Conseco, Inc.*, 2008 WL 190340, at *3 (S.D.N.Y. Jan. 18, 2008). Such an interest exists if the person seeks to assert "some right or privilege personal to" the movant, "such as an interest in proprietary, confidential information that would be disclosed." *Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 2017 WL 3491975, at *1 (S.D.N.Y. Aug. 15, 2017) (citation and quotation omitted); *see also* 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2459 (3d ed. 2008) ("Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought." (footnote omitted)). Privacy interests may be asserted by entities such

---

[3] Virtual currency (often called "cryptocurrency") is used throughout this document to refer to the entire ecosystem of virtual commodities and other asset types that are digital representations of value that function as a medium of exchange, a unit of account, and/or a store of value.

as corporations and LLCs, as well as by natural persons. *See, e.g., Esso*, 2017 WL 3491975, at *1 (holding that Central Bank of Nigeria had standing to bring motion to quash subpoena to JP Morgan because the subpoena sought its account information); *Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*, 2014 WL 5420225, at *4 (S.D.N.Y. Oct. 24, 2014) (noting that corporations and LLCs are entitled to enforce privacy interests).

It is well established that a subpoena requesting a person's bank records gives the person standing to challenge the subpoena. *See, e.g., Arias–Zeballos v. Tan*, 2007 WL 210112 at *1 (S.D.N.Y. Jan. 25, 2007) (collecting cases where courts found standing based on subpoenas for banking records). Likewise, a client may challenge a subpoena issued to an accounting firm based on the client's privacy interest in his financial records. *See, e.g., In re Flag Telecom Holdings, Ltd. Secs. Litig.*, 2006 WL 2642192 at *2 (S.D.N.Y. Sept. 13, 2006) (concluding that party had standing to object to a subpoena served on party's accounting firm based on party's privacy interest in his financial records).

The subpoenas in question explicitly request account information for each of the six movants, *see* Ferguson Decl., Ex. A., and therefore all of them have standing to challenge the subpoenas, as all of the Movants have an interest in protecting the privacy of the detailed financial information that the subpoenas seek.

### B.     The Subpoenas Should Be Quashed

A court may only enforce a subpoena if it finds that the requested information is "relevant and material to the allegations and claims at issue in the proceedings." *Haber v. ASN 50th St., LLC*, 272 F.R.D. 377, 382 (S.D.N.Y. 2011) (citation and quotations omitted); *see also Koch v. Greenberg*, 2009 WL 2143634, at *2 (S.D.N.Y. July 14, 2009) ("Subpoenas issued under Rule 45 are subject to Rule 26(b)(1)'s overriding relevance requirement. A subpoena that is overly broad may be quashed even if it calls for some relevant information. *See, e.g., Estate of*

*Ungar v. Palestinian Auth.*, 332 F. App'x 643, 645 (2d Cir. 2009) (district court "acted well within its discretion" in quashing subpoena that asked for "essentially every document" that a law firm possessed relating to a particular client); *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 813 (9th Cir. 2003) (affirming trial court's quashing of "abusively drawn" subpoena, where "[n]o attempt had been made to try to tailor the information request to the immediate needs of the case").

The burden of demonstrating the relevance necessary to justify discovery is on the party seeking the subpoena, *see Mandell v. Maxon Co.*, 2007 WL 3022552, at *1 (S.D.N.Y. Oct. 16, 2007), although once that showing has been made, the burden is on the party moving to quash to "show why discovery should not be had." *A.I.A. Holdings S.A. v. Lehman Bros.*, 2000 WL 763848 at *3 (S.D.N.Y. June 12, 2000).

These subpoenas request any and all account-related information for all of the Movants for at least a three-year period.[4]  This information would presumably include any communications between the Movants and the subpoenaed persons, including any documentation involved in establishing the relationship, if that event occurred during the requested timeframe, the balances of Movants' accounts before any of the events described in the Complaint occurred, and records of all payments into those accounts and debits from the accounts during the requested timeframe, thereby revealing the date, amount and counter-party for each of those transfers. Winklevoss Decl. ¶ 6. In addition to raising the general privacy concerns that requests for banking records automatically trigger, *see, e.g., Arias–Zeballos*, 2007 WL 210112 at *1 (citing cases), this detailed information would also implicate the particular

---

[4] It is unclear whether Shrem's intent was to limit these requests to documents falling within the three-year timeframe of the request, or whether he intends for the requests to encompass any and all documents relating to any account that existed during that timeframe, in which case the requested records continue into the present.  For purposes of this motion Movants assume that Shrem intended for the narrower interpretation to apply, but all of the arguments herein apply with even greater force if the requests are not time-limited.

concern for confidential commercial information that the subpoena rule explicitly discusses, as it would include, for instance, confidential information about the amount and timing of investments in WCM's portfolio companies, and would reveal the identities of the entity movants' customers and/or investors, including personally identifying information on Gemini's customers. *See* FRCP 45 (d)(3)(B)(i) (instructing courts to quash or modify subpoenas that "require disclosing a trade secret or other confidential research, development or commercial information"); Winklevoss Decl. ¶ 6.

None of Shrem's purported justifications for seeking this information support the requested discovery. The initial reason his attorneys proffered was an alleged need for evidence to show that WCF was financially able to purchase bitcoin to cover its losses.  Ferguson Decl. ¶¶ 3-6, Ex. B. WCF offered, however, to obviate this need by simply stipulating to WCF's ability to pay. *Id.* at Ex. B. In response to that offer, however, Shrem's counsel identified a number of additional purported justifications for the subpoenas, representing that Shrem needs the requested information for the following reasons:

1. "to confirm all wires alleged in the complaint are accurate";
2. "to confirm which parties wired the money alleged";
3. "to confirm the source of  the funds of those wires in case it was on behalf of some other person or entity," and
4. "to establish the financial and cryptocurrency sophistication of WCF and Cameron and Tyler Winklevoss."

*Id.*

None of these evidentiary goals would be served by the discovery at issue. Disclosure of, for instance, the details of each and every transaction in Cameron and Tyler Winklevoss' personal accounts and each and every transaction in the accounts of entities wholly unrelated to this litigation will not help Shrem determine when and how WCF sent him the $750,000. In contrast, however, the requests for production that Shrem served in November included several

requests clearly tailored to securing evidence about the funds that WCF sent to Shrem, including

the following:

- "REQUEST FOR PRODUCTION NO. 1:  All DOCUMENTS which describe, mention, explain or support YOUR contention that '[b]etween September 2012 and February 2013, Plaintiff WCF entrusted Defendant Shrem with a total of $750,000 to purchase bitcoin . . . on its behalf,' as alleged in paragraph 1 of the Complaint";

- "REQUEST FOR PRODUCTION NO. 12:  All DOCUMENTS which describe explain, mention or support YOUR contention WCF acted in reliance on '[i]n reliance on [sic] Shrem's reputation as a Bitcoin expert . . . WCF sent Shrem a total of $750,000 between September 2012 and February 2013,' as alleged in paragraph 20 of the Complaint," and

- "REQUEST FOR PRODUCTION NO. 48:  All DOCUMENTS which reflect, mention, memorialize, track, record or relate to any funds or things of value YOUR provided or transferred to SHREM and/or BITINSTANT."

*See* Ferguson Decl., Ex. C. WCF has produced and is producing a wide range of documents

responsive to the above requests, *id.* ¶¶ 11, Ex. C, thereby rendering production pursuant to the

subpoenas at issue cumulative.

Shrem fares no better in connection with his purported need to "establish the financial

and cryptocurrency sophistication of WCF and Cameron and Tyler Winklevoss." At the same

time Shrem served notice of the subpoenas, he also served requests for production on WCF

requesting all documents reflecting cryptocurrency purchases by any of the Movants, including

WCF and Cameron and Tyler Winklevoss. *See* Ferguson Decl., Ex. D (Requests No. 1-7). There

is no question that these requests are far more narrowly tailored to securing evidence relevant to

the Shrem's stated discovery goal than the over-inclusive requests attached to the subpoenas.

(WCF has not yet responded to this second set of requests as the time for stating objections is

several weeks away.) Moreover, in addition to the document requests, Shrem has also noticed the

depositions of Cameron Winklevoss, Tyler Winklevoss and Matthew Gruchevsky, which will

give him further opportunities to investigate "WCF and the Winklevoss' financial and

cryptocurrency sophistication." Ferguson Decl. ¶ 10. It is telling that Shrem has *not* served

subpoenas on any virtual currency businesses. If he truly needed this discovery to determine

whether the Winklevoss brothers are sophisticated virtual currency investors, he surely would have subpoenaed virtual currency businesses before subpeonaing banks.

The decision on a motion to quash is "'entrusted to the sound discretion of the district court.'" *In re Fitch, Inc.*, 330 F.3d 104, 108 (2d Cir.2003) (quoting *United States v. Sanders*, 211 F.3d 711, 720 (2d Cir. 2000)). In ruling on such motions, a court may "weigh[] the relevance or probative value of the documents being sought against the privacy interests [the movant has] asserted," *Solow v. Conseco, Inc.*, 2008 WL 190340, at *4 (S.D.N.Y. Jan. 18, 2008), and also consider whether the requested information is available from a party. *See Carvel v. Franchise Store Realty Corp.*, 2011 WL 13269780, at *3 (S.D.N.Y. June 16, 2011) (Rakoff, J.) (noting that "Plaintiff has not demonstrated any need to burden non-parties with the production of such documents, as the same documents would presumably be in the possession, custody or control of the parties to this action."); *Burns v. Bank of Am.*, No. 03 CIV.1685 RMB JCF, 2007 WL 1589437, at *14 (S.D.N.Y. June 4, 2007).

In this case, the subpoenas that Shrem issued fail to support his stated discovery objectives. The requested information is almost entirely irrelevant and its disclosure it would invade the Movant's legitimate privacy interests; thus, if the Court "weigh[s] the relevance or probative value of the documents being sought against the privacy interests [the movant has] asserted," the balance tips decidedly against disclosure. *Solow v. Conseco, Inc.*, 2008 WL 190340, at *4 (S.D.N.Y. Jan. 18, 2008). Similarly, the fact that Shrem can — and in fact already has — requested the relevant portion of the evidence at issue directly from WCF, a party to the case, also weighs against enforcing these third-party subpoenas. *See Carvel v. Franchise Store Realty Corp.*, 2011 WL 13269780, at *3 (S.D.N.Y. June 16, 2011) (Rakoff, J.) (noting that "Plaintiff has not demonstrated any need to burden non-parties with the production of such documents, as the same documents would presumably be in the possession, custody or control of

11

the parties to this action."); *Burns v. Bank of Am.*, , 2007 WL 1589437, at *14 (S.D.N.Y. June 4, 2007).

Given all of these facts, it is clear that Shrem's subpoenas should not be enforced.

## IV.   CONCLUSION

For the foregoing reasons, Movants' Motion to Quash should be granted.

DATED: January 24, 2019                Respectfully submitted,


By:      */s/ Tyler Meade*

Tyler Meade
THE MEADE FIRM p.c.
12 Funston Ave., Suite A
San Francisco, CA 94129
Telephone: (415) 724-9600
tyler@meadefirm.com
*Attorney for Plaintiff and Movants*