UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WINKLEVOSS CAPITAL FUND, LLC, | Case No.  18-CV-8250 (JSR) |
| Plaintiff, | **AFFIDAVIT OF CAMERON WINKLEVOSS IN SUPPORT OF MOTION TO QUASH SUBPOENAS** |
| v. | |
| CHARLES SHREM, | |
| Defendant. | |

I, Cameron Winklevoss, hereby declare as follows:

1.      I am a principal of Winklevoss Capital Fund ("WCF"), a private investment firm that I founded in 2012 together with my twin brother Tyler Winklevoss. WCF is invested in a diverse portfolio, with an emphasis on technology startups and virtual currency.[1] It is an investment vehicle with business interests that extend far beyond investing in and holding bitcoin.[2] Except as to matters stated on information and belief, I have personal knowledge of the information referenced herein and could competently testify as to its truth if called to do so. As to matters stated on information and belief, I am informed and believe them to be true.

2.      Two of WCF's first investments in the virtual currency space involved Charleie Shrem, who my brother and I first met in 2012. Shrem was one of Bitcoin's earliest adopters and, from what he explained to us, saw himself as a kind of Bitcoin evangelist. He was a founding member of the Bitcoin Foundation and was well connected with many of the earliest Bitcoin

---

[1] Virtual currency (often called "cryptocurrency") is used throughout this document to refer to the entire ecosystem of virtual commodities and other asset types that are digital representations of value that function as a medium of exchange, a unit of account, and/or a store of value.

[2] By common convention, Bitcoin with a capital "B" typically refers to the Bitcoin Network as a whole, whereas bitcoin with a lowercase "b" refers to the virtual commodity of the Bitcoin Network. This naming convention is used throughout this document.

pioneers. Shrem was also the founder and CEO of BitInstant, LLC ("BitInstant"), a New York

company that was one of the first to provide services to facilitate the purchase of bitcoin by

consumers until it ceased operations on or before July 2013. Shrem was subsequently arrested

and plead guilty to felony money laundering charges for facilitating financial transactions with

known drug dealers. *USA v. Faiella, et al.*, S.D.N.Y. Case No. 14-CR-243, Dkt. No. 61 (Rakoff,

J.).

      3.     Between September 2012 and February 2013, WCF sent Shrem, via BitInstant,

$750,000 to purchase bitcoin on its behalf. As more fully detailed in WCF's ex parte application

for prejudgment attachment and accompanying declarations, Dkt. Nos. 24-29, Shrem could never

account for $61,000 of $250,000 sent to him between September and October 2012. At the time,

this $61,000 would have purchased approximately 5,000 bitcoin.

      4.     Since Shrem's arrest in January 2014, we have had no commercial dealings with

Shrem or BitInstant.

      5.     In addition to being principals of WCF, Tyler and I are also principals of several

WCF-affiliates, including Winklevoss Capital Management, LLC ("WCM"), the Winklevoss

Bitcoin Trust and Gemini Trust Company, LLC ("Gemini"). Shrem has served various

subpoenas seeking (1) financial records regarding these three non-party entities, (2) financial

records regarding WCF and (3) Tyler and my personal financial records. (Collectively, these

entities and individuals are referred to as "the Movants.") Specifically, Shrem has noticed WCF

that he intends to serve subpoenas on Silicon Valley Bank, Silvergate Bank, Chase Bank,

Metropolitan Bank Holding Corp., Signature Securities Group Corp., Deutsche Bank and WCF's

accountant Matthew Gruchevsky seeking "all documents related to any account held by,

registered to, or opened" by any of the Movants from 2012 to 2014, including "account

statements, and transaction records." It is unclear from the wording of the subpoena whether he seeks only records from 2012-2014, or if the documents requested concern all records of any account opened between 2012 and 2014, which would extend the responsive date of the subpoena until the present.

6.      These subpoenas request any and all account-related information for all of the Movants for at least a three-year period. This information presumably includes any communications between the Movants and the subpoenaed persons, including (i) any documentation involved in establishing the relationship, if that occurred during the requested timeframe, (ii) the balances of Movants' accounts before any of the events described in the Complaint occurred, and (iii) records of all payments into those accounts and debits from the accounts during the requested timeframe, thereby revealing the date, amount and counter-party for each of those transfers. Producing these records would reveal highly confidential commercial and proprietary information, such as the amount and timing of investments that WCF and Winklevoss Capital Management have made, as well as personally identifiable information ("PII") and financial information of Gemini customers.

7.      We first sent Shrem money to purchase bitcoin on behalf of WCF in September 2012. The last money we sent to Shrem to purchase bitcoin on behalf of WCF was in February 2013. All of the funds were sent by WCF to BitInstant, yet Shrem seeks documents (1) predating the first transfer of funds by nine months, (2) postdating the last transfer of funds by more than 20 months (or more, depending on how one reads the subpoena), and (3) documents of non-parties that are unrelated to this litigation.

8.      Only a small fraction of WCF's bank wires during the 2012 to 2014 period concerned Shrem or BitInstant.

9.      Two of the non-party entities (Gemini and the Winklevoss Bitcoin Trust) never had any commercial dealings with Shrem and are wholly irrelevant to the matters at issue in this litigation. In fact, neither was in existence at the time of Shrem's theft. Gemini was established in January 2014 as a cryptocurrency exchange, where customers can buy, sell, and store cryptocurrency, including bitcoin and ether. Gemini only began accepting customers and trades in October 2015.

10.     The Winklevoss Bitcoin Trust is a Delaware Trust that was formed in December 2014 to hold bitcoin on behalf of a proposed bitcoin exchange-traded fund ("ETF"). To be listed, the ETF required a rule change by the SEC. The ETF was first proposed on July 1, 2013, but the Trust was not actually formed until December 2014. The rule change that would have allowed the ETF was ultimately rejected by the SEC in March 2018. As the ETF never went live, the Winklevoss Bitcoin Trust never held any bitcoin or any other assets.

11.     WCM is a management organization that provides management services to several Winklevoss-affiliated businesses. WCM employees provide management services to WCF, in addition to other Winklevoss-affiliates such as Gemini.

12.     Matthew Gruchevsky is a CPA that WCF used to audit an accounting Shrem provided to WCF in February 2013. (Gruchevsky's analysis, which demonstrated Shrem's shortfall, is attached as Exhibit A to the Complaint and included with his affidavit in support of WCF's ex parte application for attachment. Dkt. No. 27.) Gruchevsky also provides general tax and accounting services for WCF, WCM, Tyler and myself, in addition to other affiliates. He has access to some of our most sensitive, proprietary, and highly confidential PII and financial information.

13.     Shrem's expansive document requests cover a wide swath of sensitive, proprietary, and highly confidential PII and financial information about our business dealings that are wholly irrelevant to this lawsuit. Shrem is seeking records related to non-parties who have nothing to do with Shrem's theft at issue in this case.

I declare under penalty of perjury under the laws of the United States and the State of New York that the foregoing is true and correct to the best of my knowledge.

Executed on January 24, 2019 in Verbier, Switzerland.

Cameron Winklevoss

-5-