UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

| | | |
|---|---|---|
| WINKLEVOSS CAPITAL FUND, LLC, | : | 18-cv-8250 (JSR) |
| Plaintiff, | : | |
| v. | | |
| | : | |
| CHARLES SHREM, | | |
| | : | |
| Defendant. | | |

-------------------------------------------------------x

**DEFENDANT CHARLES SHREM'S OPPOSTION TO MOTION TO QUASH**

BRIAN E. KLEIN
DONALD R. PEPPERMAN (*pro hac vice*)
BAKER MARQUART LLP
777 S. Figueroa Street, Suite 2850
Los Angeles, California 90017
Tel: (424) 652-7800
bklein@bakermarquart.com
dpepperman@bakermarquart.com

*Attorneys for Charlie Shrem*

**TABLE OF CONTENTS**

Introduction ...............................................................................................................................1

Argument....................................................................................................................................2

    I.   The Subpoenaed Documents Are Highly Relevant To Shrem's Defenses ...................3

    II.  WCF Lacks Standing to Object to the Third-Party Subpoenas .....................................5

    III. No Movant Has Asserted Any Valid Privacy Objections and Any Confidentiality
         Concerns Are Diffused By The Protective Order In Place ...........................................6

Conclusion..................................................................................................................................8

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abu-Nassar v. Elders Futures, Inc.*,
   No. 88 Civ. 7906 (PKL), 1991 WL 45062 (S.D.N.Y. Mar. 28, 1991) ............................. 4, 5

*Esso Exploration & Production Nigeria Ltd. v. Nigerian National Petroleum Corp.*, 14cv8445, 2017 WL 3491975 (S.D.N.Y. Aug. 15, 2017) ........................................ 5

*Langford v. Chrysler Motors Corp.*,
   513 F.2d 1121 (2d Cir. 1975) ................................................................................................ 6

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978) ............................................................................................................... 2

*In re Rule 45 Subpoena Issued to JP Morgan Chase Bank, N.A.*,
   319 F.R.D. 132 (S.D.N.Y. 2016) ............................................................................. 1, 2, 6, 7

*Universitas Education, LLC v. Nova Group, Inc.*,
   No. 11CV1590(LTS), 2013 WL 57892 (S.D.N.Y. Jan. 4, 2013) ........................................ 5

**Rules**

Fed.R.Civ.P. 26(b)(1) ........................................................................................................... 2

**Introduction**

The arguments Winklevoss Capital Fund, LLC advances in its motion to quash are meritless, and the motion should be denied. The information Charlie Shrem subpoenaed is not only incredibly relevant, it is essential to his defense, including his affirmative defenses of standing, failure to mitigate damages, speculative damages, lack of damage and laches.

As the Court is aware, WCF's claims revolve around Shrem purportedly failing to account for $61,000 of the $750,000 WCF allegedly sent him from September 2012 to February 2013 to buy bitcoins. All of WCF's claims are without merit, and to help defend himself and prove as much, Shrem subpoenaed WCF's accountant and six third-party financial institutions for account statements and transactions records during the relevant timeframe for WCF, its principals, and four entities owned and/or controlled by WCF's principals. The information subpoenaed is necessary to assist Shrem in verifying, among other things relevant to his defense, whether WCF actually wired the money it alleges and the ability of and extent to which WCF covered or attempted to cover the purported losses by purchasing replacement bitcoins.

WCF, Cameron Winklevoss, Tyler Winklevoss, Gemini Trust Company, LLC, Winklevoss Capital Management, LLC, and Winklevoss Bitcoin Trust (collectively, "Movants") have moved to quash the subpoenas, arguing that privacy concerns obviate Shrem's need for any of this critical information. But this Court has made clear: "sensitive financial information is generally discoverable in federal court." *In re Rule 45 Subpoena Issued to JP Morgan Chase Bank, N.A.*, 319 F.R.D. 132, 134 (S.D.N.Y. 2016) (quotations omitted). This is particularly true where, as here, the subpoenaed financial information is "plainly relevant" to Shrem's affirmative defenses. *See id.*

Moreover, as in *In re Rule 45*, any purported privacy concerns are more than assuaged and diffused by the confidentiality protective order already in place in this case. *See id.* Also none of the six third-party financial institutions nor the accountant has objected to any of the subpoenas.

It bears mentioning that WCF itself has subpoenaed 46 third parties, seeking financial information of Shrem, his wife, and all associated business entities up to the present. Shrem has not lodged a single objection against any of these very broad subpoenas. He has nothing to hide.

All of the Movants' objections to Shrem's subpoenas are without merit. The motion to quash should be denied.

## Argument

### I. The Subpoenaed Documents Are Highly Relevant To Shrem's Defenses

Generally, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed.R.Civ.P. 26(b)(1). Relevance under Rule 26 has been "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1).

The financial information Shrem has subpoenaed is highly relevant to his defense in this case, including his specific affirmative defenses of standing, failure to mitigate damages, speculative damages, lack of damage and laches. WCF alleges that it sent Shrem $750,000 in eight installments from September 2012 to February 2013, and that $61,000 is unaccounted

2

for. (Compl. ¶¶ 20-21, 35.) Shrem needs the requested documents to help confirm that all of WCF's alleged wires are accurate.

Shrem also needs the requested information to confirm which entities or individuals wired the money alleged. WCF claims it has standing to bring this case. (Compl. ¶¶ 2-6.) Shrem needs to verify the source of the funds of those wires in case the money was sent on behalf of another person or entity, and not WCF. The subpoenaed documents are necessary to assist with that effort.

In addition, Shrem needs to establish the financial / cryptocurrency sophistication of WCF and its principals, Cameron and Tyler Winklevoss. WCF alleges that it needed Shrem to buy bitcoin for it, and that it relied on Shrem's knowledge and expertise about bitcoins. (Compl. ¶¶ 1, 12-15.) Shrem needs the requested information to help show that WCF, its principals (the Winklevoss twins), and other entities owned by the Winklevoss twins were all buying bitcoin on the open market long before the Winklevoss brothers met Shrem, and/or long after they ceased doing business with him. This would help prove their financial / cryptocurrency sophistication and defeat WCF's claims, such as breach of fiduciary duty.

Finally, Shrem needs to establish whether WCF made any effort to cover the losses it alleges it has suffered. The issue goes directly to Shrem's affirmative defense that WCF could have mitigated its losses but failed to do so. Six years ago, in 2012-13, WCF claimed that $61,000 of its funds were not properly accounted for by Shrem in a demand, yet it sat back and took no legal action for years (this lawsuit was filed in September 2018). WCF has compounded, not mitigated, its damages, and the subpoenaed records will assist in proving as much.

By way of background, counsel for Shrem attempted to meet and confer with counsel for WCF about the reasons it requires the subpoenaed information before the Movants filed their motion to quash. (*See* Affidavit of Sam Ferguson ["Ferguson Aff."], Ex. B [January 23, 2019 email from Teresa Huggins to Sam Ferguson].) At that time, counsel for WCF did not want to engage in substantive discussions but instead wanted to call Chambers and move ahead with its motion to quash. (*Id*.) After the parties set a briefing schedule for the motion, counsel for Shrem sent counsel for WCF an email outlining its reasons for needing the requested financial information. (*Id*.) Counsel for WCF did not respond or question those reasons.

The Movants' argument that Shrem has sought or may seek the same information through other discovery, such as requests for production or depositions (Mot. at 10), is beside the point and wholly without merit.

First, the depositions the Movants reference have not yet even occurred. The Movants cannot possibly know what Shrem will ask or what information will be elicited.

Second, the Movants' bald, unsupported representation that WCF "has produced and is producing a wide range of documents responsive to the above requests" (Opp. at 10) is insufficient grounds to quash the subpoenas under the law. This is particularly so given that the Movants provide no Bates numbers or any other identifying information for any of the responsive documents they claim WCF has produced, nor do they claim that those records came from the subpoenaed third parties.

Regardless, the fact that Shrem has sought the same information in document requests or may ask about it in depositions does not preclude him from issuing third-party subpoenas seeking the same or similar information. *See Abu-Nassar v. Elders Futures, Inc*., 1991 WL

4

45062, at *18 (S.D.N.Y. Mar. 28, 1991) ("[t]he mere fact that a party chooses to conduct discovery in different forms does not prevent the discovery from going forward"). WCF cites no law to the contrary – nor can it. Shrem is entitled to seek the same information through multiple forms of discovery. *See id*.

## II.     WCF Lacks Standing to Object to the Third-Party Subpoenas

None of the subpoenaed parties themselves are objecting on any ground to the document subpoenas – only WCF and the other Movants (all Winklevoss-related entities) are doing so.

"Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought." *Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 14cv8445, 2017 WL 3491975, at *1 (S.D.N.Y. Aug. 15, 2017). Thus, a party cannot object to a third-party subpoena on the basis of relevancy or undue burden. *Universitas Educ., LLC v. Nova Group, Inc.*, No. 11CV1590(LTS), 2013 WL 57892, at *5 (S.D.N.Y. Jan. 4, 2013) ("[a] party lacks standing to challenge subpoenas issued to non-parties on the grounds of relevancy or undue burden").

Insofar as WCF seeks to quash the subpoenas on the basis of relevancy or any other grounds other than privilege (Opp. at 7-8), its request must be denied. Moreover, WCF has failed to identify any privileged document that might be in the possession of any of these third parties.

### III. No Movant Has Asserted Any Valid Privacy Objections and Any Confidentiality Concerns Are Diffused By the Protective Order In Place

The Movants fail to identify any legally-recognized privacy grounds for their objections, and, regardless, the protective order addresses any such purported concerns.

A party has no standing to move to quash a subpoena served on a third party except as to privilege claims relating to any documents being sought. *Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir. 1975) ("In the absence of a claim of privilege a party usually does not have standing to object to a subpoena directed to a non-party witness."). Moreover, Federal Rule of Civil Procedure 45(A)(ii) requires that a person asserting a claim of privilege or other recognized protection over subpoenaed documents "describe the nature of the withheld documents, communications or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim."

Neither WCF nor any of the other Movants describes the nature of any of the documents they seek to withhold from discovery, as required. Instead, the Movants make the speculative and overly broad claim that all of the account statements and transactions that Shrem has subpoenaed are subject to "privacy" protections. (Opp. at 7-8.) But, as this Court has pointed out, "sensitive financial information is generally discoverable in federal court." *In re Rule 45 Subpoena Issued To JP Morgan Chase Bank, N.A.*, 319 F.R.D. at 134 (quoting *Conopco, Inc. v. Wein*, No. 05-CV-9899, 2007 WL 2119507, at *2 (S.D.N.Y. July 23, 2007) ("[E]ven the confidentiality of personal financial matters must yield to the Federal Rules of Civil Procedure, which govern the discovery of information relevant to the claims and defenses in a federal court action.")).

Indeed, in *In re Rule 45 Subpoena*, this Court denied a motion to quash a subpoena for bank records where the records were "plainly relevant" to the "affirmative defenses of estoppel, unclean hands, and so forth." *Id*. at 134.  In that case, which involved evidence of collusion between a Trust and an Estate, this Court allowed the requested bank records to be subpoenaed because they "may show further payments or signs of collusion." *Id*.

Here, the account records and transactions sought are plainly relevant to Shrem's affirmative defenses that: (1) he did not misappropriate the money WCF alleges it wired; (2) WCF has no standing to bring its claims; (3) WCF and its principals were sophisticated parties that did not need Shrem to purchase bitcoins; and (4) WCF could have, but did not, mitigate any alleged damages.  As in *In re Rule 45 Subpoena*, even assuming "[plaintiff's] privacy concerns are legitimate, they do not outweigh the probative value of the bank records." *Id*. at 135.  This is particularly true, given that every request in every third party subpoena is narrowly tailored to the timeframe at issue in the complaint, only seeking account statements and transactions from 2012-2014.  (*See* Ferguson Aff., Ex. A.)

Finally, as in *In re 45 Supboena*, "any remaining privacy concerns can be substantially addressed through a confidentiality order." *Id*. (citing *Snider v. Lugli*, No. 10-cv-4026, 2011 WL 5401860, at *5 (E.D.N.Y. Nov. 4, 2011); *Brassco, Inc. v. Kilpo*, No. 99-cv-3014, 2004 WL 1385816, at *3 (S.D.N.Y. June 21, 2004)).  And in this case, they have been so addressed.

On December 3, 2018, this Court approved a protective order, stipulated to by both parties.  (Dkt. 71.)  The protective order WCF agreed to provides that any person subject to the order who receives discovery material from any other person that is designated "Confidential" pursuant to the terms of the Order shall not disclose such Confidential

7

Discovery Material to anyone else other than individuals specified in the order.  (*Id*.)  The protective order was signed by counsel for both parties on November 30, 2018 (*id*.), and put into place to assuage the exact privacy concerns that the Movants raise here.

## Conclusion

Based on the foregoing, the motion to quash should be denied in its entirety and that the third parties should be permitted to produce the responsive documents by the preexisting deadlines.

Dated: January 29, 2019                    Respectfully Submitted,

/s/ Brian E. Klein

Brian E. Klein
Donald R. Pepperman (*pro hac vice*)
Baker Marquart LLP
777 S. Figueroa St., Suite 2850
Los Angeles, California 90017
Tel.: (424) 652-7800/Fax: (424) 652-7850
E-mail: bklein@bakermarquart.com
E-mail: dpepperman@bakermarquart.com