UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
WINKLEVOSS CAPITAL FUND, LLC,         :
                                      :
       Plaintiff,                     :
                                      :     18-cv-8250(JSR)
       -v-                            :
                                      :     MEMORANDUM ORDER
CHARLES SHREM                         :
                                      :
                                      :
       Defendant.                     :
------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/7/19

JED S. RAKOFF, U.S.D.J.

On October 2, 2018, the Court granted the ex parte motion of plaintiff Winklevaus Capital Fund, LLC ("WCF") for pre-judgment attachment of assets belonging to defendant Charles Shrem. Dkt. 30. On November 8, 2018, after receiving full briefing and oral argument from both sides, the Court denied WCF's motion to confirm the order of attachment and lifted the attachment already in place. Dkt. 52. Now before the Court is Shrem's motion pursuant to Rule 6212(e) of the New York Civil Practice Law and Rules (N.Y. C.P.L.R.) for attorneys' fees and costs that he incurred in opposing WCF's motion for confirmation of the attachment.

For the reasons stated below, Shrem will be awarded attorneys' fees in the amount of $44,986.80, and costs in the amount of $1,053.

1

I. **Entitlement to Attorneys' Fees and Costs**

Rule 6212(e) provides as follows:

> The plaintiff shall be liable to the defendant for all costs and damages, including reasonable attorney's fees, which may be sustained by reason of the attachment if the defendant recovers judgment, or if it is finally decided that the plaintiff was not entitled to an attachment of the defendant's property. Plaintiff's liability shall not be limited by the amount of the undertaking.

N.Y. C.P.L.R. § 6212(e). "This subdivision was added in 1977 to make the attaching plaintiff strictly liable for all damages occasioned by a wrongful attachment." Roth v. Pritikin, 787 F.2d 54, 59 (2d Cir. 1986) (citing commentary to Rule 6212(e)); see also Merck & Co. v. Technoquimicas S.A., No. 01-cv-5345(NRB), 2001 WL 963977, at *3 (S.D.N.Y. Aug. 22, 2001) (noting that "it is significant that § 6212(e) is not worded in the conditional; it states that fees 'shall' be awarded to a defendant whose assets were wrongfully attached"); Bank of N.Y. v. Nickel, 14 A.D.3d 140, 149 (N.Y. 1st Dep't 2004) ("Rule 6212(e) requires the court to award damages, including attorneys' fees, without a showing of fault, for wrongful attachment."). In other words, "New York law requires an award of fees by virtue of the fact that the attachment was vacated as unwarranted." Merck, 2001 WL 963977, at *3.

WCF argues that, despite the fact that attachment was granted and then vacated as unwarranted, Rule 6212(e) does not require an award of fees here. WCF first contends that an award

2

of fees is not merited as Shrem was "not a prevailing party on attachment." Plaintiff Winklevoss Capital Fund, LLC's Opposition to Defendant's Motion for Attorneys' Fees and Costs ("Opp."), Dkt. 83, at 2-3. WCF relies on case law interpreting private parties' fee agreements and statutory fee provisions other than Rule 6212(e) for this argument since the language of "prevailing parties" is nowhere to be found in Rule 6212(e), which conditions a fee award solely on an attachment and a subsequent vacatur.[1]

Even assuming, contrary to the plain language of Rule 6212(e), that an additional "prevailing party" element must be shown, Shrem has clearly made such a showing here, since, as a result of his submissions, WCF's motion was denied and the attachment vacated. Yet WCF argues that it too "prevailed" because, at the oral argument on the motion to confirm attachment, Shrem's counsel offered to put $61,000 into an escrow account pending judgment in this matter and the Court ordered Shrem to do so, clarifying that the order was

---

[1] WCF primarily relies on a case discussing the proper interpretation of an attorneys' fees provision in a divorced couple's separation agreement, which provided that the defaulting party would be responsible for the other party's attorneys' fees. See D.S.C. v. P.C., 68 N.Y.S.3d 378 (N.Y. Sup. Ct. 2017). The cases cited in the D.S.C. decision concern similarly unrelated fee provisions, such as landlord-tenant laws entitling non-breaching parties to attorneys' fees. See, e.g., Graham Ct. Owner's Corp. v. Taylor, 24 N.Y.3d 742 (2015); Nestor v. McDowell, 81 N.Y.2d 410, 415-416 (1993).

"independent of where [the Court] come[s] out on the attachment." See Hearing Transcript dated November 8, 2018, at 19:15-20. As WCF had only managed to attach assets of a de minimis value before the attachment was vacated, WCF takes the position that it "partially prevailed" on the issue of attachment as it attained more financial security after the attachment order was vacated than while it was in effect. Opp. at 3-4. It may be the case that WCF found itself in a better financial position immediately after the hearing than immediately before,[2] however, it is irrelevant as the controlling fact is that attachment was granted and then vacated. The funds in escrow are unrelated to the attachment issue, as the Court stated; moreover, New York courts have explicitly distinguished between funds placed in escrow and funds subjected to an order of attachment.[3] Accordingly, the Court finds no merit to WCF's argument that it "partially prevailed."

---

[2] The Court is dubious as to WCF's characterization of its comparative position before and after the vacatur; while WCF had only been able to attach a small sum of assets prior to the vacatur, had the attachment order been confirmed rather than vacated, WCF would have been free to continue to pursue successful attachment of assets to the tune of 5,000 bitcoin – which WCF alleges were worth $31,362,500 at the time the complaint was filed, see Compl. ¶ 3 - rather than the mere $61,000 in escrow it found itself with after vacatur.

[3] In Salamanca Trust Co. v. McHugh, 156 A.D.2d 1007, 1007-08 (N.Y. 4th Dep't 1989), the court dismissed the defendant's counterclaim of wrongful attachment where the defendant placed assets in escrow pending the resolution of a lawsuit after a

4

Next, WCF argues that fees should not be awarded as "Shrem suffered no actual attachment to speak of" as WCF only succeeded in attaching a "de minimis" amount of assets (less than $5) prior to the vacatur. Opp. at 4. However, Rule 6212(e) is clear: plaintiff is liable "for all costs and damages, including reasonable attorneys' fees" where plaintiff is granted an attachment and later found unentitled to that attachment. Of course, as WCF points out, a defendant is not entitled to fees where no order of attachment was ever granted. See Augsbury v. Adams, 108 A.D.2d 978, 979 (N.Y. 3d Dep't 1985) ("The attachment having been denied, it was proper...to deny sanctions."); Salamanca, 156 A.D.2d at 1008 (no right to fees where attachment order never signed or entered). But this is irrelevant here as the Court did grant an order of attachment, which was in effect for over a month before being vacated.

WCF directs the Court to Kidder, Peabody & Co., Inc. v. IAG Int'l Acceptance Group, NV, 28 F.Supp.2d 126 (S.D.N.Y 1998), in which a court in this district found that, while there were "few cases addressing the issue," "it is appropriate to limit the reach of that strict liability [under § 6212(e)] to cases where

---

request for attachment was granted orally but an order of attachment was never signed or actually entered. The court held that "[t]he mere fact that property has been subjected to some form of restraint does not serve as a basis for the statutory claim of wrongful attachment."

5

property is actually attached" and denied a motion for fees on the grounds that no property had been attached successfully. While Kidder is not binding on this Court and may have been wrongly decided, for present purposes it is irrelevant. The facts in Kidder were unusual. The plaintiff had obtained an ex parte order of attachment, but it was vacated on the consent of the parties before plaintiff ever actually encumbered any property. See id. at 146. These facts distinguish Kidder from the present case, where property was in fact attached. Kidder says nothing about "de minimis" attachment; it draws a bright-line between an attachment and a failure to attach. See id. at 146 (reasoning that 6212(e) "appears to encompass only actual attachment of property - not the preliminary steps in the process.").

In addition to finding no support for WCF's de minimis attachment argument in the case law,[4] the Court considers this

---

[4] The other cases cited by WCF similarly fail to support its argument. See AdiPar Ltd. v. PLD Int'l Corp., No. 01-cv-7685(MBM), 2002 WL 31740622, at *14 (S.D.N.Y. Dec. 6, 2002) (finding that plaintiff could bring an unlawful attachment action as failure of garnishees to surrender attached property does "not conclusively establish that [plaintiff] was not deprived of the use of its property"); Globex Int'l Inc. v. Commercial Bank of Namibia Ltd., No. 99-cv-4789(JSM), 1999 WL 1211827, at *1 (S.D.N.Y. Dec. 17, 1999) (no entitlement to Rule 6212(e) damages where the court granted a temporary restraining order and not an order of attachment); Shu Yiu Louie v. David & Chiu Place Restaurant, Inc., 689 N.Y.S.2d 476, 478 (N.Y. 1st Dep't 1999) (no entitlement to Rule 6212(e) damages where motion for attachment denied); Provisional Protective Committee v.

6

argument inconsistent with the policy rationales behind 6212(e). Attachment is "an extraordinary process, often causing great damages, and is designed, ordinarily, for the purpose of being used sparingly only." A. C. Israel Commodity Co. v. Banco Do Brasil, S.A., 50 Misc. 2d 362, 365 (N.Y. Sup. Ct. 1966); see also Provisional, 121 A.D.2d at 273 (attachment is an "extraordinary remedy"). Accordingly, the legislature has structured the statutory scheme governing attachments to encourage appropriately sparing use of ex parte attachment, both by providing an alternative means of securing property (through a temporary restraining order issued pursuant to C.P.L.R. § 6210)[5] and by shifting the costs of an improper attachment to the plaintiff through Rule 6212(e). Rule 6212(e) explicitly includes attorneys' fees as part of these costs on the understanding that attorneys' fees incurred attempting to remove an attachment are damages resulting from that attachment. Here, while plaintiff failed to attach anywhere near the amount of property that it hoped to with the ex parte attachment order, it did receive such an order, pursue attachment for over a month, successfully

---

Williams, 121 A.D.2d 271, 273(N.Y. 1st Dept. 1986) (no entitlement to Rule 6212(e) damages where the court granted a temporary restraining order and not an order of attachment).
[5] The temporary restraining order procedure was added to the C.P.L.R. in an effort "to encourage plaintiffs to make the motion for attachment on notice rather than invariably resort to the ex parte method." See C.P.L.R. § 6210, Practice Commentaries.

7

attach some amount of property, and force the defendant to incur legal costs in seeking to vacate the attachment. This is exactly the kind of endeavor that Rule 6212(e) seeks to deter where there is no valid legal basis for attachment.

Finally, WCF argues that fees should be denied as the attachment was vacated for a "technical" rather than a "substantive" reason. Opp. at 6. This is incorrect. As the Court clearly stated in its memorandum explaining the denial of the motion to confirm attachment, it denied the motion because WCF "failed to meet its burden to establish that either of the[] [claimed] grounds for attachment applies." See Memorandum dated November 15, 2018, Dkt. 59, at 3. It is difficult to imagine a more substantive reason for vacatur. WCF argues, despite this explanation, that the vacatur was "technical" because Shrem's offer to place $61,000 in escrow "obviated the need for attachment." Opp. at 6-7. As discussed above, $61,000 in escrow hardly substitutes for the attachment of $31,362,500 worth of bitcoin sought by WCF.

Accordingly, the Court finds that Shrem is entitled to attorneys' fees and costs pursuant to Rule 6212(e).

## II. Amount of Attorneys' Fees and Costs

When granting fee awards, district courts are given "broad discretion" in determining what is reasonable under the circumstances. Luciano v. Olsten Corp., 109 F.3d 111, 115 (2d

Cir. 1997). See also Cmty. Tv Sys. v. Caruso, 284 F.3d 430, 437 (2d Cir. 2002) (appellate review "of an award of attorneys' fees is highly deferential to the district court"). "In determining reasonable attorney's fees, the district court must calculate a 'lodestar' figure based upon the number of hours reasonably expended by counsel on the litigation multiplied by a reasonable hourly rate." Luciano, 109 F.3d at 115. "[C]ourts have endorsed percentage cuts as a practical means of trimming fat from a fee application." S.E.C. v. Byers, 590 F. Supp. 2d 637, 648 (S.D.N.Y. 2008).

Shrem has requested $76,156 in attorneys' fees and $1,053 in costs for his opposition to the motion to confirm attachment. See Defendant Charles Shrem's Motion for Attorneys' Fees and Costs Pursuant to N.Y. C.P.L.R. §§ 6212(b), (e) ("Mem."), Dkt. 80, at 4. WCF does not object to the costs claimed but argues that Shrem's fee request includes excessive hours and rates. See Opp. at 7.

In determining reasonable hourly rates, the Court considers "the range of rates that plaintiff's counsel actually charge their clients," Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 543 (S.D.N.Y. 2008), and whether those rates are "in line with those rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation," Luciano, 109 F.3d at 115. Shrem's counsel

9

represents that the hourly rates charged to Shrem represent a 10% discount on their normal billed rates. Affidavit of Donald R. Pepperman in Support of Defendant Charles Shrem's Motion for Attorneys' Fees and Costs ("Pepperman Aff."), Dkt. 81, ¶ 11. The majority of the rates they charged ($580 for a partner, $445 for a senior associate, and $265 for an associate) are clearly within the bounds of what has been approved by courts in this district. See, e.g., H.B. Automotive Group, Inc. v. Kia Motors America, Inc., No. 13-cv-4441(VEC)(DF), 2018 WL 4017698, at *6, *8 (S.D.N.Y. July 25, 2018) (summarizing cases approving hourly rates in commercial matters ranging from $500 to $700 per hour for partners and $300 per hour for junior associates). The $850 per hour rate charged for Mr. Klein is on the high end of those approved by courts, but is not clearly out of bounds and the Court further notes that it appears Klein's time was properly allocated to tasks requiring a senior partner's attention. See, e.g., In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig., 2007 WL 313474, at *22 (S.D.N.Y. Feb. 1, 2007) (finding a rate of $850 per hour for a partner "high" but "not inordinate"). The $265 per hour rate charged for paralegal work, however, is clearly above the ordinary rate in this district, even for paralegals such as Ms. Isomoto with extensive experience. See H.B. Automotive, 2018 WL 4017698 at *9 (collecting cases reducing paralegal rates to $200).

Accordingly, the Court finds a reduction in Isomoto's rate to $200 per hour appropriate. This adjustment changes the total lodestar requested to $74,978.

Turning to the hours billed on this matter, the Court notes as a preliminary matter that Rule 6212(e) authorizes the award of only those attorneys' fees that are "the natural and proximate consequence of the wrongful attachment." A.C. Israel, 270 N.Y.S.2d at 286. A determination that an attachment is unwarranted is not a determination on the merits of the underlying action, and does not entitle a party to its attorneys' fees in its conduct of the case as a whole, but only to those fees incurred as a direct result of the wrongful attachment.

However, Shrem's fee request fails to isolate those tasks specific to the order of attachment and instead includes a number of hours more properly allocated to the general conduct of the case. For instance, the billing records submitted to the Court include time spent pursuing unsealing of the case and working with plaintiff's counsel to create a joint discovery plan. These activities are largely or wholly unrelated to the issue of attachment.

The billing records also include time spent checking the docket, reading the complaint, and reviewing the Court's rules. Shrem argues that this time is appropriately included as "[n]o

11

reasonable or prudent attorney would undertake to oppose an attachment motion without first reviewing the operative complaint...". Opp. at 10-11. This is, of course, true. However, in the Court's view, a reasonable defense attorney must always review the complaint in the case, regardless of whether or not there is an order of attachment at issue. This is a cost of litigation, not a cost incurred by an improper attachment of assets. The same holds true for activities such as checking the docket and reviewing the Court's rules.

The billing records also include a number of entries for client calls and strategy meetings of unspecified subject matter. It is doubtful that the sole focus of these meetings and calls was the order of attachment, particularly as the time period concerned covers Shrem's initial retention of counsel and their preliminary investigation and development of their case as a whole, which would have to be undertaken regardless of any order of attachment. Similarly, the time billed to investigation of WCF's allegations in the complaint concerning the transfer of 5,000 bitcoin, while relevant to Shrem's argument on attachment and, accordingly, properly included in this fee request in part, was an expense that Shrem would have surely undertaken in any circumstances as part of his defense on the merits and should not be included in full in this fee request.

Without multiplying examples, the Court finds that the claimed fees should be reduced by 40%. Accordingly, the Court finds a fee award of $44,986.80 appropriate, which represents 60% of Shrem's adjusted lodestar request. The Court finds such a reduction warranted given the inclusion of litigation activities not properly attributable to the attachment order in the fee request. The Court finds Shrem's request for costs reasonable.

In sum, Shrem is hereby awarded attorneys' fees in the amount of $44,986.80 and costs in the amount of $1,053. Plaintiff is directed to make payment of the amounts to them by no later than February 19, 2019. The Clerk is instructed to close docket number 80.

SO ORDERED

Dated:   New York, NY

        February 6, 2019        JED S. RAKOFF, U.S.D.J.