**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WINKLEVOSS CAPITAL FUND, LLC, | Case No. 18-cv-8250 (JSR) |
| Plaintiff, | |
| v. | **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH DEPOSITION OF TYLER MEADE** |
| CHARLES SHREM, | |
| Defendant. | |

1

**TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................................... 5

II.  ARGUMENT ............................................................................................................... 6

  A.   THE FACTORS GOVERNING DEPOSITIONS OF OPPOSING COUNSEL MANDATE QUASHING
  THE DEPOSITION SUBPOENA DIRECTED TO MR. MEADE ................................................. 6
    1.   Deposing Mr. Meade Is Unnecessary ................................................................. 8
    2.   Meade Is the Lead Trial Attorney on This Case ................................................ 12
    3.   Deposing Meade Raises a Strong Risk of Encountering Privilege and Work-Product
    Issues ....................................................................................................................... 13
    4.   The Extent of Discovery To Date Supports Quashing This Subpoena ............... 15
    5.   No Exceptional Circumstances Exist Here ......................................................... 15
  B.   THE SUBPOENA SHOULD BE QUASHED ON INDEPENDENT GROUNDS OF IRRELEVANCE,
  UNDUE BURDEN, AND PRIVILEGE ................................................................................. 16
    1.   The Subpoena Seeks Irrelevant Information ...................................................... 16
    2.   The Subpoena Places an Undue Burden on Mr. Meade ..................................... 18
    3.   The Subpoena Requires Delving into Privileged Information ............................ 19
  C.   THIS COURT SHOULD REJECT THE PROPOSED DEPOSITION AS THINLY VEILED
  HARRASSMENT ........................................................................................................... 19

III. CONCLUSION ......................................................................................................... 20

# TABLE OF AUTHORITIES

### CASES

*Board of Education v. Farmingdale Classroom Teachers Ass'n*, 38 N.Y.2d 397, 403 (1975).... 19

*Burns v. Bank of Am.*, No. 03 CIV.1685 RMB JCF, 2007 WL 1589437, at *14 (S.D.N.Y. June 4, 2007) .................................................................................................................................. 10

*Calvin Klein Trademark Tr. v. Wachner*, 124 F. Supp. 2d 207, 211 (S.D.N.Y. 2000) ............... 15

*Caro v. Weintraub*, 2011 WL 13233934, at *5 (D. Conn. Mar. 4, 2011) ..................................... 6

*Caro*, 2011 WL 13233934, at *5.................................................................................................. 12

*Carvel v. Franchise Store Realty Corp.*, 2011 WL 13269780, at *3 (S.D.N.Y. June 16, 2011).... 9

*Dominion Res. Servs., Inc. v. Alstom Power, Inc.*, 2017 WL 3228120, at *4 (D. Conn. July 31, 2017) ............................................................................................................................... 7, 12

*Ferrari v. Cty. of Suffolk*, No. CV104218JSGRB, 2012 WL 13109925, at *2 (E.D.N.Y. Mar. 28, 2012) .................................................................................................................................... 7

*Ginsberg v. Ginsberg*, 84 A.D.2d 573, 574 (2d Dep't 1981) ...................................................... 19

*Hickman v. Taylor*, 329 U.S. 495, 516 (1947) ........................................................................... 10

*Hughes v. Twenty-First Century Fox, Inc.*, 327 F.R.D. 55, 57 (S.D.N.Y. 2018)........................ 17

*In re Chevron Corp*, 749 F.Supp.2d 141, 164-67 (S.D.N.Y.)..................................................... 14

*In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 72 (2d Cir. 2003)................6, 9, 13, 14

*In re Subpoena Issued to Friedman*, 286 B.R. 505, 507 (S.D.N.Y. 2002) .................................. 17

*Lago Agrio Plaintiffs v. Chevron Corp.*, 409 F. App'x 393, 395 (2d Cir. 2010)........................ 14

*Madanes v. Madanes*, 199 F.R.D. 135, 151 (S.D.N.Y. 2001) ...................................................... 6

*Mandell v. The Maxon Co., Inc.*, No. 06cv460 (RWS), 2007 WL 302252, at *1 (S.D.N.Y. Oct. 16, 2007) ............................................................................................................................. 15

*Montana Res., Inc. v. ASARCO LLC*, No. 18-MC-434(AJN), 2019 WL 130579, at *1 (S.D.N.Y. Jan. 8, 2019) ....................................................................................................................... 15

*Nakash v. U.S. Dep't of Justice*, 128 F.R.D. 32, 35 (S.D.N.Y. 1989)......................................... 15

*New York Indep. Contractors All., Inc. v. Highway, Rd. & St. Const. Laborers Local Union 1010 of Dist. Council of Pavers & Rd. Builders of Laborer's Int'l Union of N. Am.*, 2008 WL 5068870, at *7 (E.D.N.Y. Nov. 24, 2008) ..............................................................6, 12, 13, 14

*Resqnet.Com, Inc. v. Lansa, Inc.*, No. 01 CIV.3578(RWS), 2004 WL 1627170, at *6 (S.D.N.Y. July 21, 2004) ....................................................................................................................... 6

*Saint-Jean v. Emigrant Mortg. Co.*, 2015 WL 13735434, at *5–6 (S.D.N.Y. 2015).................. 19

*Schaeffler v. United States*, 806 F.3d 34, 43 (2d Cir. 2015) ...................................................... 13

*Sea Tow Int'l, Inc. v. Pontin*, 246 F.R.D. 421, 427-28 (E.D.N.Y. 2007) ................................... 18

*Stauber v. City of New York*, 2004 WL 1013342 (S.D.N.Y. 2004)............................................... 7

*U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 2000 WL 1253262, at *2 (S.D.N.Y. Sept. 1, 2000) .................................................................................................................................... 12

*United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998)................................................... 13

*United States v. Mejia*, 655 F.3d 126, 132 (2d Circ. 2011) ...................................................... 13

*United States v. Yonkers Bd. Of Educ.*, 946 F.2d 180, 185 (2d Cir. 1991).................................. 5

*Yash Raj Films (USA) v. Kumar*, No. 05-CV-3811, 2007 WL 3124557, at *4 (E.D.N.Y. Oct. 25, 2007) .................................................................................................................................... 6

<u>STATUTES</u>

Fed. R. Civ. Pro. 26(b)(1) .................................................................................... 5, 16
Fed. R. Civ. Pro. 26(b)(2)(C) .................................................................................. 5
Fed. R. Civ. Pro. 45 ................................................................................................ 5
Fed. R. Civ. Pro. 45(d)(1) ...................................................................................... 18
Fed. R. Civ. Pro. 45(d)(3)(A)(iii) .................................................................... 5, 13, 18
Fed. R. Civ. Pro. 45(d)(3)(A)(iv) ........................................................................ 5, 17

<u>TREATISES</u>

Practice Commentary, Rule 45 ............................................................................... 17

## I.      INTRODUCTION

Tyler Meade ("Meade"), counsel to Plaintiff Winklevoss Capital Fund ("WCF"), brings this motion to quash a harassing Rule 45 deposition subpoena that Defendant Charlie Shrem ("Shrem") served on him by email on Friday, March 15, 2019, with a return date of Monday, April 8. *See* Affidavit of Tyler Meade in Support of Motion to Quash Deposition of Tyler Meade ("Meade Decl.), ¶ 2, Ex. A. The subpoena violates Second Circuit case law strongly disfavoring depositions of opposing counsel; seeks to cover a range of topics that are mostly irrelevant and, where relevant, are cumulative or privileged; and places an undue burden on Mr. Meade. Mr. Shrem and his attorneys cannot articulate a legitimate basis for dragging Mr. Meade into a deposition.

As discovery continues to uncover evidence of Mr. Shrem's theft of 5,000 bitcoin from WCF, Mr. Shrem has pivoted to obstructionist tactics, such as issuing five subpoenas targeting his opposing counsel, Mr. Meade, as well as The Meade Firm. One of these subpoenas, the focus of this motion, demands that Mr. Meade appear for a deposition. While the four document subpoenas were harassing, Mr. Meade did not seek a motion to quash as they were largely irrelevant and cumulative. The deposition subpoena, however, crosses the line and must be quashed.

Since receiving the deposition subpoena, Mr. Meade has made numerous efforts to understand Mr. Shrem's purported basis for invoking the highly-disfavored tactic of issuing a deposition subpoena to opposing counsel. On March 21, 2019, Mr. Shrem's counsel Donald Pepperman responded in vague terms that a deposition of Mr. Meade is necessary because Mr. Meade is "an essential percipient fact witness as to various significant facts that either serve to prove or disprove various claims and defenses asserted in this civil litigation." Meade Decl., Ex.

C. Mr. Pepperman attached to his email "an outline of the most significant topics." *Id.* This list focuses on, without any temporal limits, communications with accounting and investigative firms that Cameron and Tyler Winklevoss have used over the years and on Mr. Meade's purported communications with Mr. Shrem himself. This response was wholly insufficient. After the parties could not resolve the matter, the Court on March 29 granted Mr. Meade permission to file this motion and gave Mr. Shrem five court days to respond, and Mr. Shrem's counsel agreed to remove Mr. Meade's deposition from the calendar pending the outcome.[1]

## II.     ARGUMENT

The deposition subpoena directed to Mr. Meade must be quashed. First, deposing outside counsel is a "highly disfavored" practice in this Circuit, *United States v. Yonkers Bd. Of Educ.*, 946 F.2d 180, 185 (2d Cir. 1991), and Mr. Shrem cannot satisfy any of the factors that would weigh in favor of permitting such a highly-disfavored discovery tactic. Additionally, the Rule 26(b)(2)(C) and 45 protections weigh in favor of quashing the subpoena: Much of the information sought is irrelevant to Mr. Shrem's or WCF's claims and defenses and the requested deposition is disproportionate to the case's needs. *See* Fed. R. Civ. Pro. 26(b)(1). The deposition additionally would impose an undue burden on Mr. Meade, *see* Fed. R. Civ. Pro. 45(d)(3)(A)(iv), a conclusion only strengthened by Mr. Meade's status as opposing counsel and a third party. Finally, deposing Mr. Meade about the proposed topics of inquiry would require him to disclose matters covered by the attorney client and work product privilege, again mandating that this Court quash the subpoena. *See id.* 45(d)(3)(A)(iii). The true aim of this deposition subpoena is not to obtain relevant information but to harass opposing counsel.

### A.     The Factors Governing Depositions of Opposing Counsel Mandate Quashing

---

[1] Mr. Meade has not moved for a protective order or for a motion to stay along with this motion because of that agreement.

**the Deposition Subpoena Directed to Mr. Meade**

Depositions of counsel are disfavored because they risk disrupting the attorney-client relationship and the litigation. *See Yash Raj Films (USA) v. Kumar*, No. 05-CV-3811, 2007 WL 3124557, at *4 (E.D.N.Y. Oct. 25, 2007); *Madanes v. Madanes*, 199 F.R.D. 135, 151 (S.D.N.Y. 2001). The Second Circuit requires a thoughtful consideration of several factors before permitting this extraordinary measure. These factors include:

> the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already being conducted.

*In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 72 (2d Cir. 2003).[2] Courts subject deposition subpoenas targeting attorneys to special scrutiny if they reek of bad faith, harassment, or efforts to create grounds for disqualification.

Mr. Shrem does not come close to satisfying the conditions articulated in *In re Friedman* for when deposition of opposing counsel could proceed. Instead, "all of the relevant facts and circumstances" demonstrate that the "proposed deposition would entail an inappropriate burden or hardship" on Mr. Meade. *Id.* at 72. *See also, e.g.*, *Caro v. Weintraub*, 2011 WL 13233934, at *5 (D. Conn. Mar. 4, 2011) ("All of the *Friedman* factors suggest that the subpoenas issued to Defendants' counsel should be quashed."); *New York Indep. Contractors All., Inc. v. Highway, Rd. & St. Const. Laborers Local Union 1010 of Dist. Council of Pavers & Rd. Builders of Laborer's Int'l Union of N. Am.*, 2008 WL 5068870, at *7 (E.D.N.Y. Nov. 24, 2008) (concluding that the party failed to connect its reasons for deposing the attorney "to an issue that is in dispute

---

[2] While Judge, now Justice, Sotomayor laid out these factors in a non-binding discussion in *In re Friedman*, many subsequent decisions in the Circuit have affirmed this approach, a more flexible one than in some other circuits.

in this litigation"); *Resqnet.Com, Inc. v. Lansa, Inc.*, No. 01 CIV.3578(RWS), 2004 WL

1627170, at *6 (S.D.N.Y. July 21, 2004) (similar).

     1.     **Deposing Mr. Meade Is Unnecessary**

     The first *In re Friedman* question is whether deposing Mr. Meade is necessary to the

case. The answer here is a resounding no. *See, e.g.*, *Ferrari v. Cty. of Suffolk*, No.

CV104218JSGRB, 2012 WL 13109925, at *2 (E.D.N.Y. Mar. 28, 2012) (quashing the subpoena

on an attorney for, primarily, failure to show that the subpoenaed attorney was the "only source

for this information" sought); *Stauber v. City of New York*, 2004 WL 1013342 (S.D.N.Y. 2004)

(holding that the defendant could not show the requisite need for deposing opposing counsel);

*Dominion Res. Servs., Inc. v. Alstom Power, Inc.*, 2017 WL 3228120, at *4 (D. Conn. July 31,

2017) (similar).

     Mr. Pepperman's purported need for deposing Mr. Meade is imprecise. It is a laundry list

of eleven proposed topics on which Mr. Meade was ostensibly a "percipient fact witness," and

almost all of these topics have already been thoroughly explored in discovery so far. These

include communications with Richard Paukner (WCF's accountant) and the nature and scope of

work Mr. Paukner conducted concerning the subject matter of the lawsuit and claims;

communications with Matthew Gruchevsky (WCF's accountant) and the nature and scope of

work he conducted concerning the subject matter of the lawsuit and claims; communications

with Elliptic (WCF's bitcoin forensic investigator) and the nature and scope of work Elliptic

conducted concerning the subject matter of the lawsuit and claims; all communications Mr.

Meade has had with Mr. Shrem; contents of, sources of information and claims made in, and

authentication of Mr. Meade's July 23, 2013 letter to Mr. Shrem; and Mr. Shrem's response, if

any, to Mr. Meade's letter. Meade Decl., Ex. C. Mr. Pepperman's explanation for demanding a

deposition of Mr. Meade on all of these topics was that Mr. Meade has "specific and personal knowledge with respect to the listed topics and [he is] identified as the sender and author of [the] July 23, 2013 letter to Mr. Shrem." Meade Decl., Ex. C.

But Mr. Shrem can obtain information about each of these "listed topics" from other sources. Indeed, he has already deposed four other witnesses about many of these areas of inquiry, including WCF's principals Cameron and Tyler Winklevoss, and WCF's accountants Matthew Gruchevsky and Scott Herckis. Shrem has sent four requests for production of documents to WCF, in addition to 23 subpoenas to WCF's affiliates, and individual subpoenas to Cameron and Tyler Winklevoss. These depositions, requests for production of documents and subpoenas have thoroughly covered the areas that Mr. Shrem wishes to explore with Mr. Meade, including requests for documents between WCF and its accountats; documents between WCF and Elliptic; and communications between WCF and Shrem. In response, WCF has produced approximately 15,000 pages of documents, most of which Mr. Shrem has had since mid-January. Matthew Gruchevsky, Scott Herckis and Richard Paukner (WCF's accountants) have also produced documents in response to subpoenas directed to them, including requests for communications with Mr. Meade. *See generally* Meade Decl., ¶¶ 12-17, Exs. J-N.

As for the proposed topic of Mr. Meade's communications with Shrem, as discussed, the request seeks information that has already been produced or is otherwise obtainable, and any additional requests would impinge on privileged information. As explained in Mr. Meade's Declaration submitted with this motion, Mr. Meade has a record of only a few interactions with Mr. Shrem on behalf of his clients, and recalls no phone conversations with Mr. Shrem. Meade Decl. at ¶¶ 7-11. The content and goals of the July 2013 demand letter, *see* Meade Decl., Ex. F, are self-evident: Mr. Meade was serving as an attorney seeking more information about the

9

missing bitcoin. Additionally, Mr. Shrem, one of the two parties to this case, is perfectly capable of testifying to the contents of the letter, as well as any reply he might have provided. (Mr. Meade is not aware of any such response, including any phone call between himself and Mr. Shrem. Meade Decl. ¶¶ 7, 9.) Again, the first *In re Friedman* consideration is whether the deposition is necessary or whether a source other than the subpoenaed attorney could provide the sought-after information. Here, there are clearly indentifiable alternative sources, such as Mr. Gruchevsky (who Mr. Shrem has deposed), Mr. Robinson (who Shrem has not apparently attempted to depose) and Mr. Shrem himself. Moreover, when a party is in control of the relevant information, non-parties should not be overburdened with discovery. *See Carvel v. Franchise Store Realty Corp.*, 2011 WL 13269780, at *3 (S.D.N.Y. June 16, 2011).

As for authentication of the July 2013 letter, Mr. Meade is happy to stipulate to its authenticity. Mr. Shrem and his attorneys have never sought to reduce the undue burden imposed by the subpoena to Mr. Meade by requesting such a stipulation or seeking any less obtrusive means of obtaining information, such as through interrogatories.[3]

Mr. Shrem's counsel provided several additional justifications for Mr. Meade's deposition, but it is hard to match the jumble of justifications with any of the proposed deposition proposed topics. Meade Decl, Ex. C. For instance, Mr. Pepperman asserted that other party and non-party witnesses have been deposed touching on a few of the proposed topics, but that their recollections were not clear. Mr. Pepperman, however, never specified which witnesses were vague as to which topics; Mr. Meade is not responsible for the lack of clarity of any other witnesses' recollections, if any. Mr. Pepperman also asserts that other party and non-party

---

[3] *Cf. Demirovic v. Ortega*, 2017 WL 4621089, at *11 (E.D.N.Y. Oct. 13, 2017) (the offer to stipulate to authenticity "reduc[es] any need for [the] testimony").

witnesses lacked personal knowledge about the proposed topics, and that their testimony could be ruled hearsay — again without any level of specificity that might allow Mr. Meade to evaluate which witnesses lacked personal knowledge that only he would have, and what testimony might be ruled hearsay. The only incident that Mr. Meade believes he is the only individual sole personal knowledge is his authoring of a demand letter sent to Mr. Shrem. But Mr. Shrem has failed to articulate what aspects of the demand letter about which Mr. Meade has sole knowledge are relevant to claims or defenses in this case and are not otherwise self-evident from the letter itself.

Mr. Pepperman's justification for the need to take Mr. Meade's deposition terminates with the conclusory statement that we "not aware of any 'less obtrusive methods' of obtaining this probative and essential information needed to effectively defend Mr. Shrem in this case." Meade Decl., Ex. C.  It remains unclear what information Shrem believes is "probative and essential." In any event, several alternate mechanisms for obtaining the information on Shrem's list exist, as detailed here, including further discovery from the relevant entities, interrogatories, and stipulations. This *In re Friedman* factor weighs strongly in favor of quashing the subpoena. So too does Shrem's effort to conduct an "end run" around discovery. *Burns v. Bank of Am.*, No. 03 CIV.1685 RMB JCF, 2007 WL 1589437, at *14 (S.D.N.Y. June 4, 2007). *Cf. Hickman v. Taylor*, 329 U.S. 495, 516 (1947) (Jackson, J., concurring) ("Discovery was hardly intended to enable a learned profession to perform its functions . . . on wits borrowed from the adversary.").

Mr. Shrem and Mr. Pepperman have alleged that Mr. Meade spoke to Mr. Shrem by telephone knowing he was represented by counsel. Meade Decl. at ¶ 6. Mr. Meade has sought clarification as to when that conversation supposedly occurred. *Id.* at ¶ 5. While Mr. Pepperman has not provided a clear answer, it appears the defense claims such a conversation occurred

11

shortly after the July 2013, demand letter was sent to Mr. Shrem "c/o BitInstant." *Id.* at ¶ 8. The

written record undermines this claim. When Perkins Coie responded to the demand letter, they

announced that they represented BitInstant — not Mr. Shrem. *Id.* at ¶ 9. Mr. Meade has never

had any information to suggest that Perkins Coie represented Mr. Shrem individually. *Id.*

The next year, beginning in July of 2014, Mr. Meade sent three letters to Mr. Shrem in

connection with an inspection demand made pursuant to BitInstant's operating agreement. *Id.* at

¶ 10. Mr. Meade knew Mr. Shrem was represented by criminal counsel at the time, and so he

sought direction from that attorney before sending the first letter, in keeping with his

longstanding practice regarding contact with potentially represented parties. Mr. Meade's July

11, 2014 email to Marc Agnifilo reads:

> I represent Maguire Ventures, LLC, one of the members of BitInstant.  We have prepared the attached Demand for Inspection of Records which we intend to serve on Charlie Shrem in his capacity as the principal/representative/agent of EDP Marketing, LLC.  As you may know, EDP is the Managing Member of BitInstant.
>
> While I understand you represent Mr. Shrem in federal criminal proceedings, I do not know whether your representation extends to other matters, such as EDP and/or BitInstant.  That is why I am directing the attached Demand to you, at least initially.  Please let me know whether you except this on Mr. Shrem's behalf, whether there is another attorney who represents him on matters relating to EDP/BitInstant, or whether we should simply send this to Mr. Shrem directly.

*Id.* at ¶ 11. The following day, Mr. Agnifilo responded: "Tyler. Thank you for contacting me but

my representation of charlie is limited to the criminal case charged by the US Attorney in the

SDNY." *Id.* Mr. Meade has no recollection of ever speaking to Mr. Shrem personally until a

brief interaction after the hearing on the prejudgment attachment application. *Id.* at ¶ 7.

### 2.     Meade Is the Lead Trial Attorney on This Case

The second *Friedman* consideration is the lawyer's connection with the matter on which

discovery is sought and in relation to the pending litigation. Here, Mr. Meade's role is

tangentially related to the core facts of the case — he is not a percipient witness to facts

underlying the claims themselves. He did not, for instance, witness Mr. Shrem's theft of 5,000

bitcoin or otherwise have any connection to the case in the fall of 2012 and the spring of 2013

when WCF's bitcoin went missing. Instead, Mr. Meade was called into the case as a trial

attorney after the theft occurred. His only contact with Mr. Shrem involves drafting and sending

a demand letter to Mr. Shrem for return of the 5,000 bitcoin and for inspection of records. Courts

have quashed deposition subpoenas directed to opposing counsel in analogous situations. *See,*

*e.g.*, *New York Indep. Contractors All., Inc.*, 2008 WL 5068870, at *6:

> The plaintiffs mischaracterize Gorlick [the attorney] as a "key witness" simply because
> he provided legal assistance to Local 1010 in connection with the extension agreement
> signed by certain NYICA members. Despite the plaintiffs' contentions that the extension
> agreement constituted a breach of the CBA, Gorlick's role in connection with these
> matters appears to have been limited primarily to legal representation. A subpoena
> seeking to depose opposing counsel should be quashed when the attorney's role is limited
> to legal representation.

*See also Caro*, 2011 WL 13233934, at *5 (same); *Dominion Res. Servs., Inc.*, 2017 WL

3228120, at *4 ("'[C]oncerns with invading attorney work product and disruption of litigation

are most pronounced' where the attorney of whom the deposition is sought is trial counsel.")

(quoting *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 2000 WL 1253262, at *2 (S.D.N.Y.

Sept. 1, 2000)). All the responsive correspondence in Mr. Meade's records, which he has

produced, shows nothing relevant to this case other than a lawyer vigorously representing his

client. This factor weighs strongly in favor of quashing this subpoena.

### 3. Deposing Meade Raises a Strong Risk of Encountering Privilege and Work-Product Issues

The third *In re Friedman* consideration is the risk of encountering privilege and work-

product issues. Here, the risk is real. As noted, Mr. Meade is the attorney for the plaintiff in this

case, the repository of all of his client's privileged matters, and regularly communicates with

individuals who provide services to his client about whom Shrem expressly wants to question

him. "The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Circ. 2011). In turn, information is protected on work-product grounds that was created "because of anticipated litigation, and would not have been prepared in substantially similar form but for the prospect of litigation." *United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998). "The doctrine 'is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy with an eye toward litigation, free from unnecessary intrusion by his adversaries.' Documents prepared in anticipation of litigation are work product, even when they are also intended to assist in business dealings." *Schaeffler v. United States*, 806 F.3d 34, 43 (2d Cir. 2015) (internal citations omitted).

The question under *In re Friedman* is whether there is a *risk* of encountering privilege and work-product matters, not whether the deposition would actually invade those privileges. Here, the risk is real, both with regard to theories of the case communicated to, for example, Tom Robinson at Elliptic and with regard to the drafting of the July 2013 demand letter, which was prepared entirely in anticipation of this litigation. *See, e.g.*, *New York Indep. Contractors All., Inc.* 2008 WL 5068870, at *7 ("In the normal course of business, [the attorney] would have drafted the documents at issue after instructions from, and discussions with, his client Local 1010. Testimony about the 'significance' of those documents would inevitably reveal counsel's thought processes in defending [or in this instance, prosecuting] the instant litigation.").

The Federal Rules independently mandate the quashing of subpoenas that would require disclosure of information protected by the attorney-client or work-product privilege. *See* Fed. R. Civ. Pro. 45(d)(3)(A)(iii) ("On timely motion, the court for the district where compliance is

required must quash or modify a subpoena that: . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies"). This Court could grant the motion to quash on the basis of this provision as well.

### 4.    The Extent of Discovery To Date Supports Quashing This Subpoena

The fourth *Friedman* factor is how much discovery has already been conducted. This factor weighs strongly in favor of quashing the subpoena, as discovery has been extensive, *see supra*. Dragging Mr. Meade into a deposition about irrelevant, cumulative, or privileged topics is unnecessary. *Cf. New York Indep. Contractors All., Inc.*, 2008 WL 5068870, at *7 ("In any event, this factor is largely irrelevant under the present circumstances, since it appears that the testimony sought is not essential to the plaintiffs' case.").

### 5.    No Exceptional Circumstances Exist Here

None of the exceptional circumstances that have justified deposing opposing counsel are present here. In the *Chevron* litigation, for example, the district court permitted an attorney deposition where there was an urgent race with a criminal matter pending abroad and the subpoenaed attorney potentially had engaged in fraud. *See In re Chevron Corp*, 749 F.Supp.2d 141, 164-67 (S.D.N.Y.) (noting the "quite unusual circumstances of this case," including "the need for discovery [given a pending matter in Ecuador], the plainly unprivileged nature of many of [the lawyer's] activities, evidence of possible fraud and misconduct by" the attorney served with a subpoena, and more), *aff'd sub nom. Lago Agrio Plaintiffs v. Chevron Corp.*, 409 F. App'x 393, 395 (2d Cir. 2010) (noting that "the severity of the consequences imposed by the District Court in this case are justified *almost entirely by the urgency* of petitioners' need for the discovery in light of impending criminal proceedings in Ecuador") (emphasis added).

Other cases permitting attorney depositions are similarly distinguishable. For example, *In re Friedman*, 350 F.3d at 72, cited a few cases permitting attorney depositions, including a decision issued by this Court rejecting a "wooden[ ]" adherence to the Eighth Circuit's approach in *Shelton*. *See Calvin Klein Trademark Tr. v. Wachner*, 124 F. Supp. 2d 207, 211 (S.D.N.Y. 2000). Yet *Wachner* rested its decision to permit a limited deposition of a Wachtell, Lipton, Rosen & Katz attorney in part on the fact that the firm was not serving as litigation counsel in the pending matter and instead was "peripheral at best" to the case. *Id.* Similarly, in *Nakash v. U.S. Dep't of Justice*, 128 F.R.D. 32, 35 (S.D.N.Y. 1989), the subpoena did not seek to depose "opposing counsel *in this action*," and, "[t]herefore, the major rationales in these cases — discouraging the depositions of opposing attorneys in a particular lawsuit to avoid unnecessary expense and interference with the attorney-client relationship — are not applicable" (emphasis added).

### B.    The Subpoena Should Be Quashed on Independent Grounds of Irrelevance, Undue Burden, and Privilege

This Court should quash the subpoena for any or all of three bases independent of Mr. Meade's status as opposing counsel under Rules 26 and 45: irrelevance, undue burden, and intrusion into privileged information.

### 1.    The Subpoena Seeks Irrelevant Information

This motion could have begun and ended with relevance: "non-party subpoenas are 'subject to Rule 26(b)(1)'s overriding relevance requirement.'" *Montana Res., Inc. v. ASARCO LLC*, No. 18-MC-434(AJN), 2019 WL 130579, at *1 (S.D.N.Y. Jan. 8, 2019) (concluding that, because "Respondent's subpoena does not meet this initial hurdle, [the Court] need not address the parties' remaining arguments."). Mr. Shrem bears the initial burden of proving the relevance

of the requested testimony. *Mandell v. The Maxon Co., Inc.*, No. 06cv460 (RWS), 2007 WL 302252, at *1 (S.D.N.Y. Oct. 16, 2007). Discovery is generally available of:

> nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. Pro. 26(b)(1).

Here, Mr. Shrem wants to force Mr. Meade to testify about all communications with Paukner and Gruchevsky, accountants for Cameron and Tyler Winklevoss who perform a number of services for them irrelevant to this lawsuit. Mr. Meade has represented both Cameron and Tyler Winklevoss as well as affiliated businesses on many matters over the years. Deposing Mr. Meade, with no stated limits, on collaborations with these firms would result in highly irrelevant information. This line of inquiry would not bear on, and could not reasonably lead to, information about "any party's claim or defense." *Id.* The same objection applies to collaborations with and work performed by Elliptic, a cryptocurrency forensic investigation firm frequently engaged by Cameron and Tyler Winklevoss on matters unrelated to this lawsuit.

Further, the proposed topics are not "proportional to the needs of the case." *Id.* To proceed through the factors: while WCF's contractors' testimony might be important to this case — many of whom have been deposed — anything Mr. Meade could say on the issue is either not relevant to this case, because about matters beyond the scope of the case itself, or cumulative. In addition, Mr. Shrem has equal or greater access than Mr. Meade to the desired information given the volume of production provided by WCF, Mr. Meade, and other subpoenaed parties as well as his own involvement in some of the proposed topics. The discovery sought would not help resolve the issues in this case, given that it is irrelevant, cumulative, or privileged. Finally, the

17

burden and expense of the proposed discovery outweighs its likely benefit. Mr. Shrem has not satisfied the basic relevance requirements under Rule 26, pointing to no relevant fact that could emerge solely from the deposition; this Court should quash the subpoena on that ground alone.

### 2.     The Subpoena Places an Undue Burden on Mr. Meade

The subpoena would place an undue burden on Plaintiff's counsel, mandating that this Court reject it. Fed. R. Civ. Pro. 45(d)(3)(A)(iv) ("the court . . . must quash or modify a subpoena that: . . . subjects a person to undue burden"); *see also id*. 26(b)(2)(C). Whether an undue burden exists under Rule 45 "depends on 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" *Hughes v. Twenty-First Century Fox, Inc*., 327 F.R.D. 55, 57 (S.D.N.Y. 2018) (citation omitted). This deposition would constitute just such an "undue" burden. For example, the topics are so broad that they are generally irrelevant to the underlying claim; Mr. Shrem does not need the information from Mr. Meade but can or already has obtained it from other sources; the topics are sweeping; the actual information sought is unclear; and the attempt would delve into aspects of Mr. Meade's representation of WCF with no legitimate countervailing value, while having to prepare for and appear at the deposition would only increase the cost and time wasted on this subpoena so far. Mr. Meade's third-party status increases the undue nature of this burden. *See, e.g.*, Practice Commentary, Rule 45 (noting that "courts take special care to ensure that subpoenas do not impose an undue burden when the persons to whom the subpoenas are directed are not parties").

Finally, Mr. Shrem has made no effort to lessen the burden on Mr. Meade, such as by requesting finely tuned interrogatories. *Cf. In re Subpoena Issued to Friedman*, 286 B.R. 505, 507 (S.D.N.Y. 2002).

### 3.    The Subpoena Requires Delving into Privileged Information

As noted *supra*, this subpoena seeks privileged information. Therefore, this Court must

quash it. Fed. R. Civ. Pro. 45(d)(3)(A)(iii).

### C.    This Court Should Reject the Proposed Deposition as Thinly Veiled Harrassment

The only "exceptional" circumstance here is that Mr. Shrem's attorneys are pursuing this

deposition. Given Mr. Shrem's failure to explain why any material or necessary testimony is at

stake, it appears that he is seeking to disrupt the litigation and place pressure on WCF's attorneys

by burdening them with make-work in response to this deposition subpoena and stalling the case

during a fast-moving discovery schedule. *Sea Tow Int'l, Inc. v. Pontin*, 246 F.R.D. 421, 427-28

(E.D.N.Y. 2007) (deposing the attorney "would impose a substantial burden," but yet "would

serve little purpose, other than to disrupt and prolong this litigation").

The subpoenas issued to Meade and his firm have already had some of the desired effect.

The Meade Firm has four attorneys and no paralegals, working on various active matters for

Cameron and Tyler Winklevoss and other clients. As Shrem and his counsel are well aware,

having to respond to the four irrelevant and cumulative document subpoenas directed to Mr.

Meade and his firm, and now having to seek to quash the wasteful deposition subpoena directed

to Mr. Meade has diverted important energy from essential tasks in pursuing this case, including

responding to the 19 additional subpoenas that Mr. Shrem also recently served on WCF's

affiliates.

Courts are willing to grant sanctions under Rule 45(d)(1) against parties and attorneys

engaging in abusive subpoena practices such as those here. This Rule provides that:

> A party or attorney responsible for issuing and serving a subpoena must take reasonable
> steps to avoid imposing undue burden or expense on a person subject to the subpoena.
> The court for the district where compliance is required must enforce this duty and impose

an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

*See, e.g.*, *Saint-Jean v. Emigrant Mortg. Co.*, 2015 WL 13735434, at *5–6 (S.D.N.Y. 2015);[4] *id.* (outlining the test for sanctions). Mr. Meade has already suffered undue burdens and expenses and will suffer further if forced to prepare for and sit through a deposition. There is no evidence that Mr. Shrem or his attorneys have sought to avoid imposing an undue burden or expense on Mr. Meade.

### III.     CONCLUSION

For the foregoing reasons, this Court should grant the Motion to Quash the Deposition of Tyler Meade. If this Court denies this motion, Meade requests a judicial referee to be present at the deposition, at Shrem's expense.

DATED: April 1, 2019                    Respectfully submitted,


By:      */s/ Tyler Meade*

Tyler Meade
THE MEADE FIRM p.c.
12 Funston Ave., Suite A
San Francisco, CA 94129
Telephone: (415) 724-9600
tyler@meadefirm.com
*Attorney for Plaintiff and Movant*

---

[4] Courts also will consider abuse of process claims under New York law in response to harassing subpoenas. *See, e.g.*, *Board of Education v. Farmingdale Classroom Teachers Ass'n*, 38 N.Y.2d 397, 403 (1975); *Ginsberg v. Ginsberg*, 84 A.D.2d 573, 574 (2d Dep't 1981).