UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WINKLEVOSS CAPITAL FUND, LLC,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>CHARLES SHREM,<br><br>　　　　　　Defendant. | Case No. 18-cv-8250 (JSR)<br><br>**AFFIDAVIT OF TYLER MEADE IN SUPPORT OF MOTION TO QUASH DEPOSITION OF TYLER MEADE** |

I, Tyler Meade, hereby declare as follows:

1.　　I am member of the California and New York bars and principal at the Meade Firm p.c., counsel for Plaintiff Winklevoss Capital Fund, LLC ("WCF") in the above referenced matter. Except as to matters stated on information and belief, I have personal knowledge of the information referenced herein and could competently testify as to its truth if called to do so. As to matters stated on information and belief, I am informed and believe them to be true. I am providing this affidavit in support of the motion to quash the subpoena seeking to depose me on April 8, 2019.

2.　　Defendant Charlie Shrem ("Shrem") served me with a deposition subpoena on March 15, 2019, a true and correct copy of which is attached hereto as Exhibit A. The subpoena was silent as to the topics to be covered.

3.　　I wrote opposing counsel on March 18, 2019, beginning the meet and confer process and requesting the following explanations: "Please explain your factual basis for seeking this deposition, the topics you seek to cover, and why you think a deposition of me is required (as opposed to less obtrusive methods of obtaining the same information/making the same point)." A true and correct copy of this email is attached hereto as Exhibit B.

1

4.  Don Pepperman, counsel for Mr. Shrem, responded with an inadequate explanation of the proposed subpoena discussion topics on March 21, 2019, as explained thoroughly in the motion to quash. A true and correct copy of that responsive email is attached hereto as Exhibit C.

5.  Seeking more information, I followed up on March 23 and again on March 27 asking for the "approximate date and subject matter what communications you claim I had with your client" and to identify "which counsel" Mr. Shrem was represented by when I purportedly spoke to him. A true and correct copy of my emails are attached hereto as Exhibit D.

6.  On March 27, Mr. Pepperman finally responded by referring to Mr. Shrem's gesture in his February 12, 2019, deposition testimony that he had had a cell phone communication with me. A true and correct copy of Mr. Pepperman's email is attached hereto as Exhibit E.

7.  I have no recollection of any conversation with Mr. Shrem before the hearing on Plaintiff's prejudgment attachment application, following which Mr. Shrem approached me and we very briefly exchanged pleasantries in the presence of defense counsel.

8.  In his March 21 email, Mr. Pepperman emphasized his interest in a demand letter that I addressed to Mr. Shrem in July 2013 about the missing bitcoin, thus suggesting to me that he believed I had a telephone conversation with Mr. Shrem around that time. Attached hereto as Exhibit F is a true and correct copy of the July 23, 2013 demand letter.

9.  When I sent that letter, there was no indication that Mr. Shrem was represented by counsel. Indeed, the subsequent email chain already produced in this litigation shows that I received a response on July 29, 2013 to my demand letter from counsel purporting to be BitInstant's—not Mr. Shrem's—attorney, Jean-Jacques Cabou at Perkins Coie. I do not believe I

had any prior knowledge of Perkins Coie's representation of BitInstant and did not believe that it represented Mr. Shrem. I subsequently corresponded with Cabou and his partner, Keith Miller, over the ensuing weeks, as reflected in the email chain attached hereto as Exhibit G. I do not believe that Mr. Shrem ever personally responded.

10. Beginning in July 2014, on behalf of my client, Maguire Ventures, LLC, I sent a demand for inspection of BitInstant records on Mr. Shrem as the representative of the company's managing member. True and correct copies of these letters included in Exhibit H hereto. I was not aware of BitInstant having any counsel at that point, and there is and was no indication that Perkins Coie was still representing the company. Instead, I had been told that the company was no longer doing business.

11. Before I sent the first of the above-referenced letters, I checked with Mark Agnifilo, Mr. Shrem's criminal counsel, to see if he represented Mr. Shrem in matters relating to BitInstant, consistent with my longstanding practice. In response, Mr. Agnifilo stated that he only represented Mr. Shrem in connection with the criminal prosecution in the Southern District of New York. A true and correct copy of my email exchange with Mr. Agnifilo is attached as Exhibit I.

12. In addition to the harassing nature of the subpoena, the proposed topics are cumulative of subpoenas to various WCF-affiliates, to Cameron and Tyler Winklevoss, to accountants Richard Paukner, Matthew Gruchevsky, and Scott Herckis, and to myself and my firm.

13. Attached as Exhibit J is a true and correct copy of a document subpoena to Tyler Winklevoss.

14. Attached as Exhibit K is a true and correct copy of a document subpoena to Cameron Winklevoss.

15. Attached as Exhibit L is a true and correct copy of a document subpoena to Richard Paukner & Associates.

16. Attached as Exhibit M is a true and correct copy of a document subpoenas to Tyler Meade and The Meade Firm p.c.

17. Attached as Exhibit N is a true and correct copy of the subpoena to testify at a deposition in a civil action and accompanying document subpoena to Scott Herckis.

18. I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct to the best of my knowledge.

Executed on April 1, 2019 in San Francisco, California.

*/s/ Tyler Meade*
Tyler Meade