# Exhibit F

Meade & Schrag LLP

1816 Fifth Street
Berkeley, CA 94710
p:510.843.3670
f:510.843.3679

July 23, 2013

<u>Via E-Mail & FedEx:</u>

Mr. Charles Shrem
c/o BitInstant
256 W. 36th Street
New York, NY 10018

    Re:    Winklevoss Capital Fund, LLC

Dear Mr. Shrem:

    Please be advised that I represent Winklevoss Capital Fund, LLC ("WCF"). In September of 2012, you agreed to purchase significant quantities of bitcoin for and on behalf of WCF, and WCF agreed to deliver money to you for that purpose. As you have since confirmed, you agreed that there would be no processing, transaction or other fees associated with your handling of the money, with the purchase of the bitcoin or for any other reason (although I note that you agreed to act on behalf of WCF for various material reasons, including but not limited to the promotional value to you of conducting these trades).

    In reliance on, among other things, your stated familiarity and expertise with respect to bitcoin, the bitcoin market and the purchase, exchange and sale of bitcoin, WCF delivered to you a total of $750,000 in 2012 and 2013 for the purchase of bitcoin for and on behalf of WCF. Of that $750,000, a total of $250,000 was delivered to you in or about September of 2012 (the "Initial Tranche"). You were to have used all of the Initial Tranche to purchase bitcoin in or about the September, 2012 timeframe.

    After multiple requests by WCF and its principals for complete transaction and account information from you, you have given a variety of responses which are variously contradictory, incomplete and evasive. However, what is clear and unambiguous is that you cannot account for purchases of bitcoin that should have taken place in or about September, 2012 utilizing $61,000 of the Initial Tranche delivered to you by WCF for that purpose. Stated differently, and using weighted pricing values of bitcoin from roughly the mid-September to mid-October, 2012 timeframe, you cannot account for some 5,000 or more bitcoin that you should have purchased at that time for and on behalf of WCF. These calculations are based in part on the incomplete information received from you; if and to the extent you timely provide more and reliable information, that may provide the basis for being able to calibrate the numbers with more precision.

    In short, you owe WCF at least 5,000 bitcoin at this time.

7/23/2013
Page 2

My understanding is that you deny that WCF is owed any more bitcoin than it has already received. Put differently, you deny that WCF is owed another 5,000 bitcoin.

Your denial is noted. Yet you are incapable of providing any meaningful detail or any records accounting for the $61,000 worth of bitcoin that should have been purchased in September, 2012. You cannot explain what happened to the $61,000 and cannot identify or locate the 5,000 or more of bitcoin that WCF should own in addition to the other bitcoin that WCF does have.

Whether by negligence or by intentional (mis)conduct, you have failed to deliver to WCF all of the bitcoin that you were obligated to purchase for WCF. Your conduct is, in a word, actionable.

Therefore, this is a formal demand for the delivery to WCF, at no additional cost to WCF, of an additional 5,000 bitcoin, such delivery of bitcoin to take place no later than 5:00 p.m. on Monday, July 29, 2013. If that has not occurred, I will advise my client as to its options.

In addition, this is a formal demand for the delivery to WCF of all records of whatever kind or type concerning or related to the purchase of all bitcoin for or on behalf of WCF, the delivery of such information likewise to take place no later than 5:00 p.m. on Monday, July 29, 2013. For the avoidance of doubt, the delivery should be to Winklevoss Capital Fund LLC, 30 West 24th Street, 4th Floor, New York NY 10010. As to any records not produced by that date and time, I will infer that such records simply do not exist. As to that inference, I note that these records have been requested of you on several prior occasions and you have had more than sufficient time to provide those records to my client.

Finally, this is a demand that you act immediately to preserve all paper documents and electronically stored information ("ESI") that are or may be discoverable in relation to the issues in this matter.

If you do not already know, the duty to preserve paper documents and ESI, both now and through the end of a matter, is very broad. The duty to preserve applies not only to paper documents, but also to ESI including, but not limited to, external and internal electronic communications (including information concerning e-mail editing and bcc's on the e-mail not disclosed when a hard copy is printed), word processing documents, spreadsheets, databases, calendars, voice mail, Internet usage and access files, network and document access and log information (including drafts of documents, all metadata, document access and modification information and track changes for each type of ESI), and all other types of information created, stored, or

Confidential Pursuant to Protective Order

CONFIDENTIAL--WCF017095

7/23/2013
Page 3

transferred by computer. This duty applies to all ESI, whether stored in servers, workstations, flash and portable memory, off-line storage or on backup tapes, or in any other non-centralized location, such as laptops, blackberries, mobile phones, PDAs, home computers and removable disks and storage.

The duty to preserve also applies to third parties that may be holding data for you or your business affiliates, including off-site document and ESI storage management companies and emergency backup facilities and other service providers, such as lawyers, accountants and other professionals and service providers. This should include business affiliates and family members, as well. I must emphasize again that the duty to preserve ESI includes an obligation to make sure that the ESI does not change in any way as the ESI is segregated and transferred in the preservation process. Please immediately put any such third parties on notice of this situation and provide them with this letter and appropriate stop destruct and litigation hold materials.

The preservation duties described in this letter are ongoing and must continue until this matter is resolved, both as to documents and ESI now in existence and future paper documents and ESI that will be created or received. Serious consequences can result from a real or perceived failure to take reasonable precautions to properly preserve evidence, paper documents, and electronic information.

I and my client look forward to hearing from you promptly.

                                        Very truly yours,

                                        MEADE & SCHRAG LLP

                                        Tyler Meade

TRM/rr

Confidential Pursuant to Protective Order                              CONFIDENTIAL--WCF017096